**No. 25-1562**

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

KIMBERLY BALLARD,

*Plaintiff-Appellant,*

*v.*

AMEREN ILLINOIS COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois
1:24-cv-01185-JEH
The Honorable Judge Jonathan E. Hawley, Presiding

**BRIEF AND REQUIRED SHORT APPENDIX
OF PLAINTIFF-APPELLANT KIMBERLY BALLARD**

RANDALL D. SCHMIDT
EDWIN F. MANDEL LEGAL AID CLINIC
  OF THE UNIVERSITY OF CHICAGO LAW SCHOOL
6020 S. University Ave. Chicago, IL 60637
(773) 702-9611
r-schmidt@uchicago.edu

*Counsel of Record for Plaintiff-Appellant*

July 9, 2025

## RULE 26.1 DISCLOSURE STATEMENT

Randall D. Schmidt of the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School makes the following disclosures as required by Fed. R. App. P. 26.1 and Seventh Circuit Rule 26.1:

1.  The full name of every party that the attorney represents in this case:

    Kimberly Ballard

2.  The name of all law firms whose partners or associates have appeared for the party in this case or are expected to appear for the party in this Court:

    Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School (Randall D. Schmidt) and Moore Law Office, P.C. (Edward R. Moore)

3.  If the party is a corporation:

    a.  The party's parent corporations: Not Applicable

    b.  Any publicly held company that owns 10% or more of the party's stock: Not Applicable

4.  Provide information required by FRAP 26.1(b): Not Applicable

5.  Provide information required by FRAP 26.1(c) 1 & 2: Not Applicable

Respectfully Submitted,

/s/ Randall D. Schmidt
Randall D. Schmidt
Edwin F. Mandel Legal Aid Clinic
    of the University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611
r-schmidt@uchicago.edu

Dated: July 9, 2025

i

**TABLE OF CONTENTS**

Rule 26.1 Disclosure Statement ................................................................................. i

Table of Authorities ............................................................................................... iv

Jurisdictional Statement ......................................................................................... 1

Statement of the Issues .......................................................................................... 2

Statement of the Case ............................................................................................. 3

    I.  Statement of Facts ......................................................................................... 3

    II. Proceedings Below ........................................................................................ 4

Summary of the Argument .................................................................................... 12

Standard of Review ............................................................................................... 14

Argument ............................................................................................................... 15

    I.  The District Court Erred in Ruling That Ms. Ballard's Complainant Information Sheet Did Not Qualify as a Charge for the Purpose of Satisfying the Charge-Filing Limitations Period in the Americans with Disabilities Act. ......................................................................................... 15

        A. In *Federal Express Corp. v. Holowecki*, the Supreme Court Ruled That a Pre-Charge Filing Qualifies as a Charge If It Asks the EEOC to Take Action to Vindicate the Complainant's Rights. ................ 15

        B. Ms. Ballard's CIS Qualified as a Charge Under the Supreme Court's *Holowecki* Standard. ....................................................... 21

        C. This Court's Ruling in *Carlson v. Christian Bros. Services* That the IDHR's CIS Does Not Qualify as a Charge Is Contrary to *Holowecki*, Is Inconsistent with Decisions from Virtually Every Federal Circuit, and Should Be Reconsidered by this Court. ..................... 26

            1. The *Carlson* Panel Erred in Concluding That the CIS Does Not Request Remedial Action and Relief. ................................................. 27

            2. *Carlson* Erred in Concluding That the Request for the EEOC to "Look into the Discrimination Alleged" Did Not Satisfy the *Holowecki* Standard. ........................................................................... 28

3.  That the CIS Said It Was "Not A Charge" Did Not Preclude It from Qualifying as a Charge for the Purpose of Complying with the ADA Limitations Period. ..................................................34

II.  The District Court Erred in Failing to Equitably Toll the Charge-Filing Period for Ms. Ballard. ........................................................................37

A.  This Court Has Repeatedly Ruled That the Charge-Filing Periods in Federal Antidiscrimination Acts Should Be Equitably Tolled When a Complainant Fails to File a Timely Charge Because of Misleading Statements by Agency Officials. ..............................38

B.  The Deadline for Ms. Ballard to File a Charge Should Have Been Equitably Tolled Because of the IDHR's Repeated Assurances to Her That She Had Filed a Charge ..........................................40

Conclusion ....................................................................................................43

Certificate of Compliance ...........................................................................44

Certificate of Service....................................................................................45

Circuit Rule 30(d) Statement ......................................................................46

Required Short Appendix Table of Contents..............................................47

Judgment in a Civil Case, entered Jan. 7, 2025 (Dkt. #10)...............A-1

Order & Opinion Granting Defendant's Motion to Dismiss, entered Jan. 7, 2025 (Dkt. #9).........................................................................A-2

Order Denying Motion for Reconsideration, entered March 11, 2025 (Dkt. #22)........................................................................................A-13

Plaintiff's Complainant Information Sheet (CIS) (Dkt. #6-2), dated Aug. 23, 2018.................................................................................A-17

**TABLE OF AUTHORITIES**

### Cases

*Acheampong v. New York City Health & Hosps. Corp.*, 2015 WL 1333242
  (S.D.N.Y. Mar. 25, 2015) ................................................................. 30

*Aly v. Mohegan Council, Boy Scouts of America*, 711 F.3d 34 (1st Cir. 2013)..... 35, 36

*Amen Ra v. BNSF Ry. Co.,* 795 Fed. Appx. 463 (7th Cir. 2020) ............................... 37

*Anderson v. Unisys Corp.*, 47 F.3d 302 (8th Cir. 1995) ............................................ 39

*Apire v. Whole Foods Market Group, Inc.*, 2016 WL 2350108 (D. Me.
  May 4, 2016) ................................................................................... 36

*Bernhardt v. State of California Dept. of Corr. & Rehab.*, 2015 WL 2003096
  (E.D. Cal. Apr. 29, 2015) ................................................................. 32

*Bishop v. Gainer*, 272 F.3d 1009, 1014 (7th Cir. 2001) ............................................ 39

*Brown v. City of New York*, 2013 WL 3789091 (S.D.N.Y. July 19, 2013) ................. 30

*Broyles v. Howard-DCIII, LLC*, 2014 WL 347043 (N.D. Okla. Jan. 30, 2014).......... 33

*Burton v. Ghosh*, 961 F.3d 960 (7th Cir. 2020)........................................................ 14

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990) .............................. 42

*Carey v. Avis Budget Car Rental, LLC*, 2013 WL 4483071 (N.D. Okla.
  Aug. 20, 2013) ................................................................................. 33

*Carlson v. Christian Bros. Servs.*, 840 F.3d 466 (7th Cir. 2016)....................... passim

*Christensen v. Triumph Aerostructures - Tulsa, LLC,* 2020 WL 609748
  (N.D. Okla. Feb. 7, 2020)................................................................. 33

*Coleman v. D.C. Water & Sewer Auth.*, 2018 WL 6605863 (D.D.C.
  Dec. 17, 2018)................................................................................. 33

*Dent v. Charles Schwab & Co., Inc.*, 121 F.4th 1352 (7th Cir. 2024) ..................... 15

*Drescher v. Clinton City*, 2015 WL 6680197, (D. Utah Nov. 2, 2015)..................... 33

*Early v. Bankers Life and Casualty Co.*, 959 F.2d 75 (7th Cir. 1992) ..... 39, 40, 41, 42

*EEOC v. Am. Sec. Assocs., Inc.*, 2022 WL 22855256 (N.D. Ga. Apr. 27, 2022) ......... 33

*EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 754 (5th Cir. 2020)................................................................................ 13, 21, 24, 30

*EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593 (7th Cir. 2009) ............................ 35

*Enoch v. Becton, Dickinson & Co.*, No., 2012 WL 2371049, at *7 (D. Md. June 22, 2012) ................................................................. 31

*Fatz v. Winn-Dixie Stores, Inc.*, 2013 WL 4080330 (M.D. Fla. Aug. 13, 2013).......... 33

*Fed. Exp. Corp. v. Holowecki,* 552 U.S. 389 (2008) ........................................... passim

*Financial Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654 (7th Cir. 2022) ........ 14

*Hammond v. Georgia*, 2012 WL 181647 (N.D. Ga. Jan. 23, 2012) ...................... 33, 37

*Harris-Bethea v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, 2015 WL 1458042 (E.D. Tenn. Mar. 30, 2015) ............................................................. 31

*Hawthorne v. Vatterott Educational Centers, Inc.,* 2010 WL 3258560 (N.D. Okla. Aug. 17, 2010) ................................................................. 32

*Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170 (7th Cir. 1999) ................................................................. 39

*Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 113 (3d Cir. 2014). ................... 24, 28, 29

*Hudgins v. PruittHealth, Inc.*, 2018 WL 6069459 (D.S.C. Aug. 31, 2018)................. 31

*Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81 (D.D.C. 2012) ............................... 33

*Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014) ........................................................ 38

*Maggard v. Kids Cent., Inc.,* 2020 WL 1539293 (W.D. Va. 2020). ............................ 31

*Manning v. Chevron Chem. Co.*, 322 F.3d 874 (5th Cir. 2003) ................................. 11

*Martinez v. Orr*, 738 F.2d 1107 (10th Cir. 1984) ..................................................... 39

*Melgar v. T.B. Butler Publg. Co., Inc.*, 931 F.3d 375 (5th Cir. 2019)........................ 42

*Miller v. St. Luke's Roosevelt Hospital Center,* 2016 WL 1275066
(S.D.N.Y. April 1, 2016)................................................................ 30

*Navratil v. City of Racine,* 101 F.4th 511 (7th Cir. 2024) ........................................... 15

*Newbold v. Wisconsin State Pub. Def.,* 310 F.3d 1013 (7th Cir. 2002) ...................... 39

*Oto v. Metro. Life Ins. Co.,* 224 F.3d 601 (7th Cir. 2000)........................................... 12

*Philbin v. Gen. Elec. Capital Auto Lease, Inc.,* 929 F.2d 321, 323
(7th Cir. 1991)........................................................................... 17, 19

*Pruitt v. Bayer U.S. LLC,* 2021 WL 4084505 (N.D. Cal. Feb. 16, 2021)..................... 32

*Ramirez v. City of San Antonio,* 312 F.3d 178 (5th Cir. 2002)................................. 11

*Riley v. Waterman,* 126 F.4th 1287 (7th Cir. 2025).................................................... 15

*Rodrigues v. SCM I Invs., LLC,* 2015 WL 6704296 (M.D. Fla. Nov. 2, 2015). .......... 33

*Scott v. Maryland Dept. of Pub. Safety & Corr. Servs.,* 2015 WL 5836917, at *4
(D. Md. Oct. 2, 2015)................................................................... 31

*Schroeder v. Copley Newspaper,* 879 F.2d 266 (7th Cir. 1989) ...................... 39, 40, 41

*Skidmore v. Swift & Co.,* 323 U.S. 134 (1944)........................................................ 29

*Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534 (7th Cir. 1988) ............... 18, 19, 21, 40

*Thorington v. Sally Beauty Supply LLC,* 2017 WL 1954539 (E.D. Va. 2017)..... 23, 31

*Valenzuela v. Cochise Cnty.,* No. CV-12-00463-TUC-CKJ, 2013
WL 85350 (D. Ariz. Jan. 8, 2013).......................................................... 32

*Weathers v. Houston Methodist Hosp.,* 116 F.4th 324 (5th Cir. 2024)...... 10, 11, 41-42

*Wilkes v. Nucor-Yamato Steel Co.,* 2015 WL 5725771 (E.D. Ark.
Sept. 29, 2015) ................................................................................. 32

*Zipes v. Trans World Airlines Inc.,* 455 U.S. 385 (1982) ........................................... 39

**Statutes**

28 U.S.C. § 1291 ...................................................................................................... 1

28 U.S.C. § 1331 ...................................................................................................... 1

29 U.S.C. § 626 ...................................................................................................... 16

42 U.S.C. § 12117 .............................................................................................. 1, 16

42 U.S.C. § 2000e-5 ............................................................................................... 16

**Rules**

Fed. R. App. P. 4(a)(4)(A)(iv) ............................................................................ 1, 12

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 14

Fed. R. Civ. P. 12(c) ............................................................................................. 14

Fed. R. Civ. P. 12(d) ............................................................................................. 14

Fed. R. Civ. P. 59(e) .......................................................................................... 1, 11

**Regulations**

29 C.F.R. § 1601.12 ........................................................................................ 17, 22

29 C.F.R. § 1601.13 ............................................................................................... 16

29 C.F.R. § 1626.8 ................................................................................................. 17

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Kimberly Ballard commenced this action against Defendant-Appellee Ameren Illinois Company ("Ameren") in the United States District Court for the Central District of Illinois pursuant to § 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a). The jurisdiction of the district court was provided by 28 U.S.C. § 1331.

On January 7, 2025, the district court issued an Order & Opinion granting Ameren's Motion to Dismiss, Dkt. #9; A-2,[1] and entered its Judgment in a Civil Case, Dkt. #10; A-1. Ms. Ballard filed a Motion for Reconsideration on February 3, 2025, Dkt. #15, which the district court accepted as a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Dkt. #22 at 2; A-14. The district court issued an Order denying Ms. Ballard's Motion for Reconsideration on March 11, 2025. Dkt. #22; A-13.

On April 2, 2025, Ms. Ballard filed her Notice of Appeal in the district court. Dkt. #23. Her Notice of Appeal was timely because it was filed within 30 days of the district court's denial of her Motion for Reconsideration. Fed. R. App. P. 4(a)(4)(A)(iv). This appeal is from a final judgment that adjudicated all claims with respect to all parties, and no parties or issues remain in the district court. The jurisdiction of this Court is provided by 28 U.S.C. § 1291.

---

[1] Citations to "Dkt." are to the district court docket entries in *Ballard v. Ameren Illinois Co.,* No. 24-cv-1185 (C.D. Ill.). Citations to "A-" are to pages in the short appendix filed with this brief.

## STATEMENT OF THE ISSUES

1.  Ms. Ballard timely submitted a Complainant Information Sheet ("CIS") to the Illinois Department of Human Rights ("IDHR") in which she alleged discrimination and retaliation that she had suffered at Ameren because of her physical disability. In her CIS, she requested the IDHR to investigate her allegations and to cross-file her claims with the Equal Employment Opportunity Commission ("EEOC"), and she authorized the EEOC to "look into the discrimination alleged [in her CIS]." In *Federal Express Corp. v. Holowecki,* 552 U.S. 389 (2008), the Supreme Court ruled that an informal pre-charge document filed with the EEOC qualifies as a "charge" for purposes of the limitations periods in federal antidiscrimination statutes if the document (1) alleges discrimination, (2) names the charged party, and (3) requests the agency to take remedial action. The lower court ruled that Ms. Ballard had not filed a charge with the EEOC within the 300-day period required by the ADA, relying on this Court's decision in *Carlson v. Christian Bros. Servs.*, 840 F.3d 466 (7th Cir. 2016), in which this Court had ruled that a CIS does not qualify as a charge under the *Holowecki* standard. Should this Court reconsider its decision in *Carlson* in light of the fact that Ms. Ballard's CIS expressly requested both the IDHR and the EEOC to take remedial action on her claims and the uniform decisions from other circuits that informal documents like the CIS, particularly those that ask the EEOC to "look into" alleged discrimination, qualify as charges?

2.  After receiving Ms. Ballard's CIS, the IDHR assured her, prior to the expiration of the ADA's 300-day charge-filing period, that she had filed a charge and that "no further action is required of you at this time." In light of this Court's

repeated rulings that the charge-filing period should be tolled when a complainant fails to file a timely charge because of misleading statements by agency officials, did the district court err in failing to equitably toll the charge-filing period for Ms. Ballard?

<div align="center">STATEMENT OF THE CASE</div>

## I. Statement of Facts

Kimberly Ballard was hired by Ameren on August 12, 2013, as an energy efficiency advisor. Dkt. #1 at 2. On February 9, 2015, while attending a work-related conference, she fell and injured her wrist. *Ibid.* In February and July 2015, she underwent surgeries to address the injury, but it never fully healed. *Id.* at 2–3.

Thereafter, Ameren repeatedly discriminated against Ms. Ballard because of her physical disability. It withheld workers' compensation benefits from her, despite her prevailing on her claims at the Illinois Workers' Compensation Commission. *Id.* at 4–5. She was repeatedly harassed by her supervisors because of her disability, and Ameren refused to provide her with sufficient accommodations. She was blamed for the circumstances of her disability, which resulted in discriminatory, negative performance reviews. *Id.* at 6. When she applied for a supervisory position, she was required to take an examination administered in St. Louis, even though her non-disabled colleagues were permitted to take the exam in Peoria. *Id.* at 8. Because of her disability, she was unable to travel to St. Louis, which made her ineligible for the promotion. *Ibid.*

Ms. Ballard reported her harassment to Ameren's management, but the discrimination continued. In retaliation for raising her concerns, she was given

<div align="center">3</div>

negative performance reviews and was criticized by her supervisors. *Id.* at 6, 9. She was accused of "not being inclusive" and told to "take some accountability" when she informed her supervisors that she needed to undergo a third surgery because of her disability. *Ibid.* The discrimination against Ms. Ballard culminated in her discharge from Ameren's employment on February 26, 2018. *Id.* at 9.

## II. Proceedings Below

On August 24, 2018 (180 days after her discharge), Ms. Ballard submitted a CIS to the IDHR in which she complained of the discrimination and retaliation that she suffered at Ameren and requested that the IDHR investigate her alleged violations of the Illinois Human Rights Act ("IHRA"). Dkt. #6-1 at 11–14; A-17 – A-20.

Section 5 of the CIS instructed Ms. Ballard to provide a "DESCRIPTION OF THE ISSUES AND BASES YOU ARE REQUESTING IDHR TO INVESTIGATE." A-18 (emphasis in original). In the subsection titled "1st COMPLAINT," she asked the IDHR to investigate her claim that she had been discharged by Ameren on February 26, 2018, because of her disability, and she named the two Ameren officials who had discriminated against her by discharging her. A-18.[2] Her CIS provided a detailed account of how Ameren had learned of her disability prior to her discharge. A-19.[3]

---

[2] She named Keith Martin, Director of Energy Efficiency, and Scott Jarmon, H.R. A-18.

[3] "I fell on February 9, 2015 and was off work for approx (6) months in 2015 because of multiple surgeries while on FMLA. I returned with restrictions after the 2nd surgery in 2015. On January 23, 2018, I advised Ken Woolcutt, Deb Perry, and John Fey (HR), I would be undergoing left shoulder surgery; however, the surgery date was not scheduled until March 2018 because of an infected tooth situation. I was terminated right before this surgery." A-19.

In addition, in the subsection of the CIS entitled "2nd COMPLAINT," Ms. Ballard asked the IDHR to investigate her claim that she had been retaliated against by five named managers at Ameren[4] for raising claims of discrimination by being "[m]arginalized/isolated; exclu[ded] from meetings/emails/assignments" and subject to "job duty changes; violations of privacy, verbal abuse, increased scrutiny, lower reviews." A-18. In support of her retaliation claim, she named the individuals to whom she had reported the discrimination against her and the dates of her reports. A-19.[5]

Ms. Ballard signed the CIS on August 23, 2018, thereby "verifi[ing] the accuracy of the information provided herein." A-20. In so signing, she stated that she understood that, "if my charge is regarding an employment jurisdiction, IDHR may also file my charge of discrimination with the EEOC if it has jurisdiction, and I authorize the EEOC to look into the discrimination alleged above." *Ibid.* By signing the CIS, Ms. Ballard also expressed her understanding that, "in the course of investigating my charge, IDHR will reveal my identity (including my name) and my personal information to named Respondent(s) in my charge to obtain facts and evidence regarding my charge." *Ibid.* The CIS stated that "IDHR must establish if it has the right under the law to investigate your claim" and that "[i]f IDHR accepts

---

[4] In the CIS, Ms. Ballard named Keith Martin, Ken Woolcutt, Deb Perry, Wanda Cruz, and John Fey. A-18.

[5] "I reported unlawful discrimination on the following dates and to the following persons: 11/10/15 (John Fey, Ken Woolcutt, Keith Martin); 11/19/15 (Sharon H. Davis (VP); formal complaint with the EEOC 12/4/15 and later withdrew it; 12/4/15 John Fey; 12/2015 Wanda Cruz 1/15/16 Ken Woolcutt; 3/17/17 Ken Woolcutt/John Fey; 9/5/17 John Fey; 11/27/17 John Fey; 01/8, 30/18 Ken Woolcutt, John Fey; 2/6/18 Deb Perry." A-19.

your claim of discrimination, information [provided by you on the CIS] will be typed on an official charge form." A-17. The CIS further stated that "THIS IS NOT A CHARGE. If IDHR accepts your claim, we will send you a charge form for signature." *Ibid.*

On December 21, 2018 (298 days after her discharge), Ms. Ballard received an email from an IDHR investigator informing her that her "information (control #19M0828.04) is recognized as having been filed on 08/24/2018 [the date she had submitted her CIS to the IDHR] by the Equal Employment Opportunity Commission (EEOC) in addition to this Department." Dkt. #7 at 68. The email assured her that "no further action is required of you at this time. You will receive either a drafted charge against Ameren Illinois to review or a request for additional information, if necessary." *Id.* at 68–69.

On July 15, 2019, nearly 11 months after she had filed her CIS, Ms. Ballard finally received the formal charge of discrimination that had been drafted by the IDHR based on the information she had provided in her CIS. Dkt. #6-1 at 15. On August 31, 2019, she signed the formal charge, which tracked her CIS, and returned it to the IDHR. Dkt. #6-1 at 21–22. The formal charge was mailed to Ameren on September 13, 2019. *Id.* at 19–20.

On November 18, 2019, Ms. Ballard received an email from the IDHR investigator assigned to her case, confirming that "[t]he charge cited was filed on August 24, 2018 [the date she had filed her CIS] and perfected on September 5, 2019." Dkt. #7 at 71. Ms. Ballard received an additional letter from the IDHR, dated

6

December 17, 2019, that further confirmed that "[t]he IDHR's records show that on August 24, 2018 [the date she had filed her CIS], you filed your charge." Dkt. #15-1 at 11. Ultimately, Ms. Ballard's charge was dismissed by the IDHR for lack of substantial evidence on August 26, 2020. Dkt. #15-1 at 15–16. On November 20, 2020, she was sent a Notice of Right to Sue by the EEOC. Dkt. #15-1 at 26.

On March 1, 2021, Ms. Ballard filed her initial lawsuit *pro se* against Ameren in the U.S. District Court for the Central District of Illinois, alleging that she had been discriminated and retaliated against on the basis of her disability in violation of the ADA. *Ballard v. Ameren Illinois Co.,* No. 1:21-cv-01076 (C.D. Ill.). On May 15, 2023, Judge Michael M. Mihm granted Ms. Ballard's motion to voluntarily dismiss the case without prejudice. On May 14, 2024, Ms. Ballard, now represented by counsel, filed the present action against Ameren in the U.S. District Court for the Central District of Illinois, once again alleging that she had been discriminated and retaliated against by Ameren on the basis of her disability in violation of the ADA. Dkt. #1.

On July 29, 2024, Ameren filed a Motion to Dismiss Ms. Ballard's complaint under Federal Rule Civil Procedure 12(b)(6), arguing *inter alia* that she had failed to timely exhaust her administrative remedies because she had filed her charge with the EEOC more than 300 days after the date on which she had been discharged by the company. Dkt. #6-1, at 4–6. In support of its Motion to Dismiss, Ameren submitted a copy of Ms. Ballard's CIS, correspondence between Ms. Ballard

7

and the IDHR, and correspondence Ameren had received from the IDHR. *Id.* at 11–22.

Relying solely on this Court's decision in *Carlson v. Christian Bros. Servs.,* 840 F.3d 466 (7th Cir. 2016), Ameren argued that Ms. Ballard's CIS did not qualify as a charge for the purposes of the ADA and, accordingly, that she had not filed a charge within the meaning of the ADA until August 31, 2019 (when she had submitted her perfected charge to the IDHR), which was more than 300 days after she had been discharged on February 26, 2018. *Id.* at 4. But, in its supporting memorandum, Dkt. #6-1, Ameren neither acknowledged nor addressed the significance of the IDHR's assurance to Ms. Ballard in the email she had received on December 21, 2018 (two days before the expiration of the ADA's 300-day charge filing limitations period), that both the IDHR and the EEOC recognized that she had satisfied the ADA's charge-filing requirement by submitting her CIS form on August 24, 2018, and that "no further action is required of you at this time." Dkt. #7 at 68–69.

Ms. Ballard filed a response to Ameren's Motion to Dismiss, arguing that her CIS had qualified as a charge for the purposes of the ADA. Dkt. #7, at 8–11. She argued that "[i]t is evident from the Plaintiff's complaints on the CIS that she was seeking relief from the discrimination, hostile work environment, and termination that she has suffered" (*id.* at 11), and, accordingly, that her CIS had satisfied the standard for pre-charge filings that qualified as "charges" established by the United States Supreme Court in *Federal Express Corp. v. Holowecki,* 552 U.S. 389 (2008). *Id.* at 10–11. In addition, she argued that "the IDHR told Plaintiff that her case was

recognized by the IDHR and the EEOC as having been filed on August 24, 2018 (referring to the IDHR's December 21, 2018 email). *Id.* at 8. She was "dependent on IDHR employees to process her charge" because she had been *pro se* when she filed her CIS with the IDHR, and so she relied on the Department's representation to "her that it was filed on August 24, 2018, as she now alleges in her complaint." *Ibid.*

On January 7, 2025, the district court issued its Order & Opinion dismissing Ms. Ballard's complaint with prejudice (Dkt. #9; A-2 – A-12) and entered final judgment against her. Dkt. #10; A-1. The court acknowledged that Ms. Ballard's argument that she should have been able to rely on the IDHR's repeated assurances that her charge had been filed on August 24, 2018, "complicat[ed] matters." Dkt. #9 at 9; A-10.

Nonetheless, the court agreed with Ameren that Ms. Ballard's CIS had not qualified as a charge for the purposes of the ADA, relying solely on this Court's decision in *Carlson*, in which this Court had ruled that a filing like the IDHR's CIS does not function as a charge "*unless it asks for relief.*" *Ibid.* (quoting *Carlson*, 840 F.3d at 467) (emphasis in original). The district court concluded that "the CIS sheet does not describe what relief she was asking for (in other words, what she was asking the IDHR to do)." *Ibid.* Therefore, because Ms. Ballard had not filed her perfected charge until August 31, 2019, more than 300 days after her discharge, the court ruled that she had failed to satisfy the ADA's 300-day charge-filing deadline. Dkt. #9, at 10; A-11. In addition, although it acknowledged the IDHR's representation to Ms. Ballard prior to the expiration of the deadline that she had

already filed a charge and that "no further action is required of you at this time" (Dkt. #9, at 9; A-10), the court denied Ms. Ballard any relief from that deadline.

Ms. Ballard, again proceeding *pro se*, filed a Motion for Reconsideration with the district court on February 3, 2025. Dkt. #15. She argued that, under the Supreme Court's *Holowecki* decision, her CIS had qualified as a charge within the meaning of the ADA, and therefore she had complied with the Act's charge-filing limitations period. *Id.* at 3–5.

In addition, Ms. Ballard asked the court to reconsider the significance of the repeated assurances she had received from the IDHR that her CIS was a charge for the purpose of ADA's charge-filing requirements. Because she had relied on the IDHR's assurances, "it would have been impossible for Plaintiff to infer the charge was not filed timely based on consistent communications with the IDHR indicating the charge was filed on August 24, 2018." *Id.* at 4. As a result, she argued that the court should have ruled that the IDHR's December 21, 2018, statement to her, 298 days after the termination of her employment, that her CIS form qualified as a charge and that there was nothing further she needed to do entitled her to the equitable tolling of ADA's 300-day limitations period even if the court concluded that the IDHR's assurance concerning the legal significance of the CIS was incorrect.[6] "IDHR was aware of [the] statutory filing deadlines and treated

---

[6] Ms. Ballard cited the recent Fifth Circuit decision in *Weathers v. Houston Methodist Hospital,* 116 F.4th 324 (5th Cir. 2024), in support of her equitable tolling argument. Dkt. #15 at 6. In *Weathers,* the Fifth Circuit approvingly cited earlier circuit decisions that had ruled that equitable tolling should be applied "when an employee seeks information from the EEOC, and the organization gives the individual incorrect information that leads the individual to file an untimely charge" and when the EEOC gives a plaintiff  (*cont.*)

Plaintiff's charge as being filed timely on August 24, 2018, which is evidenced in communications between the IDHR and Plaintiff." *Id.* at 6.

Ameren responded to Ms. Ballard's Motion for Reconsideration on February 18, 2025. Dkt. #18. It described the arguments in Ms. Ballard's motion as "substantially similar" to the arguments that her former attorney had made in responding to Ameren's initial Motion to Dismiss. *Id.* at 2. It asserted that her arguments based on *Holowecki* had been addressed by the district court in its prior Opinion dismissing her claims and, accordingly, should not be reconsidered on a motion under Federal Rule of Civil Procedure 59(e). *Ibid.*

For the first time, Ameren addressed and responded to the merits of Ms. Ballard's equitable tolling argument. It acknowledged that in the Fifth Circuit's *Weathers* decision "the Court tolled the timeline for perfecting the charge based on several misleading communications from the EEOC." *Id.* at 3. It argued that the record before the district court in Ms. Ballard's case did not support equitable tolling. But Ameren once again ignored the IDHR's December 21, 2018, assurance to Ms. Ballard that the EEOC considered the filing of her CIS form to have satisfied the ADA's charge-filing requirement and that there was nothing further she needed to do to protect her rights under federal law. Instead, Ameren erroneously told the district court that "there is a gap in Plaintiff's communication with the IDHR from the date the CIS was submitted and contact from Plaintiff on July 1, 2019." *Ibid.*

---

(*cont.*) "information that was affirmatively wrong." *Weathers*, 116 F.4th at 330 (quoting *Manning v. Chevron Chem. Co.*, 322 F.3d 874, 881 (5th Cir. 2003), and *Ramirez v. City of San Antonio,* 312 F.3d 178, 184 (5th Cir. 2002)).

11

The district court denied Ms. Ballard's Motion for Reconsideration on March 11, 2025. Dkt. #22; A-13 – A-16 The court ruled that the motion would be treated as a motion to alter or amend a judgment filed under Federal Rule of Civil Procedure 59(e), but that Ms. Ballard had failed to demonstrate "a manifest error of law or fact." *Id.* at 2; A-14 (quoting *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000)). In particular, the court found that Ms. Ballard's argument that her CIS had satisfied the *Holowecki* standard had already been made and ruled on by the court and that her motion "reveals little more than her disappointment in the Court's January 7, 2025 ruling." *Id.* at 4; A-16. However, the court ignored, and consequently failed to rule on, Ms. Ballard's separate equitable tolling argument, even though the merits of the argument had been briefed by both parties in connection with her Motion for Reconsideration.

On April 2, 2025, Ms. Ballard filed her Notice of Appeal in the district court. Dkt. #23. Her Notice of Appeal was timely because it was filed within 30 days of the district court's denial of her Motion for Reconsideration. Fed. R. App. P. 4(a)(4)(A)(iv).

## SUMMARY OF THE ARGUMENT

In *Carlson v. Christian Bros. Servs.*, 840 F.3d 466 (7th Cir. 2016), a panel of this Court ruled that the IDHR's CIS does not qualify as a charge for the purposes of federal antidiscrimination law. *Carlson's* ruling is incorrect and should be reconsidered by this Court. *Carlson* misapplied the Supreme Court's decision in *Federal Express Corp. v. Holowecki,* 552 US. 389 (2008), and is inconsistent with decisions issued by other circuit courts and dozens of district courts that have

12

concluded that informal filings that contain the same language as the CIS qualify as charges.

Under *Holowecki*, in order to satisfy the charge-filing requirement a document filed with the EEOC must be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402. Contrary to *Carlson*, filing a CIS is a request for the IDHR and EEOC to take remedial action. The form expressly asks the IDHR "to investigate" the complainant's allegations and to cross-file the charge with the EEOC, and "authorize[s] EEOC to look into the discrimination alleged [in the CIS]." A-20. This is identical to language in the Intake Questionnaire that was adopted by the EEOC following *Holowecki*, which says, "I want to file a charge of discrimination, and *I authorize the EEOC to look into the discrimination I described above.*" *See EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 755 (5th Cir. 2020). Every other federal circuit court that has addressed the issue and dozens of federal district courts have ruled that this language establishes that the intake questionnaire qualifies as a charge under *Holowecki* because it is a request for the EEOC to take remedial action.

Alternatively, if the district court correctly ruled that the IDHR's CIS is not a charge for the purposes of the ADA, then it erred in failing to equitably toll the charge-filing deadline for Ms. Ballard because of the IDHR's repeated assurances to her that her CIS was a charge. This Court has long recognized that the charge-filing requirements of federal antidiscrimination statutes are subject to equitable tolling

13

when an administrative agency misleads a claimant, thereby preventing the filing of a timely charge. On December 21, 2018, two days before the expiration of the 300-day deadline for Ms. Ballard to file a charge with the EEOC, an IDHR investigator told her that her "information [] is recognized as having been filed on 08/24/2018 [the date she filed her CIS] by the Equal Employment Opportunity Commission (EEOC) in addition to this Department. It will be cross-filed with EEOC by IDHR, so *no further action is required of you at this time.*" Dkt. #7 at 68–69; emphasis added. If Ms. Ballard's CIS was not a charge for the purposes of the ADA, then the IDHR misled her into believing that she had already complied with the charge-filing requirement. Under this Court's established precedent, she was entitled to the equitable tolling of her charge-filing deadline.

## STANDARD OF REVIEW

Ameren submitted a motion to dismiss Ms. Ballard's Complaint, purportedly under Federal Rule of Civil Procedure 12(b)(6). Dkt. #6-1 at 1. But, because Ameren was seeking dismissal based on an affirmative defense (Ms. Ballard's alleged failure to timely exhaust her administrative remedies), the motion should have been characterized as one for judgment on the pleadings under Rule 12(c). *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020). In granting Ameren's motion, the district court relied on extrinsic documents submitted by Ameren, including Ms. Ballard's CIS and correspondence between the parties and the IDHR. Dkt. #9 at 9; A-10. Because the court considered "matters outside the pleadings," it should have treated the motion as one for summary judgment. *Financial Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654, 663 (7th Cir. 2022) (quoting Fed. R. Civ. P. 12(d)).

14

This Court "review[s] a trial court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving parties and drawing all reasonable inferences in their favor." *Navratil v. City of Racine*, 101 F.4th 511, 518 (7th Cir. 2024). "Summary judgment is appropriate if 'there is no genuine dispute as to any material fact' and the moving party 'is entitled to judgment as a matter of law.'" *Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025) (quoting Fed. R. Civ. P. 56(a)).

In its orders, the district court declined to toll the deadline for Ms. Ballard to file a charge with the EEOC. Dkt. #9, at 9; A-10; Dkt. #22; A-13 – A-16. This Court "review[s] a district court's decision to deny equitable tolling for abuse of discretion." *Dent v. Charles Schwab & Co., Inc.*, 121 F.4th 1352, 1353 (7th Cir. 2024).

## ARGUMENT

**I. The District Court Erred in Ruling That Ms. Ballard's Complainant Information Sheet Did Not Qualify as a Charge for the Purpose of Satisfying the Charge-Filing Limitations Period in the Americans with Disabilities Act.**

    **A. In *Federal Express Corp. v. Holowecki*, the Supreme Court Ruled That a Pre-Charge Filing Qualifies as a Charge If It Asks the EEOC to Take Action to Vindicate the Complainant's Rights.**

Federal antidiscrimination statutes, such as Title VII of the 1964 Civil Rights Act (Title VII), the Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act (ADEA), require that an individual who claims to have been the victim of unlawful discrimination must file a "charge" with the EEOC before having the right to file suit in federal district court asserting those

15

claims. *See* 42 U.S.C. § 2000e-5 (Title VII), 42 U.S.C. § 12117 (ADA), and 29 U.S.C. § 626(d)(1) (ADEA). Both Title VII and the ADA[7] provide that the charge must be filed within 300 days after the alleged unlawful employment practice has occurred when the complainant initially has instituted proceedings with a state or local agency with authority to grant relief from such practice (an "FEP agency"), such as the IDHR. 42 U.S.C. § 2000e-5(c)(1).[8]

In *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), the Supreme Court considered what filings with the EEOC qualify as "charges" under the ADEA. Patricia Kennedy, a Federal Express ("FedEx") employee, sought to initiate claims of age discrimination against the company in December 2001 by filing an Intake Questionnaire with the EEOC along with an affidavit supporting her allegations.

In April 2002, more than 60 days after she had filed the questionnaire, Ms. Kennedy filed her ADEA suit in federal court. FedEx moved to dismiss the action on the ground that Ms. Kennedy had not filed a charge with the EEOC at least 60 days before filing suit, as required by 29 U.S.C. § 626(d). Ms. Kennedy argued, and the Supreme Court majority ultimately agreed, that her intake questionnaire had

---

[7] The ADA adopts Title VII's enforcement procedures as the procedures to be used by "any person alleging discrimination on the basis of disability in violation of any provision of this chapter." 42 U.S.C. § 12117(a).

[8] When the charge has first been filed with the FEP agency and the charging party requests that the charge be cross-filed with the EEOC, the charge will be deemed to have been filed with the Commission upon the expiration of 60 days "after a written and signed statement of facts upon which the charge is based was sent to the FEP agency." 29 C.F.R. § 1601.13(b)(1). Ms. Ballard filed the "written and signed statement of facts" in her CIS on August 24, 2018. Accordingly, under the EEOC's regulation, her charge should have been deemed to have been filed with the EEOC 60 days later, well within the 300-day charge-filing limitations period.

16

qualified as a charge and, accordingly, that she had timely exhausted her administrative remedies before filing suit.

The Supreme Court acknowledged that the term "charge" is not defined in the ADEA. 552 U.S. at 395. As a result, the Court first looked to relevant EEOC regulations that provided context to understanding that term.[9] *Id.* at 395-96. However, the EEOC explained to the Court that its charge-content regulations were not intended to be exhaustive, and therefore not every document filed with the agency that contained the elements described in its regulations necessarily qualifies as a charge. *Id.* at 397. The EEOC instead proposed that the proper test to determine whether a filing constitutes a charge "is whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Id.* at 398. The Court accepted the agency's proposed construction of the statutory term "charge." *Id.* at 399.

---

[9] One ADEA regulation, 29 C.F.R. § 1626.8(a), lists the information that a charge should contain: (1)-(2) the names, addresses, and telephone numbers of the person making the charge and the charged entity; (3) a statement of facts describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings. Nonetheless, § 1626.8(b) provides that, notwithstanding the provisions of paragraph (a), a charge is "sufficient" if it is a written statement that conforms to the requirements of § 1626.6 ("Form of charge"), which requires only that the filing shall be "in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s)." *Holowecki*, 552 U.S. at 395-96.

The EEOC has adopted virtually identical regulations concerning the content of charges alleging discrimination under Title VII and the ADA. *See* 29 C.F.R. § 1601.12(a) and (b). This Court recognized in *Philbin v. Gen. Elec. Capital Auto Lease, Inc.,* 929 F.2d 321, 323 (7th Cir. 1991), that "[i]n § 1601.12(b), the EEOC relaxed the requirements [of § 1601.12(a)] by declaring that notwithstanding § 1601.12(a) a charge was sufficient if it was a written statement precise enough to identify the parties and generally describe the complained of practices."

17

In *Holowecki*, the Court recognized the need to define the term "charge" in such a way that will allow the EEOC to fulfill its separate statutory functions of enforcing the federal antidiscrimination laws and disseminating information about those laws to the public. The Court explained that Congress intended that the EEOC would provide an "educational" service by answering the public's questions and that doing so would comprise much of the EEOC's work. In practice, many of the filings submitted to the EEOC originate from individuals who are only seeking information. Thus, the Court recognized that it is important for the EEOC to be able to distinguish between filings that qualify as charges, the allegations of which must be investigated, and those that are merely requests for information. *Id.* at 400-01. The Court concluded that, in order to qualify as a charge, a document filed with the EEOC must contain the information required by the EEOC's regulations (the name of the prospective respondent and a general allegation of the discriminatory act(s)) and must also "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402. In other words, the Court ruled in *Holowecki* that a filing constitutes a charge if it contains (1) an allegation of discrimination, (2) the name of the charged party, and (3) a request that the agency pursue remedial action.[10]

---

[10] In *Holowecki,* the Supreme Court observed that "some Courts of Appeals . . . take a position similar to the Government's in this case, that an Intake Questionnaire can constitute a charge if it expresses the filer's intent to activate the EEOC's enforcement processes." 552 U.S. at 396. The Supreme Court cited this Court's pre-*Carlson* decision in *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 542 (7th Cir. 1988), for this proposition. In *Steffen,* this Court had ruled that "the Intake Questionnaire clearly gave the EEOC (*cont.*)

18

The Supreme Court asserted in *Holowecki* that the filing should be evaluated from the viewpoint of an objective observer "to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Ibid*. The Court emphasized that "under this permissive standard a wide range of documents might be classified as charges," a result that is consistent with Congress's purpose in enacting the ADEA. Congress expected that the enforcement process set forth in statutes like the ADEA would be initiated by laypersons, not lawyers intimately familiar with the system and its complex workings. "The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." Accordingly, "a charge can be a form, easy to complete, or an informal document, easy to draft." *Ibid*. The Court concluded that the test proposed by the EEOC fulfilled this purpose. Documents filed with the EEOC should be construed "to protect the employee's rights and statutory remedies." *Id*. at 406. Accordingly, a permissive definition of "charge" is appropriate.

In *Holowecki*, the Court applied this standard to the Intake Questionnaire filed by Ms. Kennedy and found that the form contained all of the information specified in the EEOC's ADEA regulations.[11] The questionnaire was not labeled a "Charge of

---

(*cont.*) more than reasonable notice that, by filing the Intake Questionnaire, Steffen intended to 'activate the Act's machinery.'" *Id*. at 544. *See also Philbin,* 929 F.2d at 324-25 (*semble*). Notably, this Court did not cite or discuss its earlier *Steffen* and *Philbin* decisions in its decision in *Carlson*.

[11] The intake form contained the employee's and employer's names, addresses, and telephone numbers; an allegation that she and other employees had been the victims of age discrimination; the number of employees who worked at the FedEx facility where (*cont.*)

19

Discrimination" and did not explicitly contain a request for the EEOC to act. Indeed, the language of the form suggested that the questionnaire was simply a "pre-charge filing." However, Ms. Kennedy requested the EEOC to "please force Federal Express to end their age discrimination plan." The Court found that the phrase properly sought the EEOC to take enforcement action. Moreover, the Court recognized that, even absent a clear request for the EEOC to take such action, there will be instances where "the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required." *Id.* at 405. The Court also observed that Ms. Kennedy had checked a box on her pre-filing form granting consent to the agency to disclose her identity to her employer. *Id.* at 406. This, the Court explained, indicated a sufficient interest in pursuing action and qualified her intake questionnaire as a charge under the standard adopted by the Court. *Ibid.*

FedEx argued that Ms. Kennedy's intake questionnaire should not qualify as a charge because the EEOC has failed to fulfill its mandatory duty of notifying the company and initiating its conciliation process. The Supreme Court rejected FedEx's argument, explaining, "The statute requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action. . . . It would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the

---

(*cont.*) she was stationed; and a statement indicating that she had not sought the assistance of any other government agency regarding her claims. 552 U.S. at 404.

20

parties have no control." *Id*. at 403-04. *See also Steffen,* 859 F.2d at 544 ("The EEOC's failure to act on a charge . . . does not bar a person from maintaining an ADEA action.").

The holding in *Holowecki* provides for a flexible determination of what constitutes a charge for purposes of satisfying the statutory charge-filing limitations period. The *Holowecki* standard reflects and embodies Congress's purpose of protecting the rights of individuals alleging discrimination. In summary, the Supreme Court established in *Holowecki* that a form filed with the EEOC or one of its counterpart state or local antidiscrimination agencies qualifies as a charge if it can reasonably be interpreted as a request for the agency to undertake some form of remedial action.[12]

### B. Ms. Ballard's CIS Qualified as a Charge Under the Supreme Court's *Holowecki* Standard.

In *Holowecki*, the Supreme Court established a permissive definition of "charge." In order to constitute a charge that has been timely filed with the EEOC, the filing must (1) include allegations of discrimination, (2) name the charged party, and (3) request for the EEOC to take remedial action. 552 U.S. at 402. The CIS Form filed by Ms. Ballard satisfied all of these requirements.

The IDHR's CIS form directed Ms. Ballard to provide detailed information about the discrimination she alleged had occurred. Specifically, the form requested

---

[12] While *Holowecki* considered whether the EEOC Intake Questionnaire qualified as a charge for purposes of the ADEA, "every circuit (including this one) to have considered whether *Holowecki's* holding extends to Title VII and the ADA has determined that it does." *EEOC v. Vantage Energy Servs., Inc.,* 954 F.3d 749, 754 (5th Cir. 2020) (collecting cases).

21

information about the basis of the discriminatory action, the date of the alleged acts, and the party who had committed the discrimination. Dkt. #6-2 at 2; A-18. The CIS form also required the filer to identify the Respondent in the action. A-17. In collecting this information, the CIS form obtained information meeting the requirements for a charge prescribed in the EEOC's regulations and later established by *Holowecki* as necessary to qualify as a charge. See 29 C.F.R. § 1601.12 (a) and (b).

In addition to meeting the content requirements in the EEOC's regulations, the CIS form also contained a clear request for remedial action by both the IDHR and the EEOC, including a request that the agencies "investigate" the alleged statutory violations. Item 5 on the CIS form asked the filer to provide a "DESCRIPTION OF THE ISSUES AND BASES *YOU ARE REQUESTING IDHR TO INVESTIGATE*." Dkt. # 6-2 at 2; A-18 (emphasis added). The form advised that "IDHR only *investigates* charges alleging specific BASES of discrimination," including both "Physical Disability" and "Retaliation." *Ibid*. (emphasis added). This language clearly indicated that, following Ms. Ballard's timely submission of her CIS, the IDHR would take remedial action, including the investigation of her claims of disability discrimination and retaliation.

The district court's conclusions that Ms. Ballard's CIS did not describe "what she was asking the IDHR to do" and that the form did not "'prompt IDHR to . . . launch an investigation'" (Dkt. #9 at 9; A-10 (quoting *Carlson,* 840 F.3d at 467)) simply ignored the document's plain, express request that the IDHR investigate her

claims[13] and the fact that the IDHR conducted just such an investigation, ultimately leading to the dismissal of her charge for lack of substantial evidence on August 26, 2020. Dkt. #15-1 at 15–16.

By signing the CIS, Ms. Ballard also expressly authorized the IDHR "in the course of investigating my charge [to] reveal my identity (including my name) and my personal information to named Respondent(s) in my charge to obtain facts and evidence regarding my charge." Dkt. #6-2 at 4; A-20. In *Holowecki* the Supreme Court ruled that the fact that Ms. Kennedy had checked a box on the Intake Questionnaire giving consent for the agency to disclose her identity to her employer supported the conclusion that her filing qualified as a charge under the Supreme Court's standard. 552 U.S. at 406.[14] Ms. Ballard's authorization to the IDHR to disclose her identity and her allegations to Ameren as part of the agency's investigation demonstrated her intent that the IDHR would take remedial action, commencing with its investigation of her claims. Once again, the district court's statement that the CIS "'does not prompt IDHR to notify the employer'" (Dkt. 9 at 9; A-10 (quoting *Carlson*, 840 F.3d at 467)) simply ignored the CIS's clear language.

---

[13] The district court asserted that there was no space on the CIS that called on Ms. Ballard to describe what she was asking the IDHR to do. Dkt. #9 at 9; A-10. In so doing, the court ignored the clear language on the form that requested the IDHR to investigate her claims.

[14] Lower federal courts likewise have ruled that authorizing the agency to inform the defendant about the allegations is a specific part of launching an investigation. As the court ruled in *Thorington v. Sally Beauty Supply LLC,* "an intake questionnaire may constitute a charge if it . . . releases the identity of the accuser to the employer." *Thorington v. Sally Beauty Supply LLC,* 2017 WL 1954539 (E.D. Va. 2017).

In addition, by signing the CIS, Ms. Ballard authorized the IDHR to cross-file her discrimination and retaliation claims with the EEOC for remedial action by that agency. The CIS stated that, since Ms. Ballard was bringing employment discrimination claims to the IDHR, "IDHR may also file my charge of discrimination with EEOC if it has jurisdiction, and *I authorize EEOC to look into the discrimination alleged above*." Dkt. #6-2 at 4; A-20 (emphasis added). The Supreme Court ruled in *Holowecki* that, if the language in the claimant's filing objectively requests the EEOC to "activate its machinery and remedial processes" (552 U.S. at 402), then the filing qualifies as a charge. As discussed in more detail in subsection (C)(2), below, every Court of Appeals that has reviewed an informal pre-charge filing that has authorized the EEOC to "look into" alleged discrimination (other than this Court in *Carlson*) has ruled that this language "unquestionably" establishes that the filing contains a request for remedial action and thus qualifies as a charge under *Holowecki*.[15]

To be sure, Ms. Ballard's CIS Form stated that "THIS IS NOT A CHARGE. If IDHR accepts your claim, we will send you a charge form for signature." Dkt. #6-2 at 1; A-18. However, the Supreme Court ruled in *Holowecki* that language such as this does not preclude a filing from qualifying as a charge for purposes of satisfying the charge-filing limitations period even though a separate formal charge will be prepared by the agency and signed by the charging party at a later date. The Intake

---

[15] See *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 113 (3d Cir. 2014), and *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749 (5th Cir. 2020).

Questionnaire in *Holowecki* was not labeled a "Charge of Discrimination," instead stating that its purpose was to facilitate "pre-charge filing counseling" and to enable the agency to determine whether it has jurisdiction over "potential charges." 552 U.S. at 405. This language did not prevent the Court from concluding that Ms. Kennedy's filing qualified as a charge. Other Courts of Appeals similarly have ruled that an informal pre-charge submission may qualify as a "charge" even though it is not so labeled, so long as the *Holowecki* standards are met. *See* Subsection (C)(3), *infra*.

The conclusion that Ms. Ballard's CIS qualified as a "charge" is consistent with the purposes of the ADA and the policy underlying *Holowecki*: "to protect the employee's rights and statutory remedies." 552 U.S. at 406. Even in the absence of a clear request for agency action (unlike Ms. Ballard's CIS), the Supreme Court noted that there will be instances where a pre-filing document may constitute a charge if "the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required." *Id*. at 405. In her CIS, Ms. Ballard described her discharge and the retaliation she had suffered after reporting discriminatory conduct to Ameren. Her description of the unfair treatment she had received was sufficiently clear and the discrimination of which she had been the victim was sufficiently pervasive as to permit the IDHR and the EEOC to infer, without more, that she was requesting remedial action by the agencies. More importantly, however, Ms. Ballard's CIS included a clear request for remedial action by expressly requesting the IDHR to draft a formal charge

25

embodying her claims and authorizing the IDHR and EEOC to investigate Ameren's

discriminatory and retaliatory actions. Her submission satisfied the required

elements of a "charge" as outlined by the Supreme Court in *Holowecki*.

> **C. This Court's Ruling in *Carlson v. Christian Bros. Services* That the IDHR's CIS Does Not Qualify as a Charge Is Contrary to *Holowecki*, Is Inconsistent with Decisions from Virtually Every Federal Circuit, and Should Be Reconsidered by this Court.**

In *Carlson v. Christian Brothers Services*, a panel of this Court ruled that the

IDHR's CIS form did not qualify as a charge after *Holowecki*. 840 F.3d 466, 468 (7th

Cir. 2016). This Court's panel concluded that the CIS form did not request any

remedial action or request any relief, as required by *Holowecki*. *Ibid*. In particular,

*Carlson* rejected the argument that the CIS's authorization for the EEOC to "look

into the discrimination alleged" constituted a request for agency remedial action.

*Ibid. Carlson* further concluded that the CIS form failed to "prompt IDHR to notify

the employer" or "launch an investigation" as a charge form would. *Id.* at 467.

Lastly, the Seventh Circuit emphasized the language on the CIS form that stated

that it was not a charge and that meant the form "was merely a prelude to a charge

and not the charge itself." *Id.* at 468.

As demonstrated in the following subsections, Ms. Ballard's CIS form satisfied

the standard prescribed by the Supreme Court in *Holowecki* and qualified as a

charge for the purpose of the ADA's charge-filing limitations period. Each reason

given by the *Carlson* panel for reaching the contrary conclusion was incorrect,

inconsistent with *Holowecki*, and contrary to decisions from the courts in virtually

every other federal circuit. As a result, Ms. Ballard respectfully submits that the *Carlson* decision should be reconsidered by this Court.[16]

### 1. The *Carlson* Panel Erred in Concluding That the CIS Does Not Request Remedial Action and Relief.

The *Carlson* panel based its conclusion that the CIS form did not qualify as a charge because the form allegedly "did not request remedial action." *Carlson,* 840 F.3d at 468. In so ruling, the panel ignored the fact that the CIS form expressly requested the IDHR to take remedial action, including drafting a formal charge based on the information in the CIS and then launching an investigation of the alleged discrimination and retaliation claims set forth therein. As the form repeatedly makes clear, the purpose of the information it provided was to cause the IDHR to commence its remedial action procedures, starting with the agency's drafting of a "an official charge form" based on the information provided by the claimant in the CIS. Dkt. #6-2 at 1; A-17.

Indeed, Ms. Ballard's CIS explicitly referred to the IDHR's conduct of an investigation of her discrimination and retaliation claims no fewer than five separate times. On page 2 of the CIS, she was asked to provide a "DESCRIPTION OF THE ISSUES AND BASES YOU ARE REQUESTING IDHR TO INVESTIGATE." Dkt. #6-2 at 2; A-18 (emphasis in original). The CIS described the steps the IDHR would take "in the course of investigating my charge," including

---

[16] Ms. Ballard recognizes that, in accordance with Circuit Rule 40(e), a proposed opinion by this panel overruling *Carlson,* or one that continues to create a conflict between the circuits, will have to be circulated among the active members of this Court for a vote on whether to rehear the case *en banc*.

obtaining information from the complainant "needed to fully investigate my charge." The CIS required Ms. Ballard consent "for IDHR to disclose my identity and personal information as necessary to process and investigate my charge." Dkt. #6-2 at 4; A-20. The *Carlson* panel's conclusion that the CIS "does not . . . launch an investigation" (840 F.3d at 467) and "did not request remedial action" (*id.* at 468) is flatly contrary to the plain language of the form. The language of the CIS more than satisfied *Holowecki*'s requirement that the form "request[] the agency to activate its machinery," particularly in light of *Holowecki's* "permissive standard." *Holowecki*, 552 U.S. at 402.

### 2. *Carlson* Erred in Concluding That the Request for the EEOC to "Look into the Discrimination Alleged" Did Not Satisfy the *Holowecki* Standard.

The *Carlson* panel rejected the plaintiff's argument that the CIS was a charge because it authorized the EEOC "to look into the discrimination alleged." The panel offered only the following cryptic explanation for its conclusion: "[T]his language is a far cry from a 'charge' as the word is ordinarily understood." *Carlson,* 840 F.3d at 468. *Carlson's* conclusion is directly contrary to decisions from two federal courts of appeals and dozens of district courts in the other circuits, all of which have ruled that an informal pre-charge filing that contains this exact language satisfies *Holowecki's* request-for-remedial-action standard.

In response to the Supreme Court's decision in *Holowecki*, the EEOC revised its Intake Questionnaire to allow charging parties to check a box expressly indicating that they "authorize the EEOC to look into the discrimination alleged." *Hildebrand*

28

*v. Allegheny Cnty.*, 757 F.3d 99, 113 (3d Cir. 2014). The IDHR copied the EEOC's language in the CIS forms it drafted after *Holowecki*.[17]

Both the Third and Fifth Circuits have expressly ruled that a complainant's informal filing that has authorized the EEOC to "look into" alleged discrimination satisfies *Holowecki* and, accordingly, qualifies the filing as a charge for purposes of satisfying the limitations periods in federal antidiscrimination statutes. In direct contrast to *Carlson*, the Third Circuit ruled in *Hildebrand* that an employee who checked a box on the revised EEOC Intake Questionnaire stating the desire for the "EEOC to look into" the alleged discrimination sufficiently had requested remedial action and "unquestionably" had filed a charge of discrimination. 757 F.3d at 113.[18]

---

[17] The EEOC explained this history to this Court's panel in the amicus brief it submitted in support of the plaintiff/appellant in *Carlson v. Christian Bros. Servs.,* No. 15-3807 (7th Cir), Dkt. #16, at 16-17, arguing that the district court ruling in *Carlson* that the CIS did not qualify as a charge

> is correct only if the text above the signature line in the CIS evinces a desire for agency action to a lesser extent that checking Box 2 of the [EEOC's] Intake Questionnaire. But this conclusion has no basis in common sense or precedent. Indeed, both the signature line in the CIS and Box 2 of the EEOC's form Intake Questionnaire expressly "authorize" the "EEOC to look into the discrimination" alleged. And, until the district court did so here, no court had suggested, let alone held, that the language in the CIS is insufficient to objectively manifest a desire for remedial action. Therefore, signing the CIS should carry the same legal significance as checking Box 2 of the form Intake Questionnaire.

The *Carlson* panel effectively ignored the EEOC's explanation in its opinion. While it acknowledged that the EEOC argued in its amicus brief that Carlson's CIS was the equivalent of a charge (840 F.3d at 468), it failed to give deference to the EEOC's interpretation of the statutory term "charge" under the principles set forth in *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944), as the Supreme Court had done in *Holowecki,* 552 U.S. at 1157.

[18] The EEOC cited the Third Circuit's decision in *Hildebrand* to the *Carlson* panel on p. 17 of its amicus brief (*see* n.17, *supra*), but the panel did not discuss this contrary authority in its opinion.

In *EEOC v. Vantage Energy Servs., Inc.,* the Fifth Circuit also ruled that an EEOC Intake Questionnaire qualified as a charge under *Holowecki. EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749 (5th Cir. 2020). In filing the questionnaire, the plaintiff had "authoriz[ed] the EEOC to look into the discrimination." *Id.* at 753. The Fifth Circuit ruled that this language alone was a "clear manifestation" of his intent that the EEOC would take remedial action on his claims. *Id.* at 755. Applying *Holowecki's* "objective criteria," the court ruled that the questionnaire qualified as a charge based on its description of the allegedly discriminatory employment practices and the fact that the charging party had checked the box requesting the EEOC to "look into" the issue. *Ibid.*

District courts in virtually all of the remaining circuits have similarly ruled that pre-charge filings that have asked the EEOC to "look into" alleged discrimination have satisfied the *Holowecki* standard and the charge-filing requirements of the federal antidiscrimination statutes.

In the Second Circuit, judges in the Southern District of New York consistently have ruled that checking the box asking the EEOC to "look into the discrimination" generally "qualifies [the filing] as a charge with the EEOC for timeliness purposes." *Acheampong v. New York City Health & Hosps. Corp.*, 2015 WL 1333242, at *7 (S.D.N.Y. Mar. 25, 2015) (quoting *Brown v. City of New York*, 2013 WL 3789091 at *8 (S.D.N.Y. July 19, 2013)). *See also Miller v. St. Luke's Roosevelt Hospital Center,* 2016 WL 1275066 at *5 (S.D.N.Y. April 1, 2016) (ruling that "courts commonly hold"

30

that "authoriz[ing] the EEOC to 'look into' the discrimination" satisfies the charge requirement).

In the Fourth Circuit, district court judges have repeatedly ruled that "the content of the Intake Questionnaire . . . satisfies the EEOC's objective test of whether something may be considered a charge." *Hudgins v. PruittHealth, Inc.*, 2018 WL 6069459, at \*7 (D.S.C. Aug. 31, 2018), report and recommendation adopted, 2018 WL 5629755 (D.S.C. Oct. 31, 2018). The *Hudgins* court emphasized that the "pertinent part" of the questionnaire was its request to the EEOC to "look into" the alleged discrimination. *Ibid. See also Thorington v. Sally Beauty Supply LLC,* 2017 WL 1954539 (E.D. Va. 2017), and *Maggard v. Kids Cent., Inc.,* 2020 WL 1539293 (W.D. Va. 2020).[19]

District courts in the Sixth Circuit also have ruled that the EEOC's "look into" language satisfies *Holowecki*'s charge requirement. *See Harris-Bethea v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, 2015 WL 1458042, at \*6 (E.D. Tenn. Mar. 30, 2015) (holding that, because the plaintiff requested the EEOC look into the issue, the Intake Questionnaire meets the charge requirement).

---

[19] The District of Maryland federal court has reached a similar conclusion. *See Scott v. Maryland Dept. of Pub. Safety & Corr. Servs.*, 2015 WL 5836917, at \*4 (D. Md. Oct. 2, 2015) (holding that "by checking Box 2 [containing the 'look into' language], Scott intended to request agency action, and therefore intended the questionnaire to be a charge."). *See also Enoch v. Becton, Dickinson & Co., No.*, 2012 WL 2371049, at \*7 (D. Md. June 22, 2012)(holding that "[i]t is abundantly clear from the content of the Intake Questionnaire that . . . Mr. Enoch intended the questionnaire to be treated as a charge, and that the EEOC also regarded as a charge a questionnaire on which [the 'look into' box] was checked").

31

In the Eighth Circuit *see Wilkes v. Nucor-Yamato Steel Co.*, 2015 WL 5725771, at *8 (E.D. Ark. Sept. 29, 2015) (noting "other courts considering intake questionnaires that include these boxes [containing the 'look into' language] have found the plaintiff's choice significant, if not determinative, for the *Holowecki* requirement.").

District courts across the Ninth Circuit have consistently ruled that checking the EEOC's "look into" box satisfies *Holowecki's* charge requirements. The Northern District of California explained that checking that box "affirmatively demonstrates a desire to invoke the EEOC's power to investigate and remedy unlawful employment actions." *Pruitt v. Bayer U.S. LLC*, 2021 WL 4084505, at *3–4 (N.D. Cal. Feb. 16, 2021). *See also Bernhardt v. State of California Dept. of Corr. & Rehab.*, 2015 WL 2003096, at *8 (E.D. Cal. Apr. 29, 2015) (holding that "[a] reasonable factfinder could conclude Bernhardt intended the EEOC to swing into action on her behalf. Other district courts have held similarly."); *Valenzuela v. Cochise Cnty.*, No. CV-12-00463-TUC-CKJ, 2013 WL 85350, at *6 (D. Ariz. Jan. 8, 2013) (holding that "Plaintiff checked a box . . . authoriz[ing] the EEOC to look into the discrimination listed above. The Court finds that the questionnaire submitted by the Plaintiff can reasonably be construed as a request for the agency to take remedial action.").

District courts in the Tenth Circuit consistently have found the EEOC intake questionnaire to be a charge, stemming from the EEOC's deliberate restructuring of the questionnaire to include the "look into" language. *See Hawthorne v. Vatterott Educational Centers, Inc.,* 2010 WL 3258560 at *4 (N.D. Okla. Aug. 17, 2010);

32

*Drescher v. Clinton City*, 2015 WL 6680197, at \*4 (D. Utah Nov. 2, 2015); *Christensen v. Triumph Aerostructures - Tulsa, LLC,* 2020 WL 609748, at \*3 (N.D. Okla. Feb. 7, 2020); *Broyles v. Howard-DCIII, LLC*, 2014 WL 347043, at \*6 (N.D. Okla. Jan. 30, 2014); and *Carey v. Avis Budget Car Rental, LLC*, 2013 WL 4483071, at \*11 (N.D. Okla. Aug. 20, 2013).

District courts in the Eleventh Circuit repeatedly have come to the same conclusion. *See Fatz v. Winn-Dixie Stores, Inc.*, 2013 WL 4080330, at \*9 (M.D. Fla. Aug. 13, 2013); *Hammond v. Georgia*, 2012 WL 181647, at \*4 (N.D. Ga. Jan. 23, 2012); *EEOC v. Am. Sec. Assocs., Inc.*, 2022 WL 22855256, at \*16 (N.D. Ga. Apr. 27, 2022), report and recommendation adopted, 2022 WL 22855523 (N.D. Ga. May 12, 2022); *Rodrigues v. SCM I Invs., LLC*, 2015 WL 6704296, at \*4 (M.D. Fla. Nov. 2, 2015).

In *Leftwich v. Gallaudet University*, the U.S. District Court of the District of Columbia found an EEOC intake questionnaire to satisfy the charge requirement. As claimant had checked the box on the questionnaire stating that the EEOC was authorized "to look into" the alleged discrimination, the court found that the intake questionnaire satisfied *Holowecki's* action request standard. *Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 91 (D.D.C. 2012). Similarly, in *Coleman v. District of Columbia Water and Sewer Authority*, the district court found that the plaintiff "unequivocally requested" that the EEOC take remedial action by asking for the EEOC to "look into" the issue. *Coleman v. D.C. Water & Sewer Auth.*, 2018 WL 6605863, at \*1 (D.D.C. Dec. 17, 2018).

Consequently, the *Carlson* panel's conclusion that the language in the IDHR's CIS form that authorized the EEOC to "look into the discrimination alleged" did not constitute a "request for remedial action" is contrary to the uniform decisions from courts throughout the federal system, and, for this reason alone, the decision should be reconsidered by this Court.

3. **That the CIS Said It Was "Not A Charge" Did Not Preclude It from Qualifying as a Charge for the Purpose of Complying with the ADA Limitations Period.**

Finally, the *Carlson* panel attached significance to the fact that the CIS contains the language "THIS IS NOT A CHARGE" when in support of its conclusion that the form could not qualify as a charge under the *Holowecki* standard. *Carlson*, 840 F.3d at 468. However, the fact that the CIS was not a formal perfected charge for the purposes of the Illinois Human Rights Act and that it was "merely a prelude to a charge and not the charge itself" for IHRA purposes (*ibid.*) did not preclude it from qualifying as a charge for purposes of satisfying the administrative statute of limitations under the ADA. *Carlson's* formalist approach was at odds with the "permissive standard" for "informal document[s]" prescribed by the Supreme Court in *Holowecki,* 552 U.S. at 402-403. Indeed, the Supreme Court in *Holowecki* ruled that the intake questionnaire in that case was a charge even though it was "not labeled a 'Charge of Discrimination," and "[i]n fact the wording of the questionnaire suggest[ed] the opposite." *Id.* at 405.

34

*Holowecki* holds that filings are charges based on their function, not on how they are labeled.[20] As discussed above, a form qualifies as a charge if it "request[s] agency action and appropriate relief." *Holowecki,* 552 U.S. at 404. The CIS's disclaimer regarding its status under the IHRA did not preclude the filing from satisfying *Holowecki's* requirements, as this Court recognized in *EEOC v. Watkins Motor Lines, Inc.,* 553 F.3d 593, 597-98 (7th Cir. 2009), a decision not discussed by the *Carlson* panel:

> We know from [*Holowecki*] that a document may be a 'charge' even if it lacks an appropriate caption and charging language. A piece of paper that alleges discrimination and asks the agency to take remedial action suffices.

Other federal courts have reached the same conclusion. In *Aly v. Mohegan Council, Boy Scouts of America*, the First Circuit ruled that a state intake questionnaire qualified as a charge under *Holowecki. Aly v. Mohegan Council, Boy Scouts of America*, 711 F.3d 34, 43 (1st Cir. 2013). At a meeting with the Massachusetts Commission Against Discrimination ("MCAD"), a state FEP agency like the IDHR, the plaintiff filled out a "General Employment Interview Form." This filing had "the appearance of an intake form" but described itself as an "employment complaint" and collected information concerning his discrimination allegations. *Id.* at 40. The First Circuit found the form to be a valid charge based on

---

[20] The EEOC made this very argument at pp. 20-21 in its *Carlson* amicus brief (*see* n.17, *supra*):

> Nor is it significant that the CIS is not labeled a charge. . . . [W]hat is relevant to this inquiry is not a document's label, but rather whether it manifests a desire for agency action.

35

its inclusion of the date of the discriminatory act, a summary of the discriminatory actions, and the identity of the person allegedly responsible. *Id*. at 44. The court further noted that the form in question, by describing the plaintiff as a "complainant" (the same term given Ms. Ballard in her CIS) and explicitly specifying that the form was "being filed against the Respondent,", could be construed as a request for remedial action for the purposes of the federal limitation period and *Holowecki*. *Id*. at 43-44. This finding followed from *Holowecki's* expansive directive to construe forms and questionnaires "to the extent consistent . . . to protect the employee's rights and statutory remedies." *Id*. at 44 (quoting *Holowecki*, 552 U.S. at 406).

In *Apire v. Whole Foods Market Group, Inc.*, the plaintiff had filed an Intake Questionnaire with the Maine Human Rights Commission ("MHRC"), a state FEP agency like the IDHR. *Apire v. Whole Foods Market Group, Inc.*, 2016 WL 2350108, at *1 (D. Me. May 4, 2016). The Maine Intake Questionnaire repeatedly informed the complainant, in bold, that it alone was *insufficient* to constitute a charge. *Id*. at 2. The questionnaire specified that its completion "does not mean that a Complaint" has been filed, and that a complaint is only filed via separate, discrete complaint form. *Ibid.* Nonetheless, the court found that the Intake Questionnaire fully satisfied *Holowecki's* charge standard. *Id*. at 4. Applying the First Circuit's decision in *Aly*, the court ruled that the form's language was not dispositive, as the questionnaire nonetheless satisfied *Holowecki's* charge standard. *Id*. at 3.

*See also Hammond v. Georgia*, 2012 WL 181647, at *4 (N.D. Ga. Jan. 23, 2012),

where the court ruled that an EEOC intake questionnaire qualified as a charge,

"even given the precautionary language on the coversheet of the questionnaire,

which states, 'Filling out and sending us this questionnaire does not mean you have

filed a charge.'"

\* \* \*

For these reasons, Ms. Ballard respectfully submits that this Court should

reconsider and reverse its prior decision in *Carlson v. Christian Bros. Servs.*[21] The

Court should rule that the CIS form filed by Ms. Ballard with the IDHR on August

24, 2018, qualified as a charge within the meaning of the ADA. Accordingly, the

Court should rule that its filing, 180 days after her discharge, satisfied the ADA's

charge-filing limitations period and should vacate the district court's judgment and

remand the case for further proceedings on Ms. Ballard's ADA claims.

## II. The District Court Erred in Failing to Equitably Toll the Charge-Filing Period for Ms. Ballard.

In its Opinion & Order granting Ameren's Motion to Dismiss, the district court

acknowledged Ms. Ballard's argument that she should have been granted relief

from ADA's charge-filing limitations period as a result of the IDHR's December 21,

2018 email, in which she was told that both the EEOC and the IDHR had concluded

---

[21] This Court has affirmatively cited its *Carlson* decision only once in the past 9 years. In *Amen Ra v. BNSF Ry. Co.,* 795 Fed. Appx. 463, 464 (7th Cir. 2020), a panel unquestioningly cited *Carlson* for the conclusion that the IDHR's CIS "is not a formal charge for Title VII purposes because it does not ask for relief." The appellant in *Amen Ra* was *pro se* and did not argue in his briefs that *Carlson* had been wrongly decided and should be reconsidered by this Court. *See* No. 19-1428 (7th Cir.), Dkt. Nos. 16, 25.

37

that her filing of the CIS had satisfied the ADA's requirements and that "no further action is required of you at this time." Dkt. #7 at 68–69. The court recognized that the IDHR's assurances had "complicate[d] matters." Dkt. #9, at 9; A-10. Nonetheless, the court denied her any relief from the statutory limitations period. *Id.* at 10; A-11.

In its subsequent Order denying Ms. Ballard's Motion for Reconsideration, the district court simply ignored her argument (Dkt. #15 at 6) that the court should have equitably tolled the ADA's 300-day charge-filing period based on the IDHR's assurances. Dkt. #22; A-13 – A-16.

Even if this Court concludes that the district court correctly ruled that the filing of the CIS did not satisfy the ADA's charge-filing requirements, the district court nonetheless committed an abuse of discretion when it failed to equitably toll the filing period because, two days before the expiration of the ADA's charge-filing period, the IDHR lulled her into inaction by telling her that the August 24, 2018, filing of her CIS had satisfied the ADA's charge-filing requirements and that she did not need to take any further action to protect her federal statutory rights.

**A. This Court Has Repeatedly Ruled That the Charge-Filing Periods in Federal Antidiscrimination Acts Should Be Equitably Tolled When a Complainant Fails to File a Timely Charge Because of Misleading Statements by Agency Officials.**

"Congress is presumed to incorporate equitable tolling into federal statutes of limitations because equitable tolling is part of the established backdrop of American law." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 11 (2014). As both this Court and the Supreme Court have recognized, the ADA is one of these statutes: "The timely filing

38

of an EEOC charge is . . . akin to a statute of limitations and subject to waiver, estoppel, and equitable tolling under appropriate circumstances." *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999); *see also Zipes v. Trans World Airlines Inc.*, 455 U.S. 385, 393 (1982). This Court has long held that equitably tolling is "particularly appropriate if an administrative agency misleads a plaintiff," thereby lulling the plaintiff into failing to timely comply with procedural requirements. *Newbold v. Wisconsin State Pub. Def.*, 310 F.3d 1013, 1015 (7th Cir. 2002); *see also Bishop v. Gainer,* 272 F.3d 1009, 1014 (7th Cir. 2001) ("[M]isleading statements made by EEOC officers . . . have sometimes been the basis for equitable tolling.").[22]

In *Early v. Bankers Life and Casualty Co.*, this Court ruled that equitable tolling could excuse the untimely filing of a charge with the EEOC by a plaintiff who had been delayed by "[m]isleading conduct by the EEOC." 959 F.2d 75, 81 (7th Cir. 1992). Early had been discharged, allegedly unlawfully under the ADEA, on October 31, 1988. *Id.* at 77. Just like Ms. Ballard, he had 300 days (until August 27, 1989) to file a charge. *Ibid.* Early went to an EEOC office on June 8, 1989, spoke with a field investigator, and filled out an "Intake Questionnaire," which under this Court's

---

[22] *See also, e.g.*, *Anderson v. Unisys Corp.*, 47 F.3d 302, 306–07 (8th Cir. 1995) (equitably tolling the ADEA's filing deadline because a state agency had incorrectly told the plaintiff that the deadline was one year, not 300 days); *Martinez v. Orr*, 738 F.2d 1107, 1111–12 (10th Cir. 1984) (equitably tolling the deadline for filing a Title VII suit because the plaintiff had been "misled and lulled into inaction by the EEOC" and "the protections of Title VII were not intended only for the prudent, the savvy, or the legally trained"); *Schroeder v. Copley Newspaper*, 879 F.2d 266, 271 (7th Cir. 1989) (holding that equitable tolling would have been warranted had "the EEOC 'affirmatively induced' or 'lulled' [the plaintiff] into inaction.").

precedent at the time,[23] could qualify as a charge for the purposes of the statute's charge-filing requirement. *Id.* at 78–80. The investigator "told Early that having filled out the questionnaire Early had done everything he had to do at the administrative level and had two years to file suit. Early naturally understood this to mean that he had filed a formal charge." *Id.* at 80. This Court ruled that, even if the questionnaire Early had filed did not qualify as a charge, the charge-filing deadline could be equitably tolled because of the EEOC's "[m]isleading conduct," provided that Early "filed the (real) charge as early as he realistically could given that misinformation." *Id.* at 81.

### B. The Deadline for Ms. Ballard to File a Charge Should Have Been Equitably Tolled Because of the IDHR's Repeated Assurances to Her That She Had Filed a Charge

This Court's decision in *Early* establishes that Ms. Ballard was entitled to equitable tolling because: (1) the IDHR's consistently misleading communications "'lulled' [her] into inaction," *Schroeder v. Copley Newspaper*, 879 F.2d 266, 271 (7th Cir. 1989); and (2) she "filed the (real) charge as early as [she] realistically could given that misinformation." *Early*, 959 F.2d at 81.

---

[23] *Early* predated *Holowecki*. At the time, this Court considered the EEOC's Intake Questionnaire to constitute a charge if it "contain[ed] sufficient information to satisfy the EEOC regulations concerning the sufficiency of charges" and the complainant "made clear to the EEOC's Intake Officer that he intended to 'activate the Act's machinery.'" *Steffen,* 859 F.2d at 543. In *Early*, the facts surrounding the plaintiff's Intake Questionnaire were still in dispute, so this Court ruled only that, as pled, the plaintiff could have filed a charge. 959 F.2d 75, 81.

On December 21, 2018, 298 days after her discharge and two days before the expiration of the charge-filing deadline, Ms. Ballard received an email from an the IDHR investigator informing her that:

> Your information (control #19M0828.04) is recognized as having been filed on 08/24/2018 by the Equal Employment Opportunity Commission (EEOC) in addition to this Department. It will be cross-filed with EEOC by IDHR, so *no further action is required of you at this time*. You will receive either a drafted charge against Ameren Illinois to review or a request for additional information, if necessary.

Dkt. #7 at 68–69 (emphasis added). If, contrary to Ms. Ballard's arguments in Section I of this Brief, this Court were to rule that her CIS did not qualify as a charge, then the IDHR's December 21 statement was "misleading" (*Early*, 959 F.2d at 81), because it was not true that "no further action" was required of her.[24] In order to protect her right to file suit against Ameren under the ADA, Ms. Ballard could have filed a discrimination/retaliation charge with the EEOC within the next two days. The assurance that "no further action" was required of her and the implication that she merely needed to wait to receive a "drafted charge" or "a request for additional information" affirmatively "lulled her into inaction." *Schroeder*, 879 F.2d at 271. "[I]t [was] not ... unreasonable for [her], unschooled in the law and without the aid of counsel, to take no further action ... in the belief that [she] had done that which was required of [her]." *Weathers v. Houston Methodist*

---

[24] Of course, if this Court agrees with Ms. Ballard that her CIS qualified as a charge, then her filing of the form on August 24, 2018, only 180 days after her discharge, was timely under the ADA, the IDHR investigator's December 21, 2018, statement that "no further action is required of you at this time" was not misleading, and the district court's conclusion that Ms. Ballard had not filed a timely charge was incorrect.

*Hosp.*, 116 F.4th 324, 331 (5th Cir. 2024) (quoting *Melgar v. T.B. Butler Publg. Co., Inc.*, 931 F.3d 375, 381 (5th Cir. 2019)).

Moreover, Ms. Ballard was entitled to equitable tolling, not only because of the misinformation given to her by agency officials, but also because "[she] filed the (real) charge as early as [she] realistically could given that misinformation." *Early*, 959 F.2d at 81; *cf. Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990) ("We hold that a plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information."). Prior to July 15, 2019, when she finally received the formal charge that she had been awaiting, Ms. Ballard had no reason to believe that she had not properly filed a timely charge when she had filed her CIS with the IDHR in August 2018. Upon receiving the charge drafted for her by the IDHR based on the information contained in her CIS, she promptly signed it and returned it to the IDHR.[25]

Indeed, even after filing her formal charge, Ms. Ballard continued to receive assurances from IDHR that her CIS was a "charge" for the purposes of the ADA, and so she had no reason to raise this issue with the IDHR or EEOC. On November 18, 2019, months after filing her formal charge, Ms. Ballard received an email from the IDHR, stating that "[t]he charge cited was filed on August 24, 2018 [the date

---

[25] The formal charge was mailed to Ms. Ballard on July 15, 2019. She wrote back on August 8, pointing out minor errors and omissions the IDHR had made in preparing her charge. The IDHR corrected those errors and omission so that Ms. Ballard's charge matched her CIS. On August 31, she signed and returned the formal charge to the IDHR. Dkt. #6-1 at 15–16, 21–22.

she had filed her CIS] and perfected on September 5, 2019." Dkt. #7 at 71. Afterward, she received a letter from the IDHR, dated December 17, 2019, confirming that "[t]he IDHR's records show that on August 24, 2018 [the date she had filed her CIS], you filed your charge." Dkt. #15-1 at 11.

In sum, if this Court concludes that Ms. Ballard's CIS was not a charge for the purposes of the ADA, the IDHR's repeated statements to the contrary misled her to her detriment, entitling her to the equitable tolling of her charge-filing deadline. The district court's failure to provide her such relief constituted an abuse of its discretion.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be vacated and the case remanded for further proceedings.

<div style="text-align: right">

/s/ Randall D. Schmidt
Randall D. Schmidt
Edwin F. Mandel Legal Aid Clinic
  of the University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611
r-schmidt@uchicago.edu

</div>

Dated: July 9, 2025

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Seventh Circuit Rule 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,560 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit Rule 32(b8) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 12-point Century Schoolbook font for the text and 11-point Century Schoolbook font for the footnotes.

/s/ Randall D. Schmidt
Randall D. Schmidt
Edwin F. Mandel Legal Aid Clinic
   of the University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611
r-schmidt@uchicago.edu

Dated: July 9, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ Randall D. Schmidt
Randall D. Schmidt
Edwin F. Mandel Legal Aid Clinic
  of the University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611
r-schmidt@uchicago.edu

Dated: July 9, 2025

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Seventh Circuit Rule 30(d), I certify hereby that all materials required by Seventh Circuit Rules 30(a) and 30(b) are included in the attached appendix.

<div style="margin-left: 50%;">

/s/ Randall D. Schmidt
Randall D. Schmidt
Edwin F. Mandel Legal Aid Clinic
  of the University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611
(773) 702-2063
r-schmidt@uchicago.edu

</div>

Dated: July 9, 2025

**REQUIRED SHORT APPENDIX TABLE OF CONTENTS**

Judgment in a Civil Case, entered Jan. 7, 2025 (Dkt. #10) .......................................A-1

Order & Opinion Granting Defendant's Motion to Dismiss,
     entered Jan. 7, 2025 (Dkt. #9)............................................................................. A-2

Order Denying Motion for Reconsideration,
     entered March 11, 2025 (Dkt. #22) ................................................................... A-13

Plaintiff's Complainant Information Sheet (CIS) (Dkt. #6-2),
     dated Aug. 23, 2018..................................................................................... A-17

E-FILED
Tuesday, 07 January, 2025 03:10:57 PM
Clerk, U.S. District Court, ILCD

Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT
## for the
### Central District of Illinois

| | |
|---|---|
| Kimberly Ballard,      ) | |
|      ) | |
| Plaintiff,      ) | |
|      ) | |
| vs.      ) | Case Number: 1:24-cv-01185-JBM |
|      ) | |
| Ameren Illinois Company,      ) | |
|      ) | |
| Defendant.      ) | |

## JUDGMENT IN A CIVIL CASE

☐ **JURY VERDICT.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT.** This action came before the Court, and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that Plaintiff Ballard's action against Defendant Ameren Illinois Company is dismissed with prejudice.

**Dated: 1/7/2025**

s/ Shig Yasunaga
Shig Yasunaga
Clerk, U.S. District Court

A-1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| KIMBERLY BALLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-1185 |
| | ) | |
| AMEREN ILLINOIS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER & OPINION

Before the Court is Defendant Ameren Illinois Company's Motion to Dismiss Plaintiff Kimberly Ballard's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 6). Plaintiff has responded. (Doc. 7). This matter is ripe for review. For the following reasons, Defendant's Motion (doc. 6) is granted.

### BACKGROUND[1]

Plaintiff, a former employee of Ameren Illinois Company, has filed a three-count Complaint alleging that her termination was retaliatory and discriminatory in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (Doc. 1). Plaintiff worked as an energy efficiency advisor for Defendant for approximately four and a half years until she was terminated on February 26, 2018. (Doc. 1 at 2, 11). The allegations in Plaintiff's Complaint stem from an accident

---

[1] At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant]'s favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Unless otherwise noted, the alleged factual background is drawn from Plaintiff's Complaint (doc. 1).

occurring on February 9, 2015, where she fell and fractured her wrist at a work conference, which ultimately led to her being disabled. (Doc. 1 at 2). Following her February 2015 wrist surgery, Plaintiff claims that she had disputes with Defendant regarding accommodations, medical providers, her workers' compensation claim and reimbursement for attending the hearing, multiple performance review meetings, and her allotted sick leave days. (Doc. 1 at 4–6).

Plaintiff claims that on December 4, 2015, she "contacted" the Equal Employment Opportunity Commission ("EEOC") "about filing a formal complaint"— though it is unclear if a formal complaint was filed, and if one was filed, it was withdrawn—and "sent a formal complaint to [Human Resources] outlining concerns of discrimination and retaliation that began after her February 9, 2015, injury." (Doc. 1 at 5). On March 17, 2017, Plaintiff informed her manager that she was filing a formal complaint with Human Resources because she was excluded from department meetings, assignments, committees, and other forms of communication such as email. (Doc. 1 at 6). When Plaintiff raised the issue of her treatment to her manager, he dismissed them, verbally scolded her, and made comments about her disability and workers' compensation claim. (Doc. 1 at 7).

Over the next few months, Plaintiff claims she was discriminated against based on her disability when Defendant interfered with her application for a supervisory position, required her to travel when her coworkers did not have to, and gave her a performance review showing that she met expectations but needed improvement in several areas. (Doc. 1 at 8). At a meeting to discuss the performance

2

A-3

review, Plaintiff informed Defendant that she needed additional surgery related to her wrist injury and raised concerns about her treatment; Defendant discussed company culture. (Doc. 1 at 8–9). On February 26, 2018, Plaintiff claims she was terminated without any explanation; moreover, she disputes Defendant's provided reason for her termination, which is that she rejected the company's "culture." (Doc. 1 at 9–10).

Plaintiff claims that on August 23, 2018, she filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), which was cross-filed with the EEOC on August 24, 2018. (Doc. 1 at 2). After receiving her EEOC right-to-sue letter on December 10, 2020, Plaintiff filed her original *pro se* complaint on March 1, 2021, alleging that her termination on February 26, 2018, constituted discrimination in violation of the ADA.[2] (*See* doc. 7); *Ballard v. Ameren Illinois Company*, No. 21-cv-01076-MMM-JEH (C.D. Ill. Mar. 1, 2021). On April 20, 2022, the court granted Defendant's motion to dismiss as to one of Plaintiff's four counts, but specifically declined to grant Defendant's motion in full because the parties failed to provide a complete Complainant Information Sheet ("CIS") and, therefore, was unable to

---

[2] At the dismissal stage, the Court is typically confined to the pleadings alone, but "[i]t is . . . well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.' " *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994)).

Moreover, the Court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (collecting cases); *see also General Elec. Capital Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) ("[I]f the finding taken from the prior proceeding is 'not subject to reasonable dispute,' then the court has satisfied the evidentiary criteria for judicial notice." (quoting Fed. R. Evid. 201(b)).

conduct an analysis. (Doc. 7 at 43) (referencing *Ballard*, No. 21-cv-01076, at *8–9).

Plaintiff filed a motion under Federal Rule of Civil Procedure 41(a)(2), seeking

voluntary dismissal without prejudice, which was granted, and the case was

dismissed. (Doc. 6-1 at 7 n.4). Now, Plaintiff has refiled her case. (Doc. 1). Defendant

moves to dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, attaching a complete version of Plaintiff's CIS to its Motion, and asserts

that her ADA claims are time-barred because she filed her charge of discrimination

beyond the required 300-day window and that she otherwise fails to state a claim.

(Doc. 6).

<div align="center">

**LEGAL STANDARD**

</div>

To survive dismissal pursuant to Rule 12(b)(6), the complaint must contain a

short and plain statement of the Plaintiff's claim sufficient to plausibly demonstrate

entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

plaintiff is not required to anticipate defenses or plead extensive facts or legal

theories but must plead enough facts to present a story that holds together. *Twombly*,

550 U.S. at 570; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The

Seventh Circuit has consistently noted that the essential function of Rule 8(a)(2) is to

put the defendant on notice. *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020)

<div align="center">

4

A-5

</div>

("A complaint must 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" (quoting *Twombly*, 550 U.S. at 555)).

On review of a Rule 12(b)(6) motion, courts construe the complaint in the light most favorable to the plaintiff. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (citing *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016)). This means "accept[ing] all of the well-pleaded facts as true and 'draw[ing] all reasonable inferences [from those facts] in favor of the plaintiff.'" *Id.* (quoting *Kubiak*, 810 F.3d at 480–81). The Court "may reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). "'Naked assertions devoid of factual enhancement' [are] insufficient." *Dabbs v. Peoria Cnty. Ill.*, No. 16-cv-01463, 2017 WL 3574999, at *2 (C.D. Ill. Jan. 12, 2017) (quoting *Iqbal*, 556 U.S. at 678), *aff'd,* 690 F. App'x 416 (7th Cir. 2017).

## DISCUSSION

Defendant offers two reasons for dismissal. First, it argues that the Complaint is time-barred both because Plaintiff did not file an EEOC charge within the limitations period, and because she failed to timely file suit after she received a right-to-sue letter from the EEOC. Second, it argues that the Complaint fails to plead sufficient facts to state a claim. Upon review, the Court agrees that Plaintiff's claims are time-barred.

"Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the

5

A-6

statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). A plaintiff does not have to plead affirmatively that he or she has a timely claim, but a complaint can defeat itself.[3] Therefore, "dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (citation omitted). "In other words, the plaintiff 'must affirmatively plead himself out of court.'" *Id.* (quoting *Chicago Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014)).

## I.    Dismissal for Untimeliness Is Appropriate

Defendant argues that Plaintiff's claims are untimely because her administrative charge was not filed within 300 days of the alleged discriminatory conduct. (Doc. 6 at 4); 42 U.S.C. § 2000e–5(e)(1).

Before analyzing the timeliness of the administrative discrimination charge, Plaintiff argues that the law of the case doctrine applies vis-à-vis *Pinpoint, Inc. v. Amazon.com, Inc.*, 369 F. Supp. 2d 995, 998 (N.D. Ill. 2005) (Posner, J., sitting by designation) (revising previous judge's claim construction despite the absence of intervening change in the law or significant new evidence). (Doc. 7 at 6). As stated, the court previously declined to rule on whether Plaintiff's claims were timely; yet Plaintiff argues that this Court should and must adopt the previous court's ruling under the doctrine. (Doc. 7 at 6).

---

[3] Notably, however, "[t]he proper way to seek a dismissal based on an affirmative defense under most circumstances is not to move to dismiss under Rule 12(b)(6) for failure to state a claim. Rather, the defendant should answer and then move under Rule 12(c) for judgment on the pleadings." *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020).

6

A-7

The Court disagrees. In *Pinpoint*, Judge Posner opined that "the [law of the case] doctrine is not a straitjacket" and "there is no duty to adhere to the prior ruling" where the prior judge was unable to rule on the issue due to the parties' incomplete filings. *Id.* Because the court in the previous decision held that there was not enough information in front of it to make a ruling, this Court does not need to apply the doctrine as suggested by Plaintiff. This is because " '[a]s most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (dictum)). Simply put, there was no "decision upon a rule of law" in the previously filed suit, so this Court cannot apply the doctrine.

Further, because an action that is voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(2) is treated as if it had never been filed, the law of the case doctrine is inapposite because, procedurally, there is no previous case. *See Robinson v. Willow Glen Acad.*, 895 F.2d 1168, 1169 (7th Cir. 1990); *United States v. Mt. Vernon Mem'l Ests., Inc.*, 734 F.2d 1230, 1236 (7th Cir. 1984) ("[A] voluntary dismissal turns back the clock; it is as if the plaintiff's lawsuit had never been brought."); *see also* 9 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2367 (4th ed. 2024) ("[A] voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action never had been filed."). Moreover, the doctrine " 'merely expresses the practice of courts generally to refuse to reopen what has been

7

A-8

decided,' " and therefore "turns on whether a court previously decided upon a rule of law." *Christianson*, 486 U.S. at 817 (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912) (Holmes, J.)). As stated, the previous court did not "decided upon a rule of law"—it was unable to conduct an analysis because the parties failed to provide complete information (doc. 7 at 43) (referencing *Ballard*, No. 21-cv-01076, at *8–9)—therefore, this Court declines to apply the doctrine, as the doctrine is inapposite where a coordinate court did not make a decision. *Christianson*, 486 U.S. at 817. As such, the Court now turns to the issue of the timeliness of the administrative discrimination charge.

As an admonition, at this stage of the proceedings, the allegations put forth by Plaintiff must be accepted as true, and it is well-settled in the Seventh Circuit that "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). That is, Plaintiff needs to affirmatively plead herself out of court for dismissal to be appropriate.

To be timely, the administrative discrimination charge must be filed within 300 days of the date of the alleged discriminatory act, the last of which was Plaintiff's termination on February 26, 2018. (Doc. 1 at 2, 11). Accordingly, Plaintiff had to file her administrative discrimination charge by December 23, 2018, "or [she would] lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002); 42 U.S.C. § 2000e–5(e)(1). Here, Plaintiff pleads that on August 23, 2018, she filed a "charge of discrimination" with the IDHR, which was cross-filed with the

8

EEOC on August 24, 2018. (Doc. 1 at 2); *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016) ("IDHR has a worksharing agreement with EEOC, whereby a charge filed with IDHR is automatically cross-filed with EEOC."). However, it appears that Plaintiff only filed her complainant information sheet ("CIS") with the IDHR on August 23, 2018 (doc. 6-1 at 11–14), and a *complaint* "is not a charge." *Carlson*, 840 F.3d at 467.

To complicate matters, Plaintiff states that "[t]he IDHR told Plaintiff that the charge was filed on August 24, 2018[,] and perfected on September 5, 2019," and attaches the email communications with the IDHR to support this pleading. (Doc. 7 at 8). Still, "[a] charge is the administrative equivalent of a complaint filed in court; a CIS is not *unless it asks for relief* and thus functions as a charge." *Carlson*, 840 F.3d at 467 (emphasis added) (citing *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). In fact, without a request for relief, "the CIS is just a pre-charge screening form, which does not prompt IDHR to notify the employer, launch an investigation, or sponsor mediation between the parties—filing a charge form does." *Id.* Plaintiff argues that the form did request relief (doc. 7 at 10); however, the CIS sheet does not describe what relief she was asking for (in other words, what she was asking the IDHR to do). In fact, there was no space on the form that called for her to provide that information. (Doc. 6-1 at 11–14). For this reason, the Seventh Circuit has held that a CIS does not constitute a charge of discrimination—rather, it is "just a pre-charge screening form." *See Carlson*, 840 F.3d at 467.

The relevant date for purposes of the 300-day deadline is the date that the complainant filed the formal IDHR charge. 42 U.S.C. § 2000e–5(e)(1). In this case, based on documents that Defendant provided from IDHR, that date was August 31, 2019. (Doc. 6-1 at 21). That was approximately 551 days after Plaintiff's termination date. In other words, the IDHR charge was filed about 251 days after the 300-day period had expired.[4]

## II.  Timeliness of Plaintiff's Complaint

Plaintiff argues that she filed this lawsuit within ninety days of her receipt of the notice of right to sue from the EEOC, but that is just one of two deadlines she had to meet for purposes of her ADA claims. (Doc. 1 at 2). The first deadline required her to file her charge of discrimination within 300 days of the discriminatory act, which in this case was the termination of her employment on February 26, 2018. (Doc. 1 at 2, 11). Plaintiff did not meet that deadline; the Court, therefore, declines to analyze the timeliness of the latter deadline.

In sum, all of Plaintiff's claims are untimely. "A plaintiff's failure to exhaust administrative remedies is an affirmative defense, which is the defendant's burden to prove." *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007). Here,

---

[4] While Plaintiff further argues that "the CIS sheet at issue expressly states . . . that '[t]his form must be postmarked or received by the IDHR within 180 days of the date of the alleged discrimination' " (doc. 7 at 8); the CSI also says "THIS IS NOT A CHARGE. If IDHR accepts your claim, we will send you a charge form for signature." (Doc. 6-1 at 11). Thus, the issue in front of the Court was squarely addressed by the Seventh Circuit in *Carlson*, in which the court explained that the "statement on the form that we quoted above—'if IDHR accepts your claim, we will send you a charge form for signature'—makes clear that the claim was merely a prelude to a charge, and not the charge itself; and a prelude to what turned out to be nothing." *Carlson*, 840 F.3d at 468. This argument is rejected.

10

A-11

the documentation submitted is conclusive, and Defendant has met its burden of establishing that Plaintiff filed her administrative charge about 251 days after the 300-day period had expired; Plaintiff has affirmatively plead herself out of court. *See Burmistrz v. City of Chi.*, 186 F. Supp. 2d 863, 871 (N.D. Ill. 2002) ("Failure to file within the 300 days renders the charge untimely and the claimant is precluded from bringing the claim in court.").

For the reasons stated above, and because the record before the Court demonstrates that Plaintiff's charge of discrimination filed with the EEOC was 551 days after she was terminated, Defendant's Motion to Dismiss is granted.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (doc. 6) is GRANTED. Plaintiff's Complaint is DISMISSED WITH PREJUDICE.


SO ORDERED.

Entered this 7th day of January 2025.

<div align="right">
s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge
</div>

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| KIMBERLY BALLARD<br>    Plaintiff,<br><br>v.<br><br>AMEREN ILLINOIS COMPANY,<br>    Defendant. | Case No. 1:24-cv-01185-JEH |

**Order**

Now before the Court is Plaintiff's Motion for Reconsideration. (D. 15).[1] For the reasons set forth, *infra*, the Plaintiff's Motion is DENIED.

**I**

On May 14, 2024, the Plaintiff filed a Complaint against Ameren Illinois Company ("Ameren"). (D. 1). On July 29, 2024, Ameren filed a Motion to Dismiss the Plaintiff's Complaint, (D. 6), and the Plaintiff filed a Response on August 12, 2024. (D. 7). On January 7, 2025, the Court issued its Order and Opinion GRANTING the Defendant's Motion to Dismiss with prejudice and entered judgment in favor of the Defendant. (D. 9 & 10). On February 3, 2025, Plaintiff filed a Motion for Reconsideration, (D. 15), and the Defendant filed its Response on February 18, 2025. (D. 18). On February 24, 2025, the Plaintiff filed an Amended Motion for Reconsideration and on March 10, 2025, the Court GRANTED the Defendant's Motion to Strike the Plaintiff's Amended Motion for Reconsideration (D. 21 & 19). With the matter now fully briefed, the Court reaches its decision as to the Plaintiff's original Motion for Reconsideration still pending before it. (D. 15).

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

## II

Federal Rule of Civil Procedure 59 governs the "[a]ltering or [a]mending [of] a judgment." FED. R. CIV. P. 59. Rule 59 reads, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). In this case, the Court entered judgment on January 7, 2025, in favor of the Defendant, and the Plaintiff filed a timely Motion for Reconsideration on February 3, 2025. (D. 10 & 15). In considering the Plaintiff's Motion for Reconsideration, the Court will continue its analysis by applying the Rule 59 standard. "To prevail on a motion for reconsideration under Rule 59, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "Because the standards for reconsideration are exacting, the Seventh Circuit has stressed that appropriate issues for reconsideration 'rarely arise and the motion to reconsider should be equally rare.'" *Bd. of Trs. of Univ. of Ill. v. Micron Tech., Inc.*, 245 F. Supp. 3d 1036, 1044 (C.D. Ill. 2017) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

### A

Plaintiff originally filed her Complaint against the Defendant alleging three counts of violating the Americans with Disabilities Act ("ADA"). (D. 1). In response, the Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff's claims were time-barred. (D. 6). In the Court's January 7, 2025, Order granting the Defendant's Motion to Dismiss, the Court agreed with the Defendant and determined that the Plaintiff's claim was time-barred. (D. 9 at ECF p. 10). Therefore, the Court entered judgment in favor of the Defendant and dismissed the action with prejudice. (D. 9 at ECF p. 11). The Court observed, "To be timely, the administrative discrimination *charge* must be filed within 300 days of the date of the alleged discriminatory act, the last of which

2

A-14

was Plaintiff's termination on February 26, 2018." (D. 9 at ECF p. 8) (emphasis added). The Court found that Plaintiff's discrimination charge was not filed until August 31, 2019, two-hundred and fifty-one days after the three-hundred-day window to file it had already expired. (D. 9 at ECF p. 10). While the Plaintiff presented some evidence that her complainant information sheet ("CIS") may have been filed with the respective agency within the period allowed, the Court specifically found that her CIS does not qualify as a charge. (D. 9 at ECF p. 9) (citing *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016)). "A charge is the administrative equivalent of a complaint filed in court; a CIS is not *unless it asks for relief* and thus functions as a charge." *Id.* (citing *Carlson,* 840 F.3d at 467) (emphasis added). On this point, the Court found that Plaintiff's CIS sheet "does not describe what relief she was seeking" and did not include "space on the form that called for her to provide that information." *Id.* For that reason, the Court found the CIS form did not "constitute a charge of discrimination—rather it is 'just a pre-charge screening form.'" *Id*. (citing *Carlson*, 840 F.3d at 467).

In the Plaintiff's Motion for Reconsideration, she concedes that the charge was not filed until August 31, 2019, consistent with the Court's previous order and reasoning. (D. 15 at ECF p. 2). She contends, however, that her CIS filing should constitute a charge because it "implicitly requested relief," an argument previously rejected by the Court, and despite the CIS form stating at the top, "THIS IS NOT A CHARGE." (D. 15 at ECF p. 8 & D. 15-1 at ECF p. 2). In her Motion, Plaintiff attempts to relitigate facts already ruled on and cites several cases not previously raised in support of her proposition that the CIS filing constitutes a charge, and, therefore, the Court should revisit its decision. However, it is well established that "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v.*

3

*CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). The Plaintiff does not allege newly discovered evidence or that the Court committed a manifest error of law or fact as necessary for her to prevail on the Motion for Reconsideration. *See Oto*, 224 F.3d at 606. A "manifest error" is "not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Here, the Plaintiff's Motion for Reconsideration reveals little more than her disappointment in the Court's January 7, 2025 ruling. It does not reveal manifest error. Thus, reconsideration is not warranted.

### III

For the reasons set forth, *supra*, the Plaintiff's Motion for Reconsideration (D. 15) is DENIED, and the Clerk of Court is directed to maintain this case's status as CLOSED.

*It is so ordered.*

Entered on March 11, 2025.

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

4

A-16

E-FILED
Monday, 29 July, 2024 04:25:56 PM
Clerk, U.S. District Court, ILCD



**State of Illinois**

Department of Human Rights

**COMPLAINANT INFORMATION SHEET**
(For All Cases not related to Housing Discrimination)

| Office Use Only: | Control No: | Inv. Init. | Date: |
|---|---|---|---|
| | 19M0828.04 | | |

**Instructions:** Read this entire form and all of the instructions carefully before completing. All applicable questions should be answered. This form must be postmarked or received by IDHR within 180 days of the date of the alleged discrimination. IDHR must establish if it has the right under the law to investigate your claim. If IDHR accepts your claim of discrimination, information will be typed on an official charge form. The charge form must be signed, notarized and returned to IDHR in a timely manner. This form must be signed and dated. Use additional sheets if necessary.

**THIS IS NOT A CHARGE. If IDHR accepts your claim, we will send you a charge form for signature.**

If your alleged claim of discrimination is related to Housing, such as buying or renting a house or apartment or refused a request to modify your housing, please **STOP** and fill out an IDHR Housing Complainant Information Sheet.

## 1. COMPLAINANT INFORMATION

| Name: | Kim Ballard | | Address: PO Box 34 | | | | Apt No: |
|---|---|---|---|---|---|---|---|
| City: | Carmel | State: IN | | ZIP: 46082 | | Phone No: 3177976799 | |
| E-Mail: | mualumkim@aol.com | | Alt. Phone No: | | | Alt. Phone No: | |

Please provide the following information for statistical purposes only.

| Country of National Origin: USA | | Date of Birth: 1964 | | Sex: F |
|---|---|---|---|---|

## 2. WHO CAN WE CALL IF WE CANNOT CONTACT YOU

Make sure their mailing addresses are different from your mailing address. Your charge could be dismissed if you do not provide this information and we are unable to locate you.

| Name: | Elise Murray | | Address: 406 S Harrison | | | | Apt No: |
|---|---|---|---|---|---|---|---|
| City: | Frankfort | State: IN | | ZIP: 46041 | | Phone No: 3176057895 | |
| Name: | | | Address: | | | | Apt No: |
| City: | | State: | | ZIP: | | Phone No: | |

## 3. RESPONDENT INFORMATION

Write out the full legal name of the company or organization that you believe discriminated against you in Illinois (i.e. the Respondent). (Employer, Employment Agency, Financial Institution, Union, Place of Public Accommodation, School or University, etc.)

| Name: | Ameren Illinois | | Address: 6 Executive Drive | | | | |
|---|---|---|---|---|---|---|---|
| City: | Collinsville | State: IL | | ZIP: 62234 | | Phone No: 8007555000 | |
| County: | | | Website: www.ameren.com | | | | |

## 4. WHAT IS YOUR RELATIONSHIP WITH THE RESPONDENT

☒ EMPLOYMENT: Respondent is my Employer / Former Employer / Potential Employer.

NOTE: IDHR Can only investigate if the employer has 15 or more employees in Illinois. If the Respondent is an employer, does the Respondent employ:

15 or more employees in the state of Illinois ☒Yes ☐No      15 or more employees in the United States ☒Yes ☐No

☐ FINANCIAL CREDIT: Respondent is a Financial Institution, such as a bank or an insurance company, to which I applied for an account or line of credit.

☐ PUBLIC ACCOMMODATIONS: Respondent is a Public Entity or Place of Business (of which I am not a current, former, or potential employee), such as a Store, Restaurant, Public Park, Educational Program, or Public Official, and has denied me a service or access or has subjected me to a form of pervasive harassment.

☐ SEXUAL HARASSMENT IN EDUCATION: Respondent is or represents an Educational Institution in which I (or my minor child) am currently, recently, or I have applied to be enrolled that I believe has sexually harassed me (or my minor child), or has retaliated against me (or my minor child) for reporting, opposing or for participating in an investigation of sexual harassment.

| What type of business or organization is the Respondent? For example, a Private Employer, Public or Non-Profit Organization, State or Local Government, School or University (specify Public or Private, and if it is Elementary, Secondary, Vocational, etc., and your current enrollment status), Employment Agency, Municipality, Union, Bank, Insurance Company, Individual, etc.<br><br>Public Utility | Office Use Only<br><br>KO |
|---|---|

CIS-U. 12/2016

A-17

Exhibit 1

Illinois Department of Human Rights

**COMPLAINANT INFORMATION SHEET**

## 5. DESCRIPTION OF THE ISSUES AND BASES YOU ARE REQUESTING IDHR TO INVESTIGATE

Each of your COMPLAINTS of discrimination must be composed of two parts: the ISSUE and the BASIS.

The ISSUE is the harm or action that was taken against you. (Such as being discharged from your place of employment or being denied access to a public service.)

The BASIS is the legally protected class you believe is the reason for the action that was taken against you.

**IDHR can only investigate charges alleging specific BASES of discrimination:**

| | | | | |
|---|---|---|---|---|
| Age (+40) | Ancestry | National Origin | Sexual Orientation | Physical Disability or Mental Disability (unrelated to ability to do the job) |
| Race | Pregnancy | Military Status | Sexual Harassment | Arrest Record (or criminal history record ordered expunged, sealed or impounded) |
| Color | Religion | Citizenship Status | Order of Protection Status | Aiding and Abetting / Coercion (helping or forcing a person to commit discrimination) |
| Sex | Marital Status | Gender Identity | Unfavorable Military Discharge | |

Retaliation (complained about unlawful discrimination, filed a prior discrimination claim, or testified at a discrimination hearing)

Your Charge of Discrimination can have multiple COMPLAINTS.

Your BASIS can be the cause of more than one ISSUE, and each ISSUE could have been caused by more than one BASIS.

If your complaint is of SEXUAL HARASSMENT, RETALIATION, AIDING AND ABETTING, or COERCION, your Issue and Basis are the same.

**IDHR cannot investigate:** * Unfair Employment, Public Accommodation, or Union Practices such as political affiliations, personality conflicts, etc., unless such actions are alleged to be for one or more of the Bases listed above * Charges against the federal government or federal officials. * Employment charges against companies with fewer than fifteen (15) employees, unless the charge alleges sexual harassment, pregnancy, retaliation, or physical or mental disability discrimination, unless the employer is a public contractor. * Curriculum content or course offerings of Educational Programs or Institutions. * Prison Facilities. * Educational Institutions regarding discrimination in educational programs other than sexual harassment.

**1st COMPLAINT:** Describe the ISSUE or harm. Be specific and concise. (Common Issues include: Discharge from place of employment, Retaliation for filing a complaint of discrimination, Unwelcome sexual advances, Denied access to a public facility, Denied a loan, Creating an intimidating or hostile environment, or Failure to make a reasonable accommodation.)

Discharge from place of employment

| | |
|---|---|
| **BASIS:** (As described above) Disability | Date(s) of Action: February 26, 2018 |

Name and Job Title of the person who commited the action or gave you this information:

Keith Martin, Director of Energy Efficiency; Scott Jarmon, HR

Why do you feel discriminated against because of the basis you have identified, or how has this action created a hostile or offensive environment?

I was not provided a reason at the time it occurred and in the 5 years I worked here I had never received a verbal or written warning for non-performance.

How were others in your situation treated?

Able to enjoy the benefits and privileges of employment, including eligibility for a 2017 performance bonus for active employees during payout in Mar 2018

**2nd COMPLAINT:** Describe the ISSUE or harm. Be specific and concise. (Common Issues include: Discharge from place of employment, Retaliation for filing a complaint of discrimination, Unwelcome sexual advances, Denied access to a public facility, Denied a loan, Creating an intimidating or hostile environment, or Failure to make a reasonable accommodation.)

Retaliation for filing a complaint of discrimination

| | |
|---|---|
| **BASIS:** (As described above) Disability | Date(s) of Action: 12/4/15; 01/15/16; 3/17, 09/6, 11/27 17; 1/8, 1/30, 2/6 18 |

Name and Job Title of the person who commited the action or gave you this information:

Keith Martin, Director EE; Ken Woolcutt, Mgr EE; Deb Perry, Supr EE; Wanda Cruz, Director HR Compliance; John Fey, Sr Director HR

Why do you feel discriminated against because of the basis you have identified, or how has this action created a hostile or offensive environment?

Marginalized/isolated; exclusion from meetings/emails/assignments; job duty changes; violations of privacy, verbal abuse, increased scrutiny, lower reviews.

How were others in your situation treated?

The ability to perform job duties in a non-hostile and non-offensive work environment.

**Please use additional sheets as necessary to provide the above information for each complaint.**

A-18

CIS-U. 12/2016

Exhibit 1

Illinois Department of Human Rights

**COMPLAINANT INFORMATION SHEET**

## 6. IF YOU HAVE BEEN EMPLOYED BY THE RESPONDENT, PLEASE FILL IN THE FOLLOWING:

| Job Title: Energy Efficiency Advisor | | Were you on probation? | ☐Yes ☒No |
|---|---|---|---|

| Date Hired: August 13, 2013 | Salary: 89300 | ☐Hourly ☐Weekly ☐Bimonthly ☐Monthly ☒Annually |
|---|---|---|

| Department: Energy Efficiency | Supervisor: Ken Woolcutt/Deb Perry |
|---|---|

## 7. SPECIAL BASES

### 7A. If your claim involves SEXUAL HARASSMENT:

| Name of the harasser: | Job Title of harasser: |
|---|---|

Do you want the sexual harasser charged separately as an additional respondent?  ☐Yes  ☐No

| If "Yes", provide contact information for the harasser. | Address: |
|---|---|

| City: | State: | ZIP: | Phone No: |
|---|---|---|---|

Describe the action(s) taken against you. Include the date or approximate date of each action. Use additional sheets, if necessary. Common examples include: Unwelcome sexual advances, Requests for sexual favors, Action contingent upon submission to sexual conduct, or Creating a hostile, or offensive environment.

Was the conduct welcome or unwelcome? If unwelcome, how did you reject the conduct or make it known it was unwelcome?

If your complaint includes an Action contingent upon submission to sexual conduct, were you told what would happen if you did not submit to the sexual advances? If Yes, what were you specifically told, by whom, and on what date(s)?

### 7B. If you claimed PHYSICAL DISABILITY or MENTAL DISABILITY as a basis:

State your medically diagnosed disability/disabilities: I have a total wrist replacement left hand and problems throughout my left upper extremity as a result.

Explain how the Respondent became aware of each disability:
I fell on February 9, 2015 and was off work for approx (6) months in 2015 because of multiple surgeries while on FMLA. I returned with restrictions after the 2nd surgery in 2015. On January 23, 2018, I advised Ken Woolcutt, Deb Perry, and John Fey (HR), I would be undergoing left shoulder surgery; however the surgery date was not scheduled until March 2018 because of an infected tooth situation. I was terminated right before this surgery.

### 7C. If you claimed RETALIATION as a basis:

State how you opposed unlawful discrimination: (i.e., testified at a discrimination hearing, filed a prior discrimination claim, or complained about unlawful discrimination). Include dates, charge numbers, and/or the name or title of the person to whom you complained.
I reported unlawful discrimination on the following dates and to the following persons: 11/10/15 (John Fey, Ken Woolcutt, Keith Martin); 11/19/15 Sharon H. Davis (VP); formal complaint with the EEOC 12/4/15 and later withdrew it; 12/4/15 John Fey; 12/2015 Wanda Cruz  1/15/16 Ken Woolcutt; 3/17/17 Ken Woolcutt/John Fey; 9/5/17 John Fey; 11/27/17 John Fey;  01/8, 30/18 Ken Woolcutt, John Fey; 2/6/18 Deb Perry.

### 7D. If your claim involves DENIAL OF FINANCIAL CREDIT:

Explain your understanding of the qualifications necessary to obtain credit from the institution, and how you met those qualifications:

| Was a report from a credit bureau obtained? ☐Yes ☐No | Was employment or length of employment verified? ☐Yes ☐No | Was Income verified? ☐Yes ☐No | Was your residence verified? ☐Yes ☐No |
|---|---|---|---|

| Have you ever filed bankruptcy? ☐Yes ☐No  If yes, when? | Have you ever had a garnishment, attachment, foreclosure, repossession, or judgement for unpaid bills? ☐Yes ☐No  If yes, when? |
|---|---|

| Place of Employment: | Job Title: | Date Hired: |
|---|---|---|

| Salary: | Other sources of income: | Total Family Income: |
|---|---|---|

**You must sign and date the last page of this form.**

A-19

CIS-U  12/2016

Exhibit 1

Illinois Department of Human Rights

**COMPLAINANT INFORMATION SHEET**

---

**8. HAVE YOU FILED A GRIEVANCE OR COMPLAINT INTERNALLY WITH THIS RESPONDENT?** (Such as a Human Resources Department, Manager, Customer Service Center, Union, Advocacy Group, or Guidance Counselor)

If "Yes", to whom did you submit the complaint (name and job title), on what date(s), and what were the results of your complaint thus far?
Yes, on 12/04/15; 03/17/17; 09/05/17; 11/27/17; 01/8/18; 01/30/18; 2/6/18. A biased leadership and HR team either projected I was the problem by criticizing and mocking my concerns, there was a business need as justification or there were no findings despite numerous written examples and supporting documentation provided.

---

**9. HAVE YOU FILED A PREVIOUS CHARGE AGAINST THIS RESPONDENT WITH IDHR OR ANOTHER INVESTIGATORY AGENCY OR COMMISSION?** (Such as the EEOC, US Dept. of Education, or the US Dept. of Labor)

| ☒ Yes  ☐ No    If "Yes", when?  December 4, 2015 | Charge Number(s): 151204-000298 |
|---|---|

**IDHR Notice of Accessibility**

IDHR's programs are accessible to persons with disabilities in compliance with the ADA and Sec. 504 of the Rehabilitation Act of 1973. A person with a disability needing an accommodation to participate in IDHR programs should contact the ADA Coordinator at 312-814-6262, 312-814-1436 (fax), 866-740-3953 (TTY) or e-mail IDHR.ADA@illinois.gov. IDHR provides sign language interpreters upon request. For language other than English, it is the responsibility of the non-English speaking party to secure an interpreter if one is needed. The interpreter must be 18 years of age or older and able to communicate effectively in both languages.

**Notice to complainant on release of identity and personal information**

The Illinois Human Rights Act ("Act"), 775 ILCS 5/1-101 *et seq.*, and Section 2520.330 of IDHR's Rules and Regulations, 56 Ill. Admin. Code, Ch. II, Section 2520.330, require a charge to contain certain information in such detail as to substantially apprise the parties of the time, place, and facts with respect to the alleged civil rights violation. Pursuant to the Department's Rules and Regulations (2 Ill. Admin Code, Ch. X, Section 926.210), anyone who submits information to IDHR in connection with a discrimination charge should take notice and be aware of the following:

(a) All contents and files maintained by IDHR pertaining to charges shall be confidential and not subject to public disclosure. Relevant exceptions are: 1) the parties to a charge may inspect the file at any time subsequent to the written notice of substantial evidence, default, or dismissal, administrative closure, or approval of terms of settlement by the Human Rights Commission ("Commission"); 2) after the filing of a Complaint with the Commission or the institution of judicial proceedings involving a charge, the Director may release information pertaining to the charge if such information is requested of IDHR or if the Director finds such information newsworthy, useful in education or training, relevant to an issue before the General Assembly, or similarly appropriate for disclosure.

(b) Authorized personnel within IDHR analyze information that IDHR collects. This information may include personal information. IDHR staff may need to reveal some of the personal information to individuals outside the office in order to verify facts related to the charge, or to discover new facts which will help IDHR to determine whether the law has been violated. IDHR may need to disclose to Respondent correspondence that IDHR receives from Complainant or other sources.

(c) IDHR may release the identity and personal information of the parties pursuant to a Freedom of Information Act ("FOIA") request, a subpoena or a court order, and information submitted to or obtained by IDHR may also be revealed to persons outside of IDHR to enforce a Commission Order or a settlement agreement.

(d) No person is required to file a charge with IDHR and reveal personal information to IDHR; however, if a person files a charge and IDHR cannot obtain the information needed to fully investigate the allegations in the charge, IDHR may close the case.

---

**CONSENT AGREEMENT AND RELEASE**

I have read the provided "Notice to Complainant" and I understand that: 1) If my charge is regarding an employment jurisdiction, IDHR may also file my charge of discrimination with EEOC if it has jurisdiction, and I authorize EEOC to look into the discrimination alleged above; 2) In the course of investigating my charge, IDHR will reveal my identity (including my name) and my personal information to named Respondent(s) in my charge to obtain facts and evidence regarding my charge; 3) I do not have to reveal my personal information to IDHR, but IDHR may close my charge if I refuse to reveal information needed to fully investigate my charge; 4) IDHR may be required by law, subpoena, court order, and/or FOIA request to disclose my charge and information in the Department's investigation file concerning my charge to persons outside of IDHR.

If IDHR takes a charge based on the information provided, I consent for IDHR to disclose my identity and personal information as necessary to process and investigate my charge, and I release IDHR from any liability whatsoever concerning disclosure of my identity and any personal information I provided to IDHR or IDHR obtained in processing my charge.

**My signature below verifies the accuracy of the information provided herein and my consent and release as indicated above.**

| Print Name | Kim Ballard | Signature | *Kim Ballard* | Date | Aug 23, 2018 |
|---|---|---|---|---|---|

NOTE: If there is certain personal information you would like withheld, please discuss your concern with an Intake supervisor.

A-20

Exhibit 1    CIS-U. 12/2016