**No. 25-1562**

# In the United States Court of Appeals for the Seventh Circuit

KIMBERLY BALLARD,

*Plaintiff/Appellant,*

v.

AMEREN ILLINOIS COMPANY,
*Defendant/Appellee.*

On Appeal from the United States District Court
for the Central District of Illinois
Case No. 1:24-CV-01185-JEH
Honorable United States District Judge Jonathan E. Hawley

## BRIEF OF DEFENDANT/APPELLEE

Merry C. Rhoades
Maureen E. Jenner
TUETH KEENEY COOPER
MOHAN & JACKSTADT, P.C.
101 W. Vandalia Street, Suite 210
Edwardsville, IL  62025
(618) 692-4120
(618) 692-4122 (facsimile)
mrhoades@tuethkeeney.com
mjenner@tuethkeeney.com

*Counsel for Defendant/Appellee*

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: **25-1562**
Short Caption: **Kimberly Ballard v. Ameren Illinois Company**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[   ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

      **Ameren Illinois Company**

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      **Tueth, Keeney, Cooper, Mohan & Jackstadt, P.C.**

(3) If the party or amicus is a corporation: i) Identify all its parent corporations, if any; and ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      **i)     Ameren Corporation; ii)    Ameren Corporation**

Attorney's Signature: /s/ Merry C. Rhoades          Date: _8/8/2025_
Attorney's Printed Name: Merry C. Rhoades
Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes _XX_      No
Address: 101 W. Vandalia Street, Suite 210, Edwardsville, IL 62025
Phone Number: 618-692-4120      Fax Number: 618-692-4122
E-Mail Address: mrhoades@tuethkeeney.com         rev. 12/19 AK

ii

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: **25-1562**
Short Caption: **Kimberly Ballard v. Ameren Illinois Company**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[   ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

  **Ameren Illinois Company**

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  **Tueth, Keeney, Cooper, Mohan & Jackstadt, P.C.**

(3) If the party or amicus is a corporation: i) Identify all its parent corporations, if any; and ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

   **i)  Ameren Corporation; ii) Ameren Corporation**

Attorney's Signature: /s/ Maureen E. Jenner     Date: 8/8/2025
Attorney's Printed Name: Maureen E. Jenner
Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).  Yes  No XX, Merry C. Rhoades is counsel of record
Address: 101 W. Vandalia Street, Suite 210, Edwardsville, IL 62025
Phone Number: 618-692-4120  Fax Number: 618-692-4122
E-Mail Address: mjenner@tuethkeeney.com     rev. 12/19 AK

## TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ........................................................ ii

TABLE OF CONTENTS ............................................................. iv

TABLE OF AUTHORITIES ......................................................... vi

JURISDICTIONAL STATEMENT .................................................. 1

STATEMENT OF THE ISSUES ..................................................... 1

STATEMENT OF THE CASE ....................................................... 1

SUMMARY OF THE ARGUMENT .................................................. 11

STANDARD OF REVIEW ........................................................... 13

ARGUMENT ........................................................................ 15

   I.    **The District Court Properly Granted Ameren's**    15
       **Motion to Dismiss Finding that Ms. Ballard's**
       **Complainant Information Sheet did not Qualify**
       **as a "Charge," and therefore, Her Claims were**
       **Untimely**

     A.    Ms. Ballard's CIS is not a charge under *Holowecki*   17

     B.    This Court's application of *Holowecki* in *Carlson* was   20
         proper

     C.    Ms. Ballard's CIS is not a charge under *Holowecki* or   23
         *Carlson*

        i.   IDHR's CIS and EEOC's Intake Questionnaire are   24
           distinct

        ii.  Unlike the Questionnaire, as interpreted post   25
           *Holowecki*, the CIS does not request relief

        iii. Ms. Ballard's consent to release her identity does   32
           not "activate" IDHR's machinery

        iv. Ms. Ballard's CIS did not provide Ameren with   33
           sufficient notice

   II.   **The District Court did not Err by not Applying**   34
       **the Equitable Tolling Doctrine**

     A.    Ms. Ballard is not entitled to application of equitable   35
         tolling as she has not demonstrated due diligence

B.      Given IDHR's consistent communication to Ms.          41
        Ballard regarding the status of her CIS, no
        extraordinary circumstances existed

CONCLUSION                                                    48

CERTIFICATE OF COMPLIANCE                                     49

CERTIFICATE OF SERVICE                                        50

### TABLE OF AUTHORITIES

| CASES | PAGES |
|---|---|
| *Aly v. Mohegan Council, Boy Scouts of Am.*, 711 F. 3d 34 (1st Cir. 2013) | 30-31 |
| *Amen Ra. v. BNSF Ry. Co.*, 795 Fed. Appx. 463 (7th Cir. 2020) | 23 |
| *Anderson v. Flexel, Inc.*, 47 F.3d 243 (7th Cir. 1995) | 10 |
| *Apire v. Whole Foods Market Grp., Inc.*, No. 2:15-CV-479, 2016 WL 2350108 (D. Me. May 4, 2016) | 30-31 |
| *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) | 40 |
| *Ballard v. Ameren Illinois Co.*, No. 21-cv-1076 (C.D. Ill. Mar. 1, 2021) | 2, 5, 6-7 |
| *Ballard v. Ameren Illinois Co.*, No. 24-cv-1185, 2025 WL 1024396 Dkt. 1 (C.D. Ill. Jan. 7, 2025) | 2, 7-10 |
| *Burton v. Ghosh*, 961 F.3d 960 (7th Cir. 2020) | 6, 14 |
| *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990) | 35-36, 40 |
| *Calderon-Ramirez v. McCament*, 877 F.3d 272 (7th Cir. 2017) | 1 |
| *Carlson v. Christian Bros. Servs.*, 840 F.3d 466 (7th Cir. 2016) | *passim* |
| *Carlson v. Christian Bros. Servs.*, No. 15 C 1154, 2015 WL 7568452 (N.D. Ill. Nov. 25, 2015) | 28-30 |
| *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264 (7th Cir. 1996) | 10-11 |
| *Dent v. Charles Schwab & Co. Inc.*, 121 F.4th 1352 (7th Cir. 2024) | 14, 35 |
| *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75 (7th Cir. 1992) | 33, 42, 46 |
| *EEOC v. Summer Classics, Inc.*, 471 Fed. Appx. 868 (11th Cir. 2012) | 31 |
| *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749 (5th Cir. 2020) | *passim* |
| *EEOC v. Vantage Energy Servs., Inc.*, No. 4:18-cv-254 (S.D. Tx. Jan. 26, 2018) | 26-28 |

*EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593 (7th Cir. 2009)     22

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012)     2, 26, 28

*Enoch v. Becton, Dickinson & Co.,* No. 11-3551, 2012 WL 2371049
(D. Md. June 22, 2012)     25

*Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008)     *passim*

*Financial Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654 (7th Cir. 2022)     14

*Gibson v. West*, 201 F.3d 990 (7th Cir. 2000)     34

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017)     14

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994)     2, 14, 26, 28

*Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*,
167 F.3d 1170 (7th Cir. 1999)     14, 36, 40

*Hildebrand v. Allegheny Cnty.*, 757 F.3d 99 (3d Cir. 2014)     25

*Holland v. Florida*, 560 U.S. 631 (2010)     41

*Hong v. Children's Memorial Hosp.*, 936 F.2d 967 (7th Cir. 1991)     16

*Irwin v. Dep't. of Veterans Affairs*, 498 U.S. 89 (1990)     41

*Jones v. Res-Care, Inc.*, 613 F.3d 665 (7th Cir. 2010)     34

*King v. Cooke*, 26 F.3d 720 (7th Cir. 1994), *cert. denied*, 514 U.S. 1023 (1995)     10

*Lax v. Mayorkas*, 20 F.4th 1178 (7th Cir. 2021)     36, 41

*LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263 (7th Cir. 1995)     44

*Leftwich v. Gallaudet Univ.,* 878 F. Supp. 2d 81 (D.D.C. 2012)     25-27

*Lozana v. Montoya Alvarez*, 572 U.S. 1 (2014)     41

*McClendon v. Ill. Dept. of Transp.*, 181 F. Supp. 3d 578 (N.D. Ill. 2015)     25

*McGhee v. Northwestern Med./Cent. DuPage Hosp.*, No. 23 C 1167, 2023 WL
6606104 (N.D. Ill. Oct. 10, 2023)     23

*Menominee Indian Tribe of Wis. v. U.S.*, 577 U.S. 250 (2016)     35

*Murray v. Maysteel LLC,* 111 Fed. Appx. 432 (7th Cir. 2004)     34

*Nelson v. South Carolina Lottery Com'n*, No. 3:14-cv-56, 2014 WL 6473510
(D.S.C. Nov. 18, 2014)     31

*Newbold v. Wis. State Public Defender*, 310 F.3d 1013 (7th Cir. 2002)     40

*Philbin v. Gen. Elec. Capital Auto Lease, Inc.*, 929 F.2d 321 (7th Cir. 1991)     22

*Porter v. New Age Servs. Corp.*, 463 Fed. Appx. 582 (7th Cir. 2012)     33-34

*Pruitt v. Bayer U.S. LLC*, No. 19-cv-7951, 2021 WL 4084505
(N.D. Cal. Feb. 16, 2021)     27

*Rosas v. Bd. of Educ. of City of Chi.* 652 F. Supp. 3d 951 (N.D. Ill. 2023)     45

*Schroeder v. Copley Newspaper*, 879 F.2d 266 (7th Cir. 1989)     42-43

*Singletary v. Cont'l Ill. Nat. Bank and Trust Co. of Chi.*, 9 F.3d 1236
(7th Cir. 1993)     35-36

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)     18

*Sofferin v. American Airlines, Inc.*, 923 F.2d 552 (7th Cir. 1991)     16

*Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir. 1988)     22

*Stepney v. Naperville School Dist. 203*, 392 F.3d 236 (7th Cir. 2004)     15

*Thorington v. Sally Beauty Supply LLC*, No. 1:16-cv-626,
2017 WL 1954539 (E.D. Va. May 10, 2017)     32-33

*U.S. v. Wood*, 925 F.2d 1580 (7th Cir. 1991)     26, 28

*Washburn v. Sauer-Sandstrand, Inc.,* 909 F. Supp. 554 (N.D. Ill. 1995)     15

*Watkins v. Mohan*, No. 24-1151, 2025 WL 1947500
(7th Cir. July 16, 2025)     15, 41-42

*Weathers v. Houston Methodist Hosp.*, 116 F.4th 324 (5th Cir. 2024)     38-40

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)                    34

*188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730 (7th Cir. 2002)              14

**STATUES**                                                                **PAGE**

42 U.S.C. §§ 12112 to 12117                                                    1

42 U.S.C. § 2000e-5                                                     15-16, 21

**RULES**                                                                  **PAGE**

C.D. Ill. L. R. 7.1(B)(3) (2024)                                              8

Fed. R. Civ. P. 12(b)(6)                                                 1, 7, 14

Fed. R. Civ. P. 12(c)                                                        14

Fed. R. Civ. P. 41(a)(2)                                                      6

Fed. R. Civ. P. 59(e)                                                      9-10

Fed. R. Evid. 201                                                    2, 6, 26, 28

**REGULATIONS**                                                            **PAGE**

29 C.F.R. § 1601.80                                                          15

29 C.F.R. § 1601.1                                                           17

29 C.F.R. § 1601.3                                                           16

29 C.F.R. § 1601.12                                                   17, 22, 29

29 C.F.R. § 1601.13                                                        15-16

29 C.F.R. § 1626.3                                                           17

29 C.F.R. § 1626.8                                                           17

29 C.F.R. § 1626.6                                                          17

56 Ill. Adm. Code § 2520.330                                          17, 29

56 Ill. Adm. Code § 2520.350                                          17, 29

**JURISDICTIONAL STATEMENT**

Plaintiff / Appellant, Ms. Kimberly Ballard's ("Ms. Ballard") jurisdictional statement is complete and correct.

**STATEMENT OF THE ISSUES**

Ms. Ballard's statement of the issues misstates relevant facts prior to outlining the true issues in this matter. Ameren re-states the issues as follows:

1. Should this Court affirm the District Court's ruling that Ms. Ballard's claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117, ("ADA") are untimely because she filed her charge of discrimination ("charge") beyond the required 300-day limitations period, as her Complainant Information Sheet ("CIS") did not qualify as a charge in accordance with this Court's decision in *Carlson v. Christian Bros. Servs.*, 840 F.3d 466 (7th Cir. 2016) and the U.S. Supreme Court's holding in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008)?

2. Did the District Court err by not applying the equitable tolling doctrine to Ms. Ballard's claims?

**STATEMENT OF THE CASE**

Ms. Ballard's Statement of the Case omits facts that are critical to fully understanding the case[1] and, as a result, Defendant / Appellee Ameren Illinois Company ("Ameren") provides this additional statement.

---

[1] Ameren acknowledges this cause is before the Court following the District Court's grant of Ameren's Rule 12(b)(6) Motion to Dismiss, and that Ms. Ballard's allegations are assumed to be true solely for the purposes of this appeal. *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) ("We accept as true all of the well-pleaded facts in the

1

## A. Statement of Facts

Ms. Ballard is a former employee of Ameren. Dkt.[2] 1, ¶ 7. Ms. Ballard worked as an Energy Efficiency Advisor for Ameren from August 12, 2013, to February 26, 2018. Dkt. 1, ¶¶ 7; 47. She was terminated from her position at Ameren due to her adamant and defiant refusal to accept Ameren's culture and values. Dkt. 1, ¶¶ 38; 46-47. On August 23, 2018, Ms. Ballard submitted a CIS to the Illinois Department of Human Rights ("IDHR"), which was accepted as "filed" by IDHR on August 24, 2018. Dkt. 6, Ex. 1; Dkt. 7, Ex. D; A-17. Ms. Ballard's charge of discrimination was not perfected until September 10, 2019. Dkt. 6, Ex. 5.

Ms. Ballard alleged that Ameren discriminated against her after she sustained an injury to her wrist in February 2015. Dkt. 1, ¶¶ 10-18. Ms. Ballard raised general complaints about events that allegedly occurred in 2015, including issues related to the workers' compensation[3] process following her injury; her leave from

---

complaint and draw all reasonable inferences in favor of the plaintiff-appellant.") (cleaned up). However, Ameren clarifies that the merits of Ms. Ballard's discrimination claims have not been fully litigated or proven. Ameren also notes that it contests Ms. Ballard's use of the word "charge" when referencing the CIS that was accepted by IDHR on August 24, 2018, which is central to this appeal. *See* Dkt. 1, ¶ 5.

[2] Citations throughout Ameren's Brief to "Dkt." refer to filings at the District Court level, whether in reference to Ms. Ballard's case now before this Court, *Ballard v. Ameren Illinois Co.*, No. 24-cv-1185, 2025 WL 1024396; her previous 2021 lawsuit, *Ballard v. Ameren Illinois Company*, No. 21-cv-1076 (C.D. Ill. Mar. 1, 2021); or filings before other federal district courts, where applicable.

[3] Ms. Ballard's workers' compensation case is pending before the Illinois Workers' Compensation Commission ("Commission"), and, as of August 7, 2025, was at the arbitration stage. This Court is permitted to take judicial notice of the status of Ms. Ballard's workers' compensation claims, in Case No. 15WC010818, as the status of a case filed with the Commission is publicly available and is not "subject to reasonable dispute." *See* Fed. R. Evid. 201; *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (finding judicial notice of prior state court case filings proper); *see also Ennenga v. Starns*,

work; and her return to work. Dkt. 1, ¶¶ 19-28. Around December 4, 2015, Ms. Ballard contacted the Equal Employment Opportunity Commission ("EEOC") about filing a formal complaint, which she subsequently withdrew. Dkt. 1, ¶ 27. Ms. Ballard also raised general complaints about events that allegedly occurred in 2017, including issues related to meetings with her manager and Human Resources professionals. Dkt. 1, ¶¶ 32-41.

Notably, Ms. Ballard's Complaint detailed several instances where her superiors and managers expressed concerns about her job performance and behavior, including during her annual performance reviews. Dkt. 1, ¶¶ 30; 32; 33; 38; 42; 45; 46. Specifically, Ms. Ballard acknowledged that on January 2, 2018, she received a performance review that noted that "there was opportunity for improvement in the area of 'Culture.'" Dkt. 1, ¶¶ 42; 46. Ms. Ballard took exception with this statement; however, this statement ultimately became the basis for her termination of employment.

**B. Proceedings with the Illinois Department of Human Rights**

One hundred and seventy-eight days after her termination from Ameren on February 26, 2018, Ms. Ballard filed a CIS with IDHR on August 23, 2018, which was recorded as filed by IDHR on August 24, 2018.[4] Dkt 6, Ex. 1; Dkt. 7, Ex. D; A-

---

677 F.3d 766, 773-74 (7th Cir. 2012) (finding judicial notice was properly taken of "dates on which certain actions were taken or were required to be taken in the earlier state-court-litigation—facts readily ascertainable from the public court record and not subject to reasonable dispute."). Ameren is not requesting judicial notice of anything related to Ms. Ballard's workers' compensation claim beyond the status displayed publicly by the Commission.

[4] On January 31, 2019, IDHR communicated with Ms. Ballard that "[i]f a charge is able to be drafted," it would be cross-filed with EEOC. Dkt. 15, Ex. C.

17.[5] Ms. Ballard's CIS included the prominent statement: "**THIS IS NOT A**

**CHARGE**." Dkt 6, Ex. 1; A-17 (emphasis existing). It also included prominent

conditional statements, like "***[i]f IDHR accepts your claim***," among others. *Ibid.*

(emphasis added).

Two hundred and ninety-eight days after her termination from Ameren—and

120 days after filing her CIS with IDHR—Ms. Ballard followed up with IDHR on

December 21, 2018, presumably about the status of her CIS.[6] In this email, IDHR

informed Ms. Ballard that:

> Your information (control # 19M0828.04) is recognized as having been
> filed on 8/24/2018 by the [EEOC] in addition to this Department. It will
> be cross-filed with EEOC by IDHR, so no further action is required of
> you at this time. ***You will receive either a drafted charge against***
> ***Ameren Illinois to review or a request for additional information,***
> ***if necessary***. . . .

Dkt. 7, Ex. D (emphasis added).

On January 30, 2019, Ms. Ballard emailed IDHR asking whether the number

that IDHR provided to her on December 21, 2018, was also the reference number

assigned with the EEOC. Dkt. 15, Ex. C. The next day, January 31, 2019, IDHR

replied to Ms. Ballard informing her that there "is not a more specific EEOC charge

number assigned to your information ***until it is determined that a formal***

---

[5] Ameren cites to Ms. Ballard's Appendix using the page numbers in Ms. Ballard's Brief.

[6] Ms. Ballard has not provided the email that precipitated IDHR's December 21, 2018,
reply. Ameren's only access to the communication between Ms. Ballard and IDHR is
through the documents that Ms. Ballard elected to append to various filings in Case Nos.
21-cv-1076 and 24-cv-1185.

*charge of discrimination is able to be drafted. If a charge is able to be drafted regarding the allegations*, both the [IDHR] and separate EEOC charge numbers will be granted at that time. *That is also when it will be formally cross-filed with EEOC*." *Id*. (emphasis added).

One hundred and thirty-eight days later, on June 18, 2019, Ms. Ballard asked about the status of her case with IDHR. *Id*. The next communication provided by Ms. Ballard is a July 15, 2019, letter from IDHR to Ms. Ballard enclosing a "formal statement of charge . . . based on information IDHR has received from you and *which has been docketed as an <u>unperfected charge</u> and assigned the above number.*" Dkt. 6, Ex. 2 (emphasis added).

On August 8, 2019, Ms. Ballard wrote to IDHR noting corrections she made "to the original charge of discrimination." Dkt. 6, Ex. 3. Ms. Ballard wrote that she would "take some responsibility for not catching what [she] . . . highlighted and enclosed from the July letter." *Id.*

Finally, on August 31, 2019—almost nine months (253 days) after IDHR's December 21, 2018, email to Ms. Ballard; over a year (373 days) after Ms. Ballard completed her CIS; and a year and a half (551 days) after Ms. Ballard's termination from Ameren—Ms. Ballard submitted her signed charge to IDHR, which was then determined by IDHR to be perfected on September 10, 2019. Dkt 6, Ex. 5.

On September 13, 2019—over a year and a half (564 days) after Ms. Ballard's termination—Ameren received notice that Ms. Ballard's charge had been filed,

alleging that Ameren had "violated a provision of the Illinois Human Rights Act." *Id.*

Notably, on December 17, 2019, IDHR corresponded with Ms. Ballard regarding a complaint Ms. Ballard had made against IDHR. Dkt. 15, Ex. D. This letter indicated that IDHR had difficulty on several occasions delivering the charge packet to Ms. Ballard: one instance the packet was returned to IDHR's office as "Unclaimed-Unable to Forward," and in another instance Ms. Ballard informed them she does "not sign for certified letters." *Id.*

On August 26, 2020, Ms. Ballard's claim with IDHR was dismissed for lack of evidence. Dkt. 15, Ex. F. And, on November 20, 2020, Ms. Ballard received her Notice of Right to Sue from the EEOC. Dkt. 15, Ex. G.

### C.  Proceedings in Ms. Ballard's 2021 Lawsuit (Case No. 21-cv-1076)

On March 1, 2021, Ms. Ballard filed a complaint *pro se* against Ameren alleging violations of the ADA, which are the same as are alleged in the lawsuit subject of this appeal. *See Ballard v. Ameren Illinois Company*, No. 21-cv-1076, Dkt. 1 (C.D. Ill. Mar. 1, 2021).[7]

On March 14, 2023, Ms. Ballard moved to voluntarily dismiss her complaint without prejudice under Federal Rule of Civil Procedure 41(a)(2), stating that she would "suffer hardship from continuing the case." *See Ballard,* No. 21-cv-1076, Dkt.

---

[7] This Court is permitted to take judicial notice of Ms. Ballard's court filings in Case No. 21-cv-1076, as filings with a Federal District Court are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Burton v. Ghosh*, 961 F.3d 960, 962 (7th Cir. 2020) (taking judicial notice of contents of filings in plaintiff's first federal case)).

28. Ameren responded to Ms. Ballard's motion, requesting that the court dismiss Ms. Ballard's lawsuit with prejudice after Ms. Ballard declined to participate in discovery. *Id.* at Dkt. 29. Finding Ameren would not suffer "plain legal prejudice," the Central District granted Ms. Ballard's motion to dismiss her lawsuit without prejudice on May 15, 2023. *Id.* at Dkt. 31.

**D. Proceedings in Ms. Ballard's 2024 Lawsuit (Case No. 24-cv-1185)**

Ms. Ballard re-filed her suit on May 14, 2024, alleging employment discrimination and retaliation under the ADA. *Ballard v. Ameren Illinois Company*, Civil Action No. 24-cv-1185, 2025 WL 1024396, Dkt. 1 (C.D. Ill. Jan. 7, 2025).

Ameren filed its Motion to Dismiss, with supporting memorandum, on July 29, 2024, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 6. Ameren argued that Ms. Ballard's discrimination and retaliation claims failed to state a claim upon which relief could be granted, as Ms. Ballard's claims were untimely, among other arguments. Dkt. 6.

On August 12, 2024, Ms. Ballard filed her Response to Ameren's Motion to Dismiss. Dkt. 7. Ms. Ballard's arguments pertinent to this appeal included that her claim was timely as she filed her "charge" with IDHR on August 23, 2018, that she

relied on certain IDHR communications relating to when her information was filed with IDHR,[8] and that her CIS requested relief.[9] Dkt. 7, at 8-11.

The District Court issued its Order and Opinion granting Ameren's Motion to Dismiss on January 7, 2025. Dkt. 9; A-2. The District Court determined Ms. Ballard's claims were untimely, finding her CIS, as a "*complaint*," was "not a charge" under *Holowecki*, as interpreted by this Court in *Carlson*. Dkt. 9, at 8-9; A-9-10. After considering Ms. Ballard's statement that "IDHR told Plaintiff that the charge was filed on August 24, 2018[,] and perfected on September 5, 2019," the District Court concluded that "without a request for relief, the CIS is just a pre-charge screening form, which does not prompt IDHR to notify the employer, launch an investigation, or sponsor mediation between the parties—filing a charge form does." *Id.* (citing *Carlson*, 840 F.3d at 467). The District Court found that Ms. Ballard's charge was filed with IDHR on August 31, 2019, "approximately 551 days after [her] termination date." Dkt. 9, at 10; A-11.

---

[8] In her Brief, Ms. Ballard states: "Ameren neither acknowledged nor addressed the significance of the IDHR's assurance to Ms. Ballard in the email she had received on December 21, 2018." Appellant's Brief, at 8. Ameren notes this issue was first raised by Ms. Ballard in her Response to Ameren's Motion to Dismiss, and, that Ms. Ballard appended this correspondence with IDHR as an exhibit to her Response to Ameren's Motion to Dismiss. Dkt. 7, at 8; Dkt. 7, Ex. D. Prior to this motion, Ameren had not heard this argument, nor seen this communication with IDHR. Further, Ameren could not reply to Ms. Ballard's assertions raised in her Response to Ameren's Motion to Dismiss without leave of court. C.D. Ill. L. R. 7.1(B)(3) (2024). The District Court was aware of Ms. Ballard's assertion but found it not of significant importance, for the reasons more fully set forth in this Brief. Ameren also notes that Ms. Ballard had representation at this stage in the proceedings.

[9] In describing the relief reportedly requested, Ms. Ballard cited to her descriptions of the alleged discriminatory events. Dkt. 7, at 10-11.

On January 14, 2025, Ms. Ballard's counsel, Mr. Edward Moor, filed a Motion to Withdraw, which was later granted, stating that counsel and Ms. Ballard "disagree[d] on how to proceed further in this court and on appeal," and that counsel "explained to [Ms. Ballard] that[,] in his opinion there [were] no grounds to move the Court to reconsider its dismissal and that there [were] no grounds for appeal." Dkt. 13.

On February 3, 2025, Ms. Ballard filed her Motion for Reconsideration *pro se*. Dkt. 15. Ms. Ballard began her Motion for Reconsideration by stating, among other things, that she had "initially filed a charge in December 2015 with the [EEOC] but withdrew."[10] Dkt. 15, ¶ 1. In her Motion for Reconsideration, Ms. Ballard argued, among other things, that: (1) her case was distinguishable from this Court's decision in *Carlson*, Dkt. 15, ¶¶ 2-6; (2) her CIS "implicitly requested remedial relief," Dkt. 15, ¶¶ 7-15; (3) "the deference the Supreme Court gave to the EEOC should be the same deference given to the IDHR," Dkt. 15, ¶¶ 16-17; and (4) application of equitable tolling was appropriate. Dkt. 15, ¶¶ 18, 27-28.

On February 18, 2025, Ameren filed its Response to Plaintiff's Motion for Reconsideration. Dkt. 18. Ameren's primary argument was that motions to amend or alter judgments, pursuant to Federal Rule of Civil Procedure 59(e), cannot be used to advance arguments that could have been previously submitted to the court or to present evidence that was available prior to the court's consideration of the

---

[10] It is unclear whether Ms. Ballard ever formally filed a Charge with EEOC in December, 2015. Ms. Ballard's Complaint states: "Plaintiff contacted the EEOC about filing a formal complaint." Dkt. 1, ¶ 27.

9

matter. Dkt. 18, ¶ 3 (citing Fed. R. Civ. P. 59(e); *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247-48 (7th Cir. 1995); *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994), *cert. denied*, 514 U.S. 1023 (1995)). Ameren also responded to Ms. Ballard's equitable tolling argument—which was the first opportunity for Ameren to do so without leave of court—asserting that it was inapplicable to Ms. Ballard's case considering that Ms. Ballard's own conduct caused a delay in the processing of her charge.[11] Dkt. 18, ¶ 7.

On March 11, 2025, the District Court issued its Order denying Ms. Ballard's Motion for Reconsideration. Dkt. 22; A-13. In so ruling, the District Court found that Ms. Ballard "attempt[ed] to relitigate facts already ruled on and cite[d] several cases not previously raised in support of her proposition that the CIS filing constitute[d] a charge." Dkt. 22, at 3; A-15. "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Ibid.* (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)). Having previously considered Ms. Ballard's equitable tolling argument in its January 7, 2025, Order— and having no newly discovered evidence presented to it— the District Court denied Ms. Ballard's Motion for Reconsideration. Dkt. 22, at 4; A-16; Dkt. 9; A-2. "Disposition of a motion for reconsideration is left to the discretion

---

[11] In response to Ms. Ballard's contention that "Ameren erroneously told the district court that 'there is a gap in Plaintiff's communication with the IDHR from the date the CIS was submitted and contact from Plaintiff on July 1, 2019,'" Ameren states: Ameren's assertion in its Response to Plaintiff's Motion for Reconsideration was that, *"per the IDHR's communication,"* newly produced by Ms. Ballard as Exhibit D to her Motion for Reconsideration, there was a gap in communication. Appellant's Brief, at 11; Dkt. 18, ¶ 7.

of the district court, and its ruling will not be reversed absent an abuse of that discretion." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269-70.

Ms. Ballard thereafter initiated this appeal.

## SUMMARY OF THE ARGUMENT

The District Court correctly held that Ms. Ballard's CIS submitted to IDHR on August 23, 2018, was not a timely filed "charge" for purposes of the ADA's 300-day deadline for filing, and pursuant to *Carlson* and *Holowecki*.

This Court's application of *Holowecki* in *Carlson* was proper, and as such, the District Court's application of *Carlson* in Ms. Ballard's case was also proper. An important distinction that Ms. Ballard overlooks between *Holowecki* and *Carlson* is that *Holowecki* interpreted the EEOC's Intake Questionnaire, whereas this Court in *Carlson* interpreted IDHR's CIS. These two forms are substantively different. The language in the EEOC Intake Questionnaire that has been interpreted by some courts as requesting the EEOC to take action is not simply the statement "authoriz[ing] the EEOC to look into the discrimination," as Ms. Ballard contends. Rather, the Questionnaire, following *Holowecki*, includes an affirmative statement—"***I want to file a charge of discrimination***, and I authorize the EEOC to look into the discrimination . . . ."—that has been considered by several jurisdictions[12] to be "reasonably construed as a request for the agency to take remedial action." *Holowecki*, 552 U.S. at 402.

---

[12] Notably, most of the other decisions Ms. Ballard relies on in saying that this Court's decision in *Carlson* is inconsistent with *Holowecki* interpret the EEOC's Questionnaire. The two courts that interpret state agency forms are also distinguishable from the IDHR's CIS. Discussed, below, in Section I(C).

11

IDHR's CIS does not include such language. Dkt. 6, Ex. 1; A-17. Although it "authorize[s] the EEOC to look into the discrimination," it contains no affirmative statements requesting the agency to take remedial action. *Ibid.* Rather, the CIS prominently states that the form "**<u>IS NOT A CHARGE</u>**," along with conditional language, like "*If IDHR accepts your claim.*" *Ibid.* (emphasis added). Because the CIS is meaningfully different than the EEOC's Questionnaire, *Carlson*—and the District Court—properly applied *Holowecki* in determining that the CIS is inadequate to be considered a charge under the ADA.

Further, equitable tolling is only appropriate in cases where—despite all due diligence—a plaintiff is unable to file within the statutorily prescribed time limit as a result of extraordinary circumstances. Such is not the case here. Ms. Ballard did not exercise due diligence in waiting 298 days from her termination to follow up with IDHR. Dkt. 7, Ex. D. And, IDHR consistently communicated with Ms. Ballard regarding the status of her CIS, and her charge. *See e.g.,* Dkt. 6, Ex. 1; A-17; Dkt. 7, Ex. D; Dkt. 15, Ex. C; Dkt. 6, Ex. 2. The December 21, 2018, email that Ms. Ballard concludes to be "misleading," is not. Dkt. 7, Ex. D. It does not tell Ms. Ballard that she had "already complied with the charge-filing requirement" under the ADA. Appellant's Brief, at 14. Rather, the sentence directly following the one that Ms. Ballard references as "misleading" states: "You will receive either a drafted charge against Ameren [] to review or a request for additional information, if necessary . . . ." Dkt. 7, Ex. D. This language implies there may be more for Ms. Ballard to do, *i.e.*, either review a drafted charge or respond to additional requests from IDHR. *Id.*

12

Additionally, the fact that Ms. Ballard may receive a "*drafted* charge," indicates that she has not yet satisfied the charge filing requirement.

Alternatively, if this Court agrees with Ms. Ballard that the December 21, 2018, IDHR email was "misleading," it was not so exceptional as to warrant tolling of the 300-day deadline, given Ms. Ballard's own dilatory conduct. If any portion of the December 21, 2018, email misled Ms. Ballard, she was on notice that her charge was unperfected as of January 31, 2019, when she received another email from IDHR informing her that she had not filed a perfected charge, and that no specific EEOC charge number had yet been assigned to her information. Dkt. 15, Ex. C. Upon receiving this email, Ms. Ballard did not hasten to perfect her charge. Rather, she waited another 138 days before reaching back out to IDHR, eventually perfecting her charge 373 days after completing her CIS, and 551 days after her termination from Ameren. Dkt. 15, Ex. C; Dkt 6, Ex. 5. Such inaction does not justify an equitable remedy like tolling, and therefore, Ameren respectfully requests that this Court affirm the District Court's Order granting Ameren's Motion to Dismiss.

## STANDARD OF REVIEW

Ms. Ballard correctly states the standard of review on appeal is *de novo*; however, Ameren clarifies that the District Court disposed of the proceedings below on Ameren's Motion to Dismiss, not a summary judgment motion. *See* Dkt. 9; A-2. In granting Ameren's Motion to Dismiss, the District Court noted "[t]he proper way to seek a dismissal based on an affirmative defense under most circumstances is . . .

13

[to] answer and then move under Rule 12(c) for judgment on the pleadings." Dkt. 9, at 6 (citing *Burton*, 961 F.3d at 964-65); A-7. Additionally, the District Court explained that, although the court is typically confined to the pleadings alone at the dismissal stage, it is "well settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." Dkt. 9, at 3; A-4 (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)).[13]  And, the District Court acknowledged that it may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a summary judgment motion. *Ibid.* (citing *Henson*, 29 F.3d at 284).

"We review *de novo* a district court's decision to grant a motion to dismiss under either a Rule 12(b)(6) or Rule 12(c), accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff." *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999); *see also Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) ("A motion for judgment on the pleadings [12(c)] is subject to the same standard as a motion to dismiss under Rule 12(b)(6)": *de novo*).

A district court's decision to deny equitable tolling is generally reviewed for abuse of discretion. *Dent v. Charles Schwab & Co. Inc.*, 121 F.4th 1352 (7th Cir. 2024) (finding the district court did not abuse its discretion in declining to apply

---

[13] *Financial Fiduciaries, LLC v. Gannett Co., Inc.*, cited in Ms. Ballard's Brief, provides for this exception as well. 46 F.4th 654, 663 (7th Cir. 2022) ("there is an exception under which a court my consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to plaintiff's claim.").

14

equitable tolling in response to defendant's motion for judgment on the pleadings, as such relief is an "extraordinary remedy."). However, "[w]hen a district court denies equitable tolling at the motion to dismiss stage, it is making a judgment that the complaint fails to state a claim for relief because it is 'indisputably time-barred.'" *Watkins v. Mohan*, No. 24-1151, 2025 WL 1947500, *9 (7th Cir. July 16, 2025) (reviewing *de novo* a district court's denial of equitable tolling at motion to dismiss stage).

## ARGUMENT

### I. The District Court Properly Granted Ameren's Motion to Dismiss Finding that Ms. Ballard's Complainant Information Sheet did not Qualify as a "Charge," and therefore, Her Claims were Untimely.

The ADA requires that charges of discrimination be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) ("Because the ADA's enforcement provision expressly incorporates § 2000e–5 of Title VII, claims for discrimination under the ADA also must be filed within 300 days after the alleged unlawful employment practice occurred."); *Washburn v. Sauer-Sandstrand, Inc.,* 909 F. Supp. 554, 558 (N.D. Ill. 1995) (citing 42 U.S.C. § 2000e-5(e)(1)). A claimant may file with either the EEOC or with a state agency "that possesses the authority to grant or seek relief from the alleged discrimination."[14] 42 U.S.C. § 2000e-5(e); 29 C.F.R. § 1601.80 (listing IDHR as a

---

[14] Where a state has a law that "prohibits the employment practice alleged to be unlawful[,] and a State or local agency has been authorized to grant or seek relief," the state agency has the "exclusive right to process the allegations of discrimination filed by a person other than a Commissioner for a period of 60 days." 29 C.F.R. § 1601.13(a)(3)(ii). After those 60

FEP[15] agency that received certification by the EEOC); *Carlson*, 840 F.3d at 467 ("IDHR has a worksharing agreement with EEOC, whereby a charge filed with IDHR is automatically cross-filed with EEOC.").

Ms. Ballard was terminated from Ameren on February 26, 2018. Dkt. 1, ¶ 47. Therefore, Ms. Ballard's charge must have been filed on, or before, December 23, 2018 (within 300 days of her termination). *Carlson*, 840 F.3d 466; 42 U.S.C. § 2000e-5(e)(1). Because Ms. Ballard did not file a charge until August 31, 2019—more than 300 days beyond her termination from Ameren—her claims are untimely. Dkt. 6, Ex. 5. Although Ms. Ballard filed her CIS on August 23, 2018, the District Court correctly determined that this document is insufficient to satisfy the requirements of what is considered a "charge" as outlined by the U.S. Supreme Court in *Holowecki*, and its progeny, particularly as has been interpreted by this Court in *Carlson*.

---

days expires, the EEOC "may commence processing the allegation of discrimination." *Id.* However, in states—like Illinois—that have a workshare agreement with the EEOC, claimants may initially file their charge with either the EEOC or with IDHR. *Hong v. Children's Memorial Hosp.*, 936 F.2d 967 (7th Cir. 1991) (explaining the workshare agreement between Illinois, as a "deferral state" under 29 C.F.R. § 1601.13, and EEOC). Deferral provisions between the EEOC and state agencies, like IDHR, are intended "to give states a reasonable opportunity to act under state law before the commencement of any federal proceedings." *Sofferin v. American Airlines, Inc.*, 923 F.2d 552, 558 (7th Cir. 1991). Ms. Ballard elected to file with IDHR, using IDHR's CIS, rather than filing with EEOC which she previously considered (or completed, the status is unclear). Dkt. 1, ¶27; Dkt. 15, ¶ 1; *see also Hong*, 936 F.2d at 971 ("plaintiffs may file with the EEOC without first filing with the IDHR.").

[15] "[T]he term FEP [Fair Employment Practice] agency shall mean a State or local agency which the Commission has determined satisfies the criteria stated in Section 706(c) of title VII." 29 C.F.R. §§ 1601.3, 1601.13.

### A. Ms. Ballard's CIS is not a charge under *Holowecki*.

The U.S. Supreme Court, in *Holowecki*, interpreted the EEOC's Intake Questionnaire, and considered what may be considered a "charge," in accordance with federal law, specifically the Age Discrimination in Employment Act ("ADEA"). *Holowecki*, 552 U.S. 389.

In *Holowecki,* one of the claimants, Patricia Kennedy, alleged ADEA violations by her employer, Federal Express Corporation ("FedEx"). *Id.* at 394. In so doing, she filed an Intake Questionnaire, along with a six-page affidavit, with the EEOC. *Id.* at 394, 396. FedEx moved to dismiss, asserting that the forms Ms. Kennedy submitted to the EEOC did not amount to a "charge," and that her claims were thus untimely. *Id.* at 394. The Court considered the definition of a "charge" under the ADEA, and whether the documents Ms. Kennedy submitted qualified as such. *Id.*

Finding that the ADEA did not define "charge," the Court examined EEOC regulations, along with the EEOC's interpretation of said regulations. *Id.* at 395-96*; see also* 29 C.F.R. §§ 1626.3, 1626.8(a)-(b), 1626.6.[16] "[W]e accept the [EEOC's] position that the regulations do not identify all necessary components of a charge; and it follows that a document meeting the requirements of § 1626.6 is not a charge in every instance."[17] *Holowecki*, 552 U.S. at 397.

---

[16] The regulations administering the ADA, Title VII, and the Illinois Human Rights Act are similar to the ADEA regulations examined in *Holowecki*. *Holowecki*, 552 U.S. at 395-96; 29 C.F.R. §§ 1601.1, 1601.12; 56 Ill. Adm. Code §§ 2520.330, 2520.350. However, the regulations promulgated by the EEOC and IDHR do differ, importantly. *See* Section II(C)(ii), below, for further discussion of these differences.

[17] The Court also considered policy statements contained in the EEOC's compliance manuals and internal directives, noting that they reflect "a body of experience and informed

The Court considered the fact that the EEOC required "some mechanism to separate information requests from enforcement requests," noting that if "a charge need contain only an allegation of discrimination and the name of the employer," it would fall short in assisting the EEOC with sorting requests. *Id.* at 401. Also, if such a minimal reporting requirement mandated an agency to inform employers, employees "may be discouraged from consulting the agency." *Id.*

The Court ultimately concluded that: "In addition to the information required by the regulations, *i.e.*, the allegation and the name of the charged party," for a filing to "be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."[18] *Id.* at 402. The Court emphasized the need for the filing to be "examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id.*

Next, the Court considered whether Ms. Kennedy's filing, specifically, could reasonably "be construed to request agency action and appropriate relief."[19] *Id.* at

---

judgment to which courts and litigants may properly resort for guidance." *Holowecki*, 552 U.S. at 399 (considering *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)).

[18] Notably, the Court provided that arguments could be made for the agency to "adopt a standard giving more guidance to filers, making it clear that the request to act must be stated in quite explicit terms." *Holowecki*, 552 U.S. at 403. Following *Holowecki*, the EEOC revised its Intake Questionnaire to include more explicit terms indicating a "request to act." *Id.* at 407 ("the Intake Questionnaire form respondent filed has been replaced with a reworded form.").

[19] Hereinafter, the rule from *Holowecki* will be called the "Request-to-Act" rule, and/or requirement.

404. In determining the documents Ms. Kennedy submitted indeed qualified as a charge, the Court did not limit its inquiry to her Intake Questionnaire. *Id.* at 404-405. It also considered a six-page affidavit that Ms. Kennedy submitted along with the Intake Questionnaire which stated: "please force [FedEx] to end their discrimination plan so we can finish out our careers absent the unfairness and hostile work environment . . . ." *Id.* at 405. This consideration cannot be divorced from the Court's finding. Importantly, the Court provided that "***[w]ere the Intake Questionnaire the only document before us we might agree [with FedEx that] its handwritten statements do not request action***." *Id.* (emphasis added). The Intake Questionnaire used at the time Ms. Kennedy filed her claim with the EEOC was "not labeled a Charge of Discrimination," and the wording on the form suggested its "purpose [was] to facilitate pre-charge filing counseling and to enable the agency to determine whether it has jurisdiction over potential charges."[20] *Id.*

It is unclear how the Court may have ruled if Ms. Kennedy had not also submitted an affidavit with such an affirmative request for agency action; however,

---

[20] The Court noted there "might be instances where the indicated description is so clear and pervasive that the agency could infer from the allegations themselves that action is requested and required"; however, the Court did not define when a situation may be considered "sufficiently pervasive." *Holowecki*, 552 U.S. at 405. The Court explained that "the agency is not required to treat every completed Intake Questionnaire as a charge." *Id.* Even in *Holowecki*, where the plaintiff included a "detailed six-page affidavit" in addition to her Questionnaire, the Court did not make a finding that such a description was "sufficiently pervasive," and instead based its conclusion on Ms. Kennedy's request for the EEOC to act. *Id.*

19

the Court's statement that it may have found the Intake Questionnaire insufficient—if submitted alone—is enlightening.[21] *Id.* at 405.

Further, although *Holowecki* is binding, its scope is not without limits. It cannot be said, as Ms. Ballard asserts, that the holding broadly applies to any "form" filed with the EEOC "or one of its counterpart state or local antidiscrimination agencies." Appellant's Brief, at 21. Although *EEOC v. Vantage Energy Servs., Inc.,* provided that every circuit extended the *Holowecki* holding to Title VII and ADA claims, *Holowecki* did not directly address all forms and all state agencies.[22] 954 F.3d at 754. Rather, the Fifth Circuit in *Vantage*, like the Supreme Court in *Holowecki* was interpreting the EEOC's Intake Questionnaire, which is a distinct form from IDHR's CIS. Whereas the EEOC's Intake Questionnaire—particularly as revised by the EEOC following *Holowecki*—may be considered to include a Request-to-Act in certain cases, there are critical distinctions between the two forms, and the cases which have interpreted them, discussed in greater detail in Section I(C), below.

### B. This Court's application of *Holowecki* in *Carlson* was proper.

This Court correctly applied *Holowecki* in *Carlson*. In *Carlson*, this Court considered whether Ms. Carlson timely filed a charge of discrimination "within . . .

---

[21] The EEOC revised its Intake Questionnaire after *Holowecki* to ensure the form itself, without more, may be qualified as a charge. This is discussed in greater detail, below in Section I(C). *See e.g.*, *Holowecki*, 552 U.S. at 407; *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 755 (5th Cir. 2020).

[22] Additionally, the Court in *Holowecki* particularly warned: "While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Holowecki*, 552 U.S. at 393. "This is so even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case." *Id.*

300 days from the alleged incident of discrimination," as required under the ADA. *Carlson*, 840 F.3d at 467 (relying on 42 U.S.C. §§ 2000e-5(e)(1), (f)(1)). This Court ultimately concluded that the CIS Ms. Carlson filed with IDHR did not qualify as a charge, and her claims were therefore untimely, finding the CIS lacked a Request-to-Act. *Carlson*, 840 F.3d at 468.

Like Ms. Ballard, Ms. Carlson filed a disability discrimination lawsuit against her employer alleging violations of the ADA. *Id.* at 467. And, like Ms. Ballard, Ms. Carlson filed her CIS with IDHR, rather than an Intake Questionnaire with the EEOC, six months after her employment was terminated. *Id.* at 467. Ms. Carlson filed her charge 398 days after she had been fired, well beyond the 300-day limitations period. *Id.* at 468.

Applying *Holowecki*, this Court determined that the CIS amounted to nothing more than a complaint. *Id.* at 467. "[A] *complaint* of discrimination —the document that [Ms. Carlson] filed with IDHR—is not a charge." *Id.* "A charge is the administrative equivalent of a complaint filed in court; a CIS is not unless it asks for relief and thus functions as a charge." *Id.* at 467 (emphasis existing). "Without such a request, the CIS is just a pre-charge screening form, which does not prompt IDHR to notify the employer, launch an investigation, or sponsor mediation between the parties—filing a charge form does." *Id.* In making this determination, this Court also considered various pages on IDHR's website which explained the "Charge Process," and "Path of a Charge," similar to the Court's consideration of

21

certain EEOC publications and materials in *Holowecki*. *Id.*; *Holowecki*, 552 U.S. at 399.

Further, this Court noted that the CIS met the requirements of 29 C.F.R. § 1601.12(b) as it was a "written statement sufficiently precise to identify the parties, and to describe generally the action or practice complained of." *Carlson*, 840 F.3d at 468. However, the CIS did not request remedial action, and so was not a "charge" under *Holowecki*. *Id.*

This Court did not find Ms. Carlson's arguments persuasive that her "authoriz[ing] EEOC to look into the discrimination alleged," amounted to a Request-to-Act. *Id.* Instead, it held that such a statement—combined with the language: "THIS IS NOT A CHARGE," followed immediately by "if IDHR accepts your claim, we will send you a charge form for signature"—was a "far cry from a charge as the word is ordinarily understood." *Id.* (cleaned up). The CIS is "merely a prelude to a charge, and not the charge itself." *Id.*

Considering the arguments submitted by the EEOC in its amicus curiae brief, [23] this Court disagreed that Ms. Carlson's consent of "the disclosure of her personal

---

[23] Ms. Ballard asserts that this Court in *Carlson* did not discuss several Seventh Circuit rulings that pre-dated *Holowecki* and/or *Carlson*: *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir. 1988) (considering whether an EEOC Intake Questionnaire may be considered a charge); *Philbin v. Gen. Elec. Capital Auto Lease, Inc.*, 929 F.2d 321 (7th Cir. 1991) (considering whether an EEOC Intake Questionnaire may be considered a charge, particularly relating to verification); and *EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593 (7th Cir. 2009) (considering whether plaintiff's withdrawal of his charge with EEOC invalidated said charge for questions relating to jurisdiction; the actual form plaintiff used to file his charge is only referenced as a "complaint."). Appellant's Brief, at 18 fn. 10, 35. However, Ameren notes that each of these decisions were cited in either Ms. Carlson's (appellant) brief, or the EEOC's amicus brief when *Carlson* was before this Court. Therefore, this Court properly considered them before reaching its decision in *Carlson*.

information to her employer," suggested that she "wanted remedial action" when prefaced with the conditional statement: "*if IDHR takes a charge* based on the information provided . . . ." *Id.* at 468. (emphasis existing).

Following *Carlson*, this Court reaffirmed its holding—although in an unpublished opinion—when deciding *Amen Ra. v. BNSF Railway Co.*, 795 Fed. Appx. 463 (7th Cir. 2020). In *Amen Ra*, plaintiff alleged his employer violated Title VII. *Id.* at 464. Like Ms. Ballard and Ms. Carlson, plaintiff in *Amen Ra* filed a CIS with IDHR rather than an Intake Questionnaire with EEOC. *Id.* This Court concluded that plaintiff had not timely filed his administrative claims as an IDHR CIS does not qualify as a "formal charge." *Id.* "The [CIS], for instance, did not request remedial action or prompt the [IDHR] to activate its enforcement machinery, and it expressly warned [plaintiff] that 'THIS IS NOT A CHARGE.'" *Id.* at 465 (citing *Carlson*, 840 F.3d at 467-68); *see also McGhee v. Northwestern Med./Cent. DuPage Hosp.*, No. 23 C 1167, 2023 WL 6606104 (N.D. Ill. Oct. 10, 2023) (finding plaintiff's claims untimely as "the relevant date for purposes of the 300-day deadline is the date that the complainant filed the formal IDHR charge," not the CIS, as it fails to describe the relief being requested).

### C. Ms. Ballard's CIS is not a charge under *Holowecki* or *Carlson*

Applying *Holowecki* and *Carlson*, the District Court properly held that Ms. Ballard's CIS did not satisfy the Request-to-Act requirement. Dkt. 9; A-2. The District Court noted that "Plaintiff only filed her [CIS] with the IDHR on August 23,

---

Appellant's Brief, *Carlson*, 850 F.3d 466, Dkt. 14, at 9 (No. 15-3807); EEOC's Amicus Brief, *Carlson*, 850 F.3d 466, Dkt. 16, at 8, 21 (No. 15-3807).

2018 . . . and a *complaint* 'is not a charge.'" Dkt. 9, at 9; A-10 (citing *Carlson*, 840 F.3d at 467). Further relying on *Holowecki* and *Carlson*, the District Court provided that a CIS does not function as a charge "unless it asks for relief." *Ibid*. The District Court analyzed whether the CIS requested relief, and determined it did not, noting that "the CIS sheet does not describe what relief [Ms. Ballard] was asking for (in other words, what she was asking the IDHR to do)." *Ibid*. And, that the CIS did not "prompt IDHR to notify the employer, launch an investigation, or sponsor mediation between the parties." *Ibid*. This analysis is consistent with *Holowecki*, and this Court's subsequent decision in *Carlson*.

### i. IDHR's CIS and EEOC's Intake Questionnaire are distinct.

In asserting that the District Court incorrectly concluded that Ms. Ballard's CIS did not function as a charge, Ms. Ballard equates the CIS she filed with IDHR to the EEOC's Intake Questionnaire ("Questionnaire"). The thrust of her argument is that, because certain courts have found that the EEOC's Intake Questionnaire may be considered a charge under the EEOC regulations and *Holowecki*'s Request-to-Act rule, IDHR's CIS satisfies these requirements as well. This equivalency fails as the forms are meaningfully different. The Questionnaire, as revised by the EEOC following *Holowecki*, has been found in certain cases to satisfy the Request-to-Act *Holowecki* rule; the CIS has not—and cannot.

For example, Ms. Ballard distinguishes the *Carlson* ruling from a subsequent Fifth Circuit decision: *Vantage Energy Servs., Inc.*, 954 F.3d 749 (considering whether plaintiff's EEOC Questionnaire qualified as a "charge"). There, the Fifth

24

Circuit determined that plaintiff's Questionnaire could be considered a charge, finding it complied with the regulatory requirements and the *Holowecki* Request-to-Act rule. *Id.* That courts have considered the EEOC's Questionnaire to qualify as a charge for purposes of the ADA's 300-day filing deadline is not dispositive in Ms. Ballard's case.

Importantly, as with a majority of cases on which Ms. Ballard relies, the Fifth Circuit was applying *Holowecki* to the EEOC's Questionnaire rather than IDHR's CIS.[24] *Vantage Energy Servs., Inc.,* 954 F.3d 749.

### ii. Unlike the Questionnaire, as interpreted post *Holowecki*, the CIS does not request relief.

Each of Ms. Ballard's arguments relating to whether the CIS may objectively be considered a charge hinge on the conclusion that the CIS similarly meets the Request-to-Act rule, as the EEOC Questionnaire has been found to do in certain jurisdictions. However, these forms are not substantially similar.[25]

---

[24] *See e.g. Hildebrand v. Allegheny Cnty.,* 757 F.3d 99, 102 (3d Cir. 2014) (holding an EEOC Intake Questionnaire, "revised in the wake of *Holowecki* . . ., when properly completed, constitutes a charge . . . ."); *McClendon v. Ill. Dept. of Transportation*, 181 F. Supp. 3d 578 (N.D. Ill. 2015) (finding plaintiff's EEOC Intake Questionnaire qualified as a charge as it was accompanied by a three-page complaint, and plaintiff had "asked the EEOC to tell him if he had any recourse."); *Leftwich v. Gallaudet Univ.,* 878 F. Supp. 2d 81, 91-92 (D.D.C. 2012) (finding an EEOC Questionnaire qualified as a charge as (1) plaintiff checked the box that stated: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination . . ."; and (2) the Questionnaire contained the statement: "this questionnaire may serve as a charge if it meets the elements of a charge."); *Enoch v. Becton, Dickinson & Co.,* No. 11-3551, 2012 WL 2371049, at *4, 6-7 (D. Md. June 22, 2012) (determining the EEOC Intake Questionnaire qualified as a charge, as: (1) there was statement on the Questionnaire that said it "may serve as a charge if it meets the elements of a charge"; and (2) plaintiff selected the box that said: "I want to file a charge of discrimination, and I authorize . . .").

[25] The EEOC Questionnaire, as exemplified by the form filed in *Vantage Energy Servs. Inc.*, is distinct from Ms. Ballard's CIS. This Court is permitted to take judicial notice of the

First, the EEOC Intake Questionnaire was revised after *Holowecki* to provide two options that filers may select to indicate whether the claimant is requesting that the EEOC take remedial action. *Vantage Energy Servs., Inc.*, 954 F.3d at 755; *Holowecki*, 552 U.S. at 407. One option states: "I want to talk to an EEOC employee before deciding whether to file a charge . . . I understand that by checking this box, I have not filed a charge with the EEOC." *EEOC v. Vantage Energy Servs., Inc.*, No. 4:18-cv-254, Dkt. 5-1 (S.D. Tx. Jan. 26, 2018); *Vantage Energy Servs., Inc.*, 954 F.3d at 755. The second option states: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." *Ibid.*

Throughout her Brief, Ms. Ballard contends that the operative language in the second option on the Questionnaire is: "I authorize the EEOC to look into the discrimination I described above," as that language also exists on the CIS. Appellant's Brief, at 15-37; Dkt. 6, Ex. 1; A-20. This overbroad assertion discounts the significance of the affirmative statement directly preceding that statement on the Questionnaire: "I want to file a charge of discrimination." The CIS form *only* contains the language: "I authorize EEOC to look into the discrimination alleged

---

publicly available court filings in *EEOC v. Vantage Energy Servs. Inc.*, No. 4:18-cv-254, Dkt. 5-1 (S.D. Tx. Jan. 26, 2018)—particularly the Intake Questionnaire completed by Mr. David Poston—as filings with a Federal District Court are public records, not "subject to reasonable dispute," and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201; *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (permitting "judicial notice of matters of public record."); *Henson*, 29 F.3d at 284; *Ennenga*, 677 F.3d at 773-74. Ameren is not requesting judicial notice of *how* the court interpreted these records, only the records themselves, as they are public court records. To the extent this Court declines to take judicial notice of these records, excerpts of the language Ameren references are contained in the Fifth Circuit opinion, and in other cases cited herein. *See e.g., Vantage Energy Servs., Inc.*, 954 F.3d 749; *Leftwich*, 878 F. Supp. 2d at 91-92.

above." Dkt. 6, Ex. 1; A-20. It does *not* include the affirmative Request-to-Act: "I want to file a charge of discrimination." *Ibid.* The statement authorizing the EEOC to "look into" the discrimination cannot be viewed in isolation.

Moreover, when the second option ("I want to file a charge of discrimination . . .") is compared to the first option ("I want to talk to an EEOC employee before deciding whether to file a charge"), there is little ambiguity that once choice requests the agency to act while the other does not. *Vantage Energy Servs., Inc.*, 954 F.3d at 755; *see Pruitt v. Bayer U.S. LLC*, No. 19-cv-7951, 2021 WL 4084505, *3 (N.D. Cal. Feb. 16, 2021) ("In contrast to Box 1, which evinces no intent to file a charge, Box 2 affirmatively demonstrates a desire to invoke the EEOC's power to investigate and remedy unlawful employment actions."). The CIS does not provide filers with the same options either to affirmatively file a charge, or to forego filing. Dkt. 6, Ex. 1; A-20.

The second critical difference in the EEOC Questionnaire as compared to the CIS is that the Questionnaire includes the statement: "this questionnaire may serve as a charge if it meets the elements of a charge." *Vantage Energy Servs., Inc.*, No. 4:18-cv-254, Dkt. 5-1; *see also Leftwich*, 878 F. Supp. 2d at 92 (examining Questionnaire containing the same language). That statement is in direct conflict with the language that the CIS contains which states that "**THIS IS NOT A CHARGE**." Dkt. 6, Ex. 1; A-17. Along with this statement, the CIS uses conditional language, like "*If IDHR accepts your claim*" several times within the form, which is

27

absent from the EEOC Questionnaire. *Compare* Dkt. 6, Ex. 1; A-17 *with Vantage Energy Servs., Inc.*, No. 4:18-cv-254, Dkt. 5-1.

Not only do the forms contain differences on their face, but IDHR's use of the CIS, even in the wake of *Carlson*, indicates that IDHR did not intend for the CIS to be considered a valid charge. The CIS in Ms. Ballard's case states "**THIS IS NOT A CHARGE**"—as it did in *Carlson*. Dkt. 6, Ex. 1; A-17. However, IDHR moved this statement after *Carlson* was decided. *Compare* Dkt. 6, Ex. 1; A-17 *with Carlson v. Christian Bros. Servs.*, No. 15 C 1154, 2015 WL 7568452, Dkt. 26-1 (N.D. Ill. Nov. 25, 2015).[26] Instead of keeping that phrase amidst text on the third page of the CIS, IDHR moved this statement to be even more prominently displayed at the top of the CIS that Ms. Ballard completed, including additional bolding and underlining for emphasis. *Ibid.*

Ms. Ballard's statement that "IDHR copied the EEOC's language in the CIS forms it drafted after *Holowecki*" lacks support and is arguably misleading. Appellant's Brief, at 29. Ms. Ballard's reference to the EEOC's amicus brief in *Carlson* only suggests that both the CIS and the EEOC Questionnaire have language "authorizing" the EEOC to "look into the discrimination alleged"; however, such authorization does not indicate IDHR's form previously lacked that language,

---

[26] This Court is permitted to take judicial notice of Ms. Carlson's court filings in *Carlson*, 2015 WL 7568452, Dkt. 26-1 (No. 15 C 1154), particularly her CIS, as filings with a Federal District Court are public records, not "subject to reasonable dispute," and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201; *Wood*, 925 F.2d at 1582; *Henson*, 29 F.3d at 284; *Ennenga*, 677 F.3d at 773-74. Ameren is not requesting judicial notice of *how* the court interpreted these records, only the records themselves as they are public court records.

28

or that it included such language as a result of *Holowecki*.[27] *See* EEOC's Amicus Brief, *Carlson*, 850 F.3d 466, Dkt. 16, at 16-17 (No. 15-3807).

Additionally, a claimant's decision to file with a state agency that has a workshare agreement with EEOC—like IDHR—should be a factor in the consideration of whether the form meets both state and federal regulations.[28]  IDHR regulations state: "In the event the [IDHR] receives a written statement from an individual which complies substantially with Section 2520.330 . . . [IDHR] may accept and docket the statement (or a refined version of it) ***as an unperfected charge***." 56 Ill. Admin Code. § 2520.350 (emphasis added). "The [IDHR] shall notify the complainant in writing of the elements which must be supplied. If the complainant fails or refuses to perfect the charge as specified, the charge may be dismissed."[29] *Id.* The fact that IDHR's regulations are distinct from the EEOC's regulations—and that IDHR amended its CIS following *Carlson* to more prominently display: "**THIS IS NOT A CHARGE**"—supports that IDHR did not intend to treat Ms. Ballard's CIS as a charge.

---

[27] Moreover, at the time this Court decided *Carlson*, the CIS stated: "I understand that [] IDHR will also file my charge of discrimination with EEOC, and I authorize . . . ." *Carlson*, 2015 WL 7568452, Dkt. 26-1 (No. 15 C 1154). It now says: "I understand that [] if my charge is regarding an employment jurisdiction, IDHR may also file my charge . . . with EEOC if it has jurisdiction, and I authorize . . . ." Dkt. 6, Ex. 1; A-20.

[28] Although *Holowecki* is controlling, "a state agency's characterization [of a complainant's questionnaire] may assist in the analysis of [the] filing's sufficiency under *Holowecki*." *Vantage Energy Servs., Inc.*, 954 F.3d at 755.

[29] This language is distinct from the EEOC regulations, which state: "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

Finally, Ms. Ballard references two cases in which claimants filed a preliminary form, like an Intake Questionnaire, with their respective state agencies. *Aly v. Mohegan Council of Boy Scouts of Am.*, 711 F. 3d (1st Cir. 2013); *Apire v. Whole Foods Market Group, Inc.*, No. 2:15-CV-479, 2016 WL 2350108 (D. Me. May 4, 2016). Her reliance on these decisions is misplaced. The form contemplated in *Aly*, a "General Employment Interview Form," was filed with the Massachusetts Commission Against Discrimination. *Aly*, 711 F.3d at 40. When interpreting the validity of the form, the court considered Massachusetts state regulations, along with *Holowecki* and EEOC regulations. *Id.* at 41-42. Citing *Holowecki* the First Circuit stated that a complaint was deemed "insufficient to constitute a charge where said complaint was not labeled a 'Charge of Discrimination,' and its wording indicated that its purpose was to facilitate 'pre-charge filing counseling.'" *Id.* at 43. The court determined that the form satisfied *Holowecki*'s Request-to-Act rule as (1) the form "referred to the filing employee as a 'Complainant,'" *and* (2) "contained wording referring to the [f]orm itself in the present tense as an '*employment complaint . . . being filed* against the [employer].'" *Id.* at 44 (emphasis existing).

Although the CIS in Ms. Ballard's case is called a "Complaint Information Sheet," it contains no affirmative "present tense" statement like the one the First Circuit considered in *Aly*.[30] Dkt. 6, Ex. 1; A-17. Moreover, the other language on the

---

[30] Ameren notes a variation of the language on the CIS that states: "Description of the issues you are requesting IDHR to investigate" was also present on the CIS in *Carlson*: "Description of the employment harm and bases the IDHR is being requested to investigate." *Carlson*, 2015 WL 7568452, Dkt. 26-1 (No. 15 C 1154). Such language does not constitute an affirmative statement for IDHR to act, particularly in light of the other language contained within the form.

face of the CIS supports it being merely a "pre-charge filing." *Aly*, 711 F.3d at 44 (citing *Holowecki*, 552 U.S. at 402) ("*Holowecki* provided indicia to assist in a court's inquiry as to whether a complaint may be reasonably construed as a charge, and those included labels on the face of the complaint.").

Likewise, in *Apire v. Whole Foods Market Group. Inc.*, the District Court of Maine considered a state form filed with the Maine Human Rights Commission. Civil No. 2:15-CV-479, 2016 WL 2350108. Relying on the First Circuit's decision in *Aly*, the court in *Apire*, determined the state court form satisfied *Holowecki*'s Request-to-Act requirement as it stated: "I WISH TO FILE A COMPLAINT AGAINST," and then prompted filer to insert employer's name. *Id.* at *3, fn. 6.

Ms. Ballard's case is more similar to *Nelson v. South Carolina Lottery Com'n*, where the court determined—in a post *Holowecki* ruling—that plaintiff's EEOC Intake Questionnaire did *not* satisfy the Request-to-Act rule where the form "contain[ed] a disclaimer, expressly stating that '**Filling out and bringing us or sending us this questionnaire does not mean that you have filed a charge.**'" No. 3:14-cv-56, 2014 WL 6473510, *3 (D.S.C. Nov. 18, 2014) (emphasis existing); *see also EEOC v. Summer Classics, Inc.*, 471 Fed. Appx. 868 (11th Cir. 2012) (finding plaintiff's EEOC Intake Questionnaire did not meet the *Holowecki* Request-to-Act requirement despite describing his "depression, fatigue, and lack of sleep" resulting from the alleged discrimination and stating that he was "looking for counsel.").

The labels and language used on IDHR's CIS support the District Court's ruling that the CIS is simply a pre-charge screening form, not a formal charge which

31

prompts "IDHR to notify the employer, launch an investigation, or sponsor mediation between the parties." Dkt. 9, at 9; A-10 (citing *Carlson*, 840 F.3d at 467).

### iii.   Ms. Ballard's consent to release her identity does not "activate" IDHR's machinery.

In addition to the "authorization" language discussed in Section II(C)(ii), above, Ms. Ballard asserts that her consent to reveal her identity "as necessary to process and investigate [her] charge" supports that she was requesting "the agency to activate its machinery and remedial processes." Appellant's Brief, at 23, 28; *Holowecki*, 552 U.S. at 402. Ms. Ballard's consent to release her identity "as necessary" cannot be reasonably construed to mean that IDHR will "activate its machinery and remedial process." This is particularly so when considering the conditional language IDHR employs in the CIS directly before the "consent" provision: "*If IDHR takes a charge based on the information*, I consent for IDHR to disclose my identity . . . ." Dkt. 6, Ex. 1; A-20 (emphasis added).

Ms. Ballard cites *Thorington v. Sally Beauty Supply LLC*, in support of the assertion that consenting to releasing her identity to her employer converts the CIS into a charge. No. 1:16-cv-626, 2017 WL 1954539 (E.D. Va. May 10, 2017). However, like many other cases Ms. Ballard relies upon, *Thorington* interprets the EEOC's Questionnaire. *Id.*  In *Thorington*, the court provided that an "intake questionnaire may constitute a charge *if it specifically requests the EEOC to take action* and releases the identity of the accuser to the employer." *Id*. at *4 (emphasis added). The court referred to *Holowecki*'s finding that a "filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate

32

relief on the employee's behalf." *Id.* at \*5 (citing *Holowecki*, 552 U.S. at 404). This proposition from *Holowecki* does not mean that so long as a claimant consents to release of her name to her employer, the document becomes a formal charge. There must also be a Request-to-Act, which Ms. Ballard's CIS lacks. *Thorington*, 2017 WL 1954539, at \*4-5 ("any analysis of whether an intake questionnaire constitutes a charge is fact-specific and based on the form and substance of the filing.").

### iv.     Ms. Ballard's CIS did not provide Ameren with sufficient notice.

Finally, not only can Ms. Ballard's CIS not be "reasonably construed as a request for the agency to take remedial action," it also did not provide Ameren with sufficient notice that a charge had been filed against it until over 500 days after Ms. Ballard's termination. Dkt. 6, Ex. 5.

Although notice is not dispositive, requiring a plaintiff to timely file an administrative charge "serves two purposes: it promotes the prompt and less costly resolution of the dispute by settlement or conciliation[,] and ensures timely notice to the employer of the grievance." *Porter v. New Age Servs. Corp.*, 463 Fed. Appx. 582, 584 (7th Cir. 2012); *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992) ("To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire.").

Here, Ameren was not notified that a charge had been filed until Ms. Ballard's claim was perfected. Dkt. 6, Ex. 5. Ameren received a letter from IDHR notifying it of Ms. Ballard's charge 564 days after Ms. Ballard's termination, and 386 days after

33

Ms. Ballard filed her CIS. *Id.* As compared to *Vantage Energy Servs., Inc.*, where the employer was notified that a "charge" had been filed within five days of plaintiff completing his Intake Questionnaire. *Vantage Energy Servs., Inc.*, 954 F.3d at 752.

## II.    The District Court did not Err by not Applying the Equitable Tolling Doctrine

Equitable tolling applies to time bars that are non-jurisdictional. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000) ("a failure to exhaust administrative remedies is not a jurisdictional flaw," and therefore equitable tolling may be applied). The requirement under the ADA, like the Civil Rights Act, that a claimant file a charge within 300 days of the alleged discrimination is not a jurisdictional bar. *Murray v. Maysteel LLC*, 111 Fed. Appx. 432, 433 (7th Cir. 2004) (citing *Zipes*, 455 U.S. 385).

Filing deadlines may be extended via equitable tolling in discrimination cases in the following three circumstances: (1) "when a plaintiff exercising due diligence cannot within the statutory period obtain the information necessary to realize that she has a claim"; (2) "when a plaintiff makes a good-faith error such as timely filing in the wrong court"; or (3) "when the defendant prevents a plaintiff from filing within the statutory period." *Porter*, 463 Fed. Appx. at 584; *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). Ms. Ballard appears to be relying on circumstance (1), as she makes no claims that she made an error or that Ameren prevented her from filing. Appellant's Brief, at 42.

A plaintiff seeking application of equitable tolling must establish that he (1) "has been pursuing his rights diligently"; and (2) "that some extraordinary circumstance

34

stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. U.S.*, 577 U.S. 250, 255 (2016) (cleaned up); *see also Dent*, 121 F.4th at 1353 ("Equitable tolling must be predicated on a showing that the litigant seeking such relief has been pursuing his rights diligently and that an extraordinary circumstance stood in his way . . . .") (cleaned up). When applying equitable tolling, the court is "dealing with two innocent parties and in these circumstances, the negligence of the party invoking the doctrine can tip the balance against its application." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990)

Given that Ms. Ballard did not pursue her charge with IDHR with diligence, and that no extraordinary circumstances existed to warrant the tolling of the 300-day deadline, the District Court did not err in declining to award Ms. Ballard equitable relief.

### A. Ms. Ballard is not entitled to application of the equitable tolling doctrine as she has not demonstrated due diligence.

Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations *if despite all due diligence* he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451 (emphasis added). "The duty of reasonable diligence . . . is a *continuing* duty . . . Only if [a plaintiff] acts with reasonable diligence throughout [the statute of limitations] period can he plead in the name of equity for an extension." *Singletary v. Cont'l Ill. Nat. Bank and Trust Co. of Chi.*, 9F.3d 1236, 1243 (7th Cir. 1993).

To invoke equitable tolling to suspend the limitations period, Ms. Ballard must demonstrate that she exercised "all due diligence," throughout the entirety of the

35

limitations period. *Cada,* 920 F.2d at 454; *Singletary*, 9 F.3d at1243. Ms. Ballard's established pattern of dilatory conduct fails to demonstrate any exercise of reasonable diligence and thus precludes her reliance on an equitable doctrine.

Equitable tolling should not "bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term." *Cada,* 920 F.2d at 452 (declining to apply equitable tolling as plaintiff failed to exercise due diligence). Even with equitable tolling, a "plaintiff must file his charge with the EEOC within a reasonable period of time." *Hentosh*, 167 F.3d at 1175 (declining to apply equitable tolling where plaintiff did not exercise due diligence and where she waited almost seven months to file her charge with EEOC after becoming aware of the possibility of a claim).

This Court has held that equitable tolling has been unjustified when a plaintiff made "no effort to clarify the actual date of receipt [of the final agency decision]" and then "wait[ed] to file until what would have been the very last day to do so," noting that such a situation "can hardly be described as the exercise of due diligence in preserving [plaintiff's] legal rights the Supreme Court envisioned as warranting equitable tolling." *Lax v. Mayorkas*, 20 F.4th 1178, 1183 (7th Cir. 2021).

Ms. Ballard has not exercised reasonable diligence in pursuing her claim of discrimination. First, Ms. Ballard waited 178 days after her termination from Ameren to file her CIS with IDHR. Dkt. 6, Ex. 1; A-17. Ms. Ballard was aware that she could seek administrative remedies by her own admission, as she had

36

previously considered filing (or filed, the status is unclear) a charge with the EEOC, which she withdrew. Dkt. 15, ¶ 1.

Next, upon filing her CIS, Ms. Ballard waited another 120 days before following up with IDHR to check on the status of her complaint. Dkt. 7, Ex. D. This communication—now 298 days after her termination—is the December 21, 2018, communication Ms. Ballard cites to as having "lulled her into inaction," by telling her "no further action is required of you at this time." Dkt. 7, Ex. D; Appellant's Brief, at 38.

Finally, if this were the case—which Ameren contests—any confusion communicated by IDHR was remedied shortly thereafter. A little over 30 days from Ms. Ballard's December 21, 2018, communication with IDHR, IDHR informed Ms. Ballard on January 31, 2019, that there was not "a more specific EEOC charge number assigned to [her] information *until it is determined that a formal charge of discrimination is able to be drafted.*" Dkt. 15, Ex. C (emphasis added). And, that "*if a charge is able to be drafted regarding the allegations*, both the [IDHR] and separate EEOC charge numbers will be granted at that time. *That is also when it will be formally cross-filed with EEOC*." *Id.* At this point, if not arguably sooner, Ms. Ballard was on notice that her CIS had not been perfected into a charge (*i.e.*, an EEOC charge number could not be assigned until IDHR determined whether a formal charge could be drafted); and that her complaint had not been "formally cross-filed with EEOC." *Id.* If this information

37

concerned Ms. Ballard, it is unclear, as Ms. Ballard's next communication with IDHR was not until June 18, 2019 (138 days later). *Id.*

In stark contrast to Ms. Ballard's circumstances, Ms. Ballard requests consideration of the Fifth Circuit's decision where the court found plaintiff exhibited due diligence and applied equitable tolling. *See Weathers v. Houston Methodist Hosp.*, 116 F.4th 324 (5th Cir. 2024). Plaintiff in *Weathers* alleged discrimination and retaliation under Title VII of the Civil Rights Act, and filed an "online inquiry" with the EEOC approximately four months after her termination. *Id.* at 327. Directly after filling out this form, plaintiff "attempted everyday [*sic*] possibly conceivable to schedule an interview" with EEOC. *Id.* After three months, she was finally able to schedule an interview with EEOC. *Id.* Five months after filling out the "online inquiry" form, an EEOC staff member told plaintiff her 300-day deadline would expire in approximately three weeks. *Id.* Plaintiff responded about a day later stating she was still interested in filing a charge, and requested direction regarding next steps. *Id.* Before the statute of limitations ran, EEOC scheduled a phone interview with plaintiff to take place on the very last day of the limitations period. *Id.* After this call, the EEOC and plaintiff remained in communication, plaintiff routinely responding within a few hours of EEOC's requests. *Id.* Finally, plaintiff signed her perfected charge two days after the final phone interview with EEOC, and 303 days after the date of her termination. *Id.*

In light of these facts, the Fifth Circuit considered delays that were attributable to the EEOC, as well as how prompt plaintiff's responses to the EEOC's requests for

information were. *Id.* at 331. The court provided that "equitable tolling may apply where the claimant has ***vigorously pursued*** [her] action, but has inadvertently missed deadlines due to ... her lack of sophistication with the procedural requirements of Title VII claims." *Id.* at 331.[31] (emphasis added).

Ms. Ballard's waiting until the 298th day of the 300-day deadline to speak with IDHR regarding her complaint falls short of "vigorous pursuit." Not only did Ms. Ballard wait 298 days after her termination before contacting IDHR regarding the status of her claim, she did not remain in contact with the agency over the course of the next six months. Ms. Ballard filed her CIS with IDHR on August 24, 2018; she contacted the agency 120 days later on December 21, 2018; and did not perfect her charge of discrimination until August 31, 2019: 373 days after filing her CIS with IDHR. Dkt. 6, Ex. 1; A-17; Dkt. 7, Ex. D; Dkt. 6, Ex. 5.

In 2019, IDHR and Ms. Ballard exchanged communications regarding finalizing her charge, and in one particular correspondence after the charge had been filed, IDHR noted difficulty it experienced in communicating with Ms. Ballard. *See* Dkt. 15, Ex. D ("charge packet was sent via certified mail . . . returned . . . as 'Unclaimed – Unable to Forward;" "[Ms. Ballard] mentioned [she] do[es] not sign for certified letters.").

---

[31] This court also considered absence of prejudice to the employer and found it was minimal as the EEOC "issued notice of [plaintiff's] charge of discrimination to [her employer]" five days after plaintiff filed her charge, which was only approximately one week beyond the 300-day deadline. *Weathers*, 116 F.4th at 332 ("Although absence of prejudice is not an independent basis for invoking equitable tolling, it is a factor to be considered in determining whether the doctrine should apply once a factor that might justify such tolling is identified.").

Additionally, the communications with IDHR that Ms. Ballard has provided thus far support a further pattern of dilatory conduct on her part, as evidenced by her August 8, 2019, letter to IDHR where Ms. Ballard sent several corrections "to the original charge of discrimination," stating that she would "take some responsibility for not catching what I have highlighted and enclosed from the July letter. I have a lot of time going back and forth and 2x I have had notarized to find out things need to be changed." Dkt. 6, Ex. 3.

Ms. Ballard's case is more akin to this Court's decision in *Hentosh*, than the Fifth Circuit's in *Weathers*, where plaintiff delayed "almost seven months" to file her charge with the EEOC after becoming "aware of the possibility of a claim." *Hentosh,* 167 F.3d at 1174 (declining to apply equitable tolling). As well as *Newbold v. Wisc. State Public Defender*, where this Court declined to apply equitable tolling where plaintiff filed her charge of discrimination approximately ten months after her termination, and beyond the filing deadline, with a state agency that did not have a worksharing agreement with EEOC. 310 F.3d 1013, 1016 (7th Cir. 2002). Equitable tolling was not justified even though the state agency delayed approximately six weeks in sending the charge form to the EEOC, which did not log it as filed until another six weeks later. *Id.*

As an equitable doctrine, equitable tolling is intended to provide plaintiffs with extra time, should they need it, despite their best efforts to exercise due diligence and vigorously pursue their claims. *Cada*, 920 F.2d at 453; *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently

40

cannot invoke equitable principles to excuse that lack of diligence."). Ms. Ballard's untimely claim is brought about by her own delayed communications with IDHR, and nothing more. As such, this is not a case that warrants application of equitable tolling.

### B. Given IDHR's consistent communication to Ms. Ballard regarding the status of her CIS, no extraordinary circumstance existed.

Even if this Court finds that Ms. Ballard exercised "reasonable diligence," the circumstances of Ms. Ballard's case are not so "extraordinary" as to justify equitable tolling. "Equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently[,] but some extraordinary circumstance prevents him from bringing a timely action." *Watkins*, No. 24-1151, 2025 WL 1947500, *7 (citing *Lozana v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)); *Lax*, 20 F.4th at 1183 ("[e]quitable tolling . . . is reserved for situations in which the claimant has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time.").

Equitable tolling is rare, and its protections "do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't. of Veterans Affairs*, 498 U.S. 89, 96 (1990) (finding equitable tolling to be unjustified when plaintiff simply did not receive a letter from EEOC because his attorney was out of town when it arrived); *Holland v. Florida*, 560 U.S. 631, 651 (2010) (finding circumstances to be closer to "extraordinary" than "garden variety neglect," where attorney's "gross negligence" caused inmate on death row to miss critical deadlines).

41

Recently this Court interpreted when "extraordinary circumstances" may exist to warrant equitable tolling in a suit brought by an inmate under the Federal Tort Claims Act. *Watkins v. Mohan*, No. 24-1151, 2025 WL 1947500. Although not an employment discrimination case, the Court's analysis of what may constitute as "extraordinary" is instructive. In *Watkins*, this Court determined plaintiff's cause of action was not a case of "garden variety excusable neglect," where his claims were untimely given disruptions to the prison mail system due to the COVID-19 pandemic, and that plaintiff was put under quarantine twice as he attempted to navigate the administrative system. *Watkins*, No. 25-1151, 2025 WL 1947500, *7-8.

Additionally, Ms. Ballard cites several cases where this Court considered the possible justification of equitable tolling to the 300-day administrative deadline under the ADEA. *See e.g., Early*, 959 F.2d 75; *Schroeder v. Copley Newspaper*, 879 F.2d 266 (7th Cir. 1989). In *Early*, plaintiff met with someone at the EEOC for his initial interview; however, the person he met with "was a field investigator rather than someone regularly charged with handling Intake Questionnaires," and they told plaintiff that in "filling out the questionnaire," he had "done everything he had to do at the administrative level and had two years to file suit." *Early*, 959 F.2d at 80. The Court provided that "[m]isleading conduct by the EEOC can be a basis for tolling the administrative statute of limitations." *Id.* at 81. However, the Court noted that the pertinent question is whether a plaintiff "filed the (real) charge as early as he realistically could given that misinformation." *Id.* (considering when plaintiff "found out that he may not have filed a charge and how soon afterward he

42

filed it."). A consideration which is critical to Ms. Ballard's case, as she did not file her actual charge until approximately eight months after receiving the alleged "misinformation" from the IDHR. *Compare* Dkt. 15, Ex. C, *with* Dkt. 6, Ex. 5.

Conversely, this Court declined to apply equitable tolling in *Schroeder*, where an EEOC "intake person" told plaintiff, after conducting an intake interview, that there "wasn't much that she could do for him." 879 F.2d 266. Approximately 17 months after that interview, and upon speaking with an attorney, plaintiff filed a charge with EEOC alleging age discrimination. *Id.* at 268. The lower court granted summary judgment for plaintiff's employer finding plaintiff's claims were untimely. *Id.* at 267. On appeal, this Court agreed with the lower court, finding that the "intake person's" statements that there "wasn't much she could do for him," did not "affirmatively induce[]" or "lull[]" plaintiff into inaction. *Id.* at 271 (noting "while [plaintiff] may not have been 'familiar' with the ADEA when he accompanied [co-worker] to the EEOC, he nevertheless understood he had rights under the ADEA; . . . that is enough.").

Ms. Ballard's is not a case of "extraordinary circumstances," nor has there been any "misleading," "affirmative inducement," or "lulling" by IDHR discouraging Ms. Ballard from filing her charge. Since August 23, 2018, when Ms. Ballard completed her CIS, the IDHR has remained consistent in communicating that Ms. Ballard's complaint was not a charge. And, all such communications were before the District Court when it issued its Order granting Ameren's Motion to Dismiss and denying

43

Ms. Ballard's Motion for Reconsideration.[32] Dkt. 9; A-2; Dkt. 22; A-13. Additionally, Ms. Ballard has not presented any argument indicating that extraordinary circumstances exist in her case.

The first "communication" from IDHR to Ms. Ballard includes the language that IDHR displayed on its CIS form: "**<u>THIS IS NOT A CHARGE</u>**." Dkt. 6, Ex. 1; A-17. The form also includes conditional language in multiple places, discussed in greater detail in Section I(C)(ii), above. All language supporting that a charge has not yet been filed.

The second consistent communication is the email Ms. Ballard cites from IDHR on December 21, 2018. This email from IDHR does not—contrary to Ms. Ballard's Brief—tell Ms. Ballard "that both the EEOC and the IDHR had concluded that her filing of the CIS had satisfied the ADA's requirements." *See* Appellant's Brief, at 37-38; Dkt. 7, Ex. D. Rather, the pertinent email text is as follows:

> Your ***information*** (control # 19M0828.04) is recognized as having been filed on 8/24/2018 by the [EEOC] in addition to this Department. It will be cross-filed with EEOC by IDHR, so no further action is required of you at this time. ***You will receive either a drafted charge against Ameren Illinois to review or a request for additional information, if necessary . . . please return any information or documentation to that office unless instructed otherwise***. Dkt. 7, Ex. D (emphasis added)

---

[32] Exhibit D to Ms. Ballard's Motion for Reconsideration was the only document that had not previously been before the District Court at the Motion to Dismiss stage. Dkt. 15, Ex. D.

Additionally, the District Court properly declined to address the additional argument Ms. Ballard put forth regarding equitable tolling in her Motion for Reconsideration, as "a motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered judgment . . . or to present evidence that was available earlier." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

Nowhere in this email does IDHR tell Ms. Ballard that "both the EEOC and the IDHR had concluded that her filing of the CIS had satisfied the ADA's requirements." Although the email states "no further action is required of you at this time," directly following that sentence it states that Ms. Ballard "will receive either a drafted charge against Ameren . . . or a request for additional information." *Id.* This email also: (1) calls Ms. Ballard's CIS "information," not a charge, and (2) indicates that additional information may be required, and should be returned to IDHR upon request. *Id.* Given the context of the email as a whole, it indicates that "no further action is required" from Ms. Ballard **until** she receives a perfected charge or an additional request for information. *Id.* IDHR is not responsible for affirmatively ensuring that claimants file charges within 300 days. *See Rosas v. Bd. of Educ. of City of Chi.* 652 F. Supp. 3d 951, 969 (N.D. Ill. 2023) ("Equitable tolling applies when a plaintiff lacks access to facts, however, not an understanding of the law."). "If every plaintiff could avoid timeliness requirements merely because they lack legal training, then timeliness would become a hollow requirement." *Id.*

Third, on January 31, 2019, Ms. Ballard received an email from IDHR informing her that there was "not a more specific EEOC charge number" until IDHR "determine[s] that *a formal charge of discrimination is able to be drafted*." Dkt. 15, Ex. C (emphasis added). And, that EEOC and IDHR charge numbers would be generated "*[i]f a charge is able to be drafted regarding the allegations*." *Id.* (emphasis added). Again, Ms. Ballard was informed that her CIS is not a charge, and that no such formal charge has yet been drafted.

45

Fourth, on July 15, 2019, Ms. Ballard received a letter from IDHR enclosing a "formal statement of charge" which IDHR "***docketed as an <u>unperfected charge</u>.***" Dkt. 6, Ex. 2 (emphasis added).

Finally, on September 13, 2019,[33] IDHR sent Ms. Ballard correspondence stating: "You have filed a discrimination charge under the Human Rights Act. ***A copy of the charge has been served on the respondent***." Dkt. 6, Ex. 4 (emphasis added).

These communications indicate that IDHR consistently told Ms. Ballard she had not yet filed a charge prior to September, 2019. However, if the December 21, 2018, email is found by this Court to have been "misinformation," an important consideration is how soon after receiving this "misinformation" from IDHR, Ms. Ballard filed her actual charge of discrimination. *Early*, 959 F.2d at 81. Two hundred and fifty-three days passed between Ms. Ballard's receipt of the alleged "misinformation" from IDHR on December 21, 2018, and filing her perfected charge on August 31, 2019. Dkt. 7, Ex. D; Dkt. 6, Ex. 5.

Notably, even if the Court concludes that the December 21, 2018, email amounted to "misinformation," such statement was rectified on January 31, 2019, when IDHR communicated with Ms. Ballard informing her that no "specific EEOC

---

[33] Ms. Ballard cites to several communications she received in November and December, 2019, after her charge was perfected, wherein IDHR stated the "charge cited was filed on August 24, 2018," or similar. Appellant's Brief, at 42-43; Dkt. 7, Ex. E; Dkt. 15, Ex. D. Neither of these communications could have "lulled" her in to believing that her charge had been filed prior to the 300-day deadline, as they occurred after her charge had been perfected in September, 2019. Dkt. 6, Exs. 4-5.

charge number" had been assigned yet and would not be "until it is determined that a formal charge of discrimination is able to be drafted." Dkt. 15, Ex. C. After that communication from IDHR— again informing Ms. Ballard that no charge had yet been filed—Ms. Ballard did not expeditiously work to perfect her charge. Rather, she waited 138 days before reaching back out to IDHR and took responsibility for several revisions that were required through August 8, 2019.[34] Dkt. 15, Ex. C; Dkt. 6, Ex. 2, Ex. 3.

Given that IDHR's consistent communications with Ms. Ballard about the status of her charge were before the District Court—along with the lack of any extraordinary circumstances—equitable tolling is not an apt remedy in Ms. Ballard's case. As such, Ameren respectfully requests that this Court affirm the District Court's ruling.

---

[34] Had Ms. Ballard not needed to make additional corrections to her information, her charge may have been perfected sooner.

## CONCLUSION

The District Court's carefully reasoned Orders granting Ameren's Motion to Dismiss Ms. Ballard's claims as untimely, and denying Ms. Ballard's Motion for Reconsideration should, in all respects, be affirmed.

Respectfully submitted,

TUETH KEENEY COOPER
MOHAN & JACKSTADT, P.C.

/s/ Merry C. Rhoades
Merry C. Rhoades, IL #6192801
Maureen E. Jenner, IL #6341532
101 W. Vandalia Street, Suite 210
Edwardsville, IL 62025
(618) 692-4120
(618) 692-4122 Facsimile
mrhoades@tuethkeeney.com

*Attorney for Defendant/Appellee*

**CERTIFICATE OF COMPLIANCE WITH RULE 32 (A)(7)**

The undersigned counsel for Defendant-Appellee, Ameren Illinois Corporation, hereby certifies that the type-volume limitation of Fed. R. App. P. 32(a)(7) and 7th Cir. R. 32(c) has been complied with. Fed. R. App. P. 32(a)(7); 7th Cir. R. 32(c) (2024), https://www.ca7.uscourts.gov/assets/pdf/rules.pdf. The text of this brief was prepared with Century Schoolbook 12-point font. According to the word-count tool of the word processing system used to prepare this brief, Microsoft Word 2010, this brief, excluding items outlined in Fed. R. App. P. 32(f), including the cover page, corporate disclosure, tables of contents and authorities, certificates of compliance and service, and signature blocks, contains 13,982 words.

/s/ Merry C. Rhoades

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendant-Appellee, Ameren Illinois Corporation, hereby certifies that on August 8, 2025, the Brief of Defendant-Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. The following participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system:

Randall D. Schmidt
Edwin F. Mandel Legal Aid Clinic
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
Phone: 773-702-6911
Email: r-schmidt@uchicago.edu

***Attorney for Plaintiff-Appellant***
***Kimberly Ballard***

/s/ Merry C. Rhoades