No. 25-1562

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

KIMBERLY BALLARD,

*Plaintiff-Appellant,*

*v.*

AMEREN ILLINOIS COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois
1:24-cv-01185-JEH
The Honorable Judge Jonathan E. Hawley, Presiding

**REPLY BRIEF OF PLAINTIFF-APPELLANT KIMBERLY BALLARD**

RANDALL D. SCHMIDT
EDWIN F. MANDEL LEGAL AID CLINIC
  OF THE UNIVERSITY OF CHICAGO LAW SCHOOL
6020 S. University Ave. Chicago, IL 60637
(773) 702-9611
r-schmidt@uchicago.edu

*Counsel of Record for Plaintiff-Appellant*

August 29, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 4

    I.  The District Court Erred in Ruling That Ms. Ballard's
        Complainant Information Sheet Did Not Qualify as a Charge
        for the Purpose of Satisfying the Charge-Filing Limitations
        Period in the Americans with Disabilities Act. ......................................... 4

        A.  In *Federal Express Corp. v. Holowecki*, the Supreme Court
            Ruled That a Pre-Charge Filing Qualifies as a Charge If
            It Asks the EEOC to Take Action to Vindicate the
            Complainant's Rights. .................................................................... 4

        B.  Ms. Ballard's CIS Qualified as a Charge Under the Supreme
            Court's *Holowecki* Standard. ........................................................ 6

        C.  This Court's Ruling in *Carlson v. Christian Bros. Services*
            That the IDHR's CIS Does Not Qualify as a Charge is Contrary
             to *Holowecki*, Is Inconsistent with Decisions from Virtually
            Every Federal Circuit, and Should Be Reconsidered by
            this Court. ...................................................................................... 9

            1.  The Carlson Panel Erred in Concluding that the CIS Does
               Not Request Remedial Action and Relief. ........................................ 9

            2.  *Carlson* Erred in Concluding That the Request for the
               EEOC to "Look into the Discrimination Alleged" Did
               Not Satisfy the *Holowecki* Standard................................................ 11

            3.  That the CIS Said It Was "Not A Charge" Did Not Preclude
               It from Qualifying as a Charge for the Limited Purpose
               of Complying with the ADA Limitations Period........................... 14

            4.  The CIS Is Not Disqualified as a Charge on the Basis
               of Insufficient Notice to Ameren. ................................................... 16

    II. The District Court Erred in Failing to Equitably Toll Ms. Ballard's
        Charge-Filing Period. ............................................................................. 18

A.  This Court has Held That Charge-Filing Periods in Federal Civil Rights Acts Should Be Equitably Tolled When a Complainant Fails to File a Timely Charge Due to Misleading Statements by Agency Officials. ..................................................................19

B.  Ms. Ballard's Charge-Filing Deadline Should Have Been Equitably Tolled Because of Her Diligent and Timely Actions During the Limitations Period..................................................23

CONCLUSION ..........................................................................................25

CERTIFICATE OF COMPLIANCE........................................................26

CERTIFICATE OF SERVICE ................................................................27

# TABLE OF AUTHORITIES

### Cases

*Allen v. ACS Techs. Grp., Inc.,* 2019 WL 6120019, (D.S.C. May 6, 2019),
adopted by 2019 WL 4622091 (D.S.C. Sept. 24, 2019)................................................ 8

*Aly v. Mohegan Council, Boy Scouts of America*, 711 F.3d 34 (1st Cir. 2013)........... 15

*Apire v. Whole Foods Market Group, Inc.,* 2016 WL 2350108 (D. Me.
May 4, 2016) .................................................................................................... 15

*Bihler v. Singer Co.,* 710 F.2d 96 (3d Cir. 1983)................................................... 17, 18

*Bishop v. Gainer*, 272 F.3d 1009 (7th Cir. 2001) ..................................................... 20

*Bradley v. Village of Univ. Park,* 59 F.4th 887 (7th Cir. 2023).......................... 19, 25

*Carlson v. Christian Bros. Servs.*, 840 F.3d 466 (7th Cir. 2016)........................ passim

*Early v. Bankers Life and Casualty Co.,* 959 F.2d 75 (7th Cir. 1992) ..... 20, 21, 22, 23

*EEOC v. Summer Classics, Inc.*, 471 F. App'x 868 (11th Cir. 2012) .......................... 9

*EEOC v. Vantage Energy Servs. Inc.,* 954 F.3d 749 (5th Cir. 2020) .................... 12, 13

*Farley v. Goodwill Indus. of Lower S.C.,* 2016 WL 408949 (D.S.C.
Jan. 12, 2016)........................................................................................................ 8

*Federal Express Corp. v. Holowecki*, 552 U.S 389 (2008).................................. passim

*Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.,*
167 F.3d 1170 (7th Cir. 1999) ............................................................................. 23

*Hudgins v. PruittHealth, Inc.,* 2018 WL 6069459 (D.S.C. Aug. 31, 2018),
adopted by 2018 WL 5629755 (D.S.C. Oct. 31, 2018) ............................................. 8

*Irwin v. Dep't. of Veterans Affairs*, 498 U.S. 89 (1990).............................................. 20

*Lax v. Mayorkas*, 20 F.4th 1178 (7th Cir. 2021)....................................................... 23

*Nelson v. South Carolina Lottery Com'n.*, no. 3:14-CV-00056-MGL, 2014 WL
6473510 (D.S.C. Nov. 18, 2014) ........................................................................... 8

*Newbold v. Wisconsin State Pub. Def.,* 310 F.3d 1013 (7th Cir. 2002) ...................... 20

*Philbin v. Gen. Elec. Capital Auto Lease, Inc.,* 929 F.2d 321 (7th Cir. 1991)............ 11

*Schroeder v. Copley Newspaper*, 879 F.2d 266 (7th Cir. 1989) ................................. 22

*Stearns v. Consolidated Management, Inc.,* 747 F.2d 1105 (7th Cir. 1984) ........ 16, 17

*Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534 (7th Cir. 1988) .......................... 16, 17

*Watkins v. Mohan*, 144 F.4th 926 (7th Cir. 2025) ..................................................... 20

*Zipes v. Trans World Airlines Inc.,* 455 U.S. 385 (1982) ............................................ 19

**Statutes and Regulations**

Americans with Disabilities Act, 42 U.S.C. § 12117 .............................. passim

29 CFR § 1601.12 ......................................................................................................... 11

**Other Materials**

EEOC Form 5,
   https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/foia/forms/form_5.pdf
   ....................................................................................................................... 11

"How do I file a charge with IDHR?" from the website for the Illinois Department of
   Human Rights,  https://dhr.illinois.gov/filing-a-charge/faq-home/faq-section-
   iii.html#faq-3howdoifileachargewithidhr-faq ....................................................... 13

**INTRODUCTION**

Plaintiff-Appellant Kimberly Ballard demonstrated in her initial brief that her filing of a Complainant Information Sheet ("CIS") with the Illinois Department of Human Rights ("IDHR") on August 24, 2018, 180 days after she had been discharged by her employer, Ameren Illinois Company, satisfied the 300-day administrative charge-filling limitations period in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117.

The district court, relying solely on this Court's decision in *Carlson v. Christian Bros. Servs.*, 840 F.3d 466 (7th Cir. 2016), ruled that her CIS had not qualified as a "charge" and, accordingly, that she had not satisfied the ADA's charge-filing requirement when she submitted the formal charge drafted for her by the IDHR in August 2019, more than 300 days after the termination of her employment by Ameren.

As Ms. Ballard explained in her initial brief (pp. 26-37), the *Carlson* ruling misapplied the standard for informal documents whose filing with the EEOC or one of its affiliated FEP agencies satisfies the administrative charge-filing requirements of the federal antidiscrimination laws (including the ADA) established by the Supreme Court in *Federal Express Corp. v. Holowecki*, 552 U.S 389 (2008). Accordingly, *Carlson* should be reconsidered and overturned by this Court, the district court's judgment should be vacated, and Ms. Ballard's ADA claims should be remanded for further proceedings

The Supreme Court ruled in *Holowecki* that, in order to satisfy the statutory charge-filing requirement, a claimant's filing must "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise to settle a dispute between the employer and the employee." *Id.* at 402. Ms. Ballard's CIS (A-17 – A-20) expressly requested the IDHR to take just such "remedial action" by preparing an "official charge form" embodying the claims against Ameren she described in detail in her CIS, by investigating the allegations, and by cross-filing the charge with the EEOC. In signing the CIS, Ms. Ballard expressly requested the EEOC to "look into the discrimination" she had described.

Federal courts in nearly every other circuit uniformly have ruled that an administrative filing, like the CIS, that requests the EEOC to "look into" alleged discrimination constitutes a request for remedial action and, accordingly, qualifies as a charge under the *Holowecki* standard. Consequently, the holding in *Carlson* and its application by the district court in Ms. Ballard's case are manifestly inconsistent with uniform decisions from the other federal circuits as well as the United States Supreme Court

Alternatively, if *Carlson* correctly applied the *Holowecki* standard and, as a result, the district court properly ruled that Ms. Ballard's CIS did not qualify as a charge for the limited purpose of satisfying the ADA's charge-filing requirement, then the district court abused its discretion by failing to equitably toll Ms. Ballard's charge-filing deadline.

2

As Ms. Ballard explained in her initial brief, the IDHR assured her on December 21, 2018, two days prior to the expiration of the ADA's 300-day charge-filing limitations period, that both that agency and the EEOC recognized her filing of the CIS as having satisfied the charge-filing deadlines of both state and federal law and that "*no further action is required of you at this time*." Dkt. #7 at 68-69; emphasis added.

Ameren incorrectly argues that equitable tolling is not appropriate in this case. Ameren Brief at pp. 34-35. This Court repeatedly has ruled that the charge-filing requirements of federal antidiscrimination statutes are subject to equitable tolling when an administrative agency has misled a claimant, lulling the claimant into inaction, and, as a result, has prevented the filing of a timely charge. *See, e.g., Early v. Bankers Life and Casualty Co.,* 959 F.2d 75, 81 (7th Cir. 1992).

If Ms. Ballard had been told on December 21, 2018, that her filing of the CIS did not satisfy the charge-filing requirements of the ADA and that she needed to file a charge on an "official charge form" with the EEOC before the expiration of the 300-day limitations period, she had two days in which she could have taken such action to protect her rights. At no time prior to (or even after) her submission of the IDHR-prepared "official charge form" months later was she informed that what she had been told by the IDHR on December 21 was incorrect and that she had not complied with the filing requirement of the ADA by submitting her CIS. Ms. Ballard therefore was entitled to the equitable tolling of the deadline to file her charge, and

3

the district court committed an abuse of its discretion in failing to provide her with

such relief.[1]

## ARGUMENT

**I.  The District Court Erred in Ruling That Ms. Ballard's Complainant Information Sheet Did Not Qualify as a Charge for the Purpose of Satisfying the Charge-Filing Limitations Period in the Americans with Disabilities Act.**

**A.  In *Federal Express Corp. v. Holowecki*, the Supreme Court Ruled That a Pre-Charge Filing Qualifies as a Charge If It Asks the EEOC to Take Action to Vindicate the Complainant's Rights.**

In *Federal Express Corp. v. Holowecki*, the Supreme Court ruled that an

informal document filed with the EEOC, or with one of its counterpart state or local

antidiscrimination (FEP) agencies, satisfies the charge-filing requirements in

federal antidiscrimination statutes if it reasonably can be interpreted as requesting

the agency to commence remedial action. Ameren's brief, like this Court's *Carlson*

---

[1] Ameren acknowledges on pag 1, n.1, of its brief that this Court must assume the factual allegations in Ms. Ballard's Complaint (Dkt. #1) to be true since the district court decided the case on Ameren's Rule 12(b)(6) Motion to Dismiss. Nonetheless, Ameren falsely summarizes Ms. Ballard's allegations in its Statement of the Case. For example, on p. 2 of its brief, Ameren asserts that Ms. Ballard "was terminated from her position at Ameren due to her adamant and defiant refusal to accept Ameren's culture and values." Ameren also claims on page 3 of its brief that Ms. Ballard's failings in the area of "Culture" "ultimately became the basis for her termination of employment." In support, it cites paragraphs 38, 42 and 46-47 of Ms. Ballard's Complaint. What Ameren would have this Court ignore is the fact that Ms. Ballard expressly alleged in those paragraphs that the accusation made by Ameren management that she had refused to accept Ameren's "Culture" was "false." *See* Dkt. #1, ¶47 ("On February 26, 2018, Plaintiff's employment ended. No reason was provided at the time of termination. Since termination Defendant has contended that Plaintiff rejected Defendant's 'culture,' *which is false.*") (emphasis added.)

On page 5 of its brief, Ameren apparently hopes this Court will give weight to one of the excuses given by Ms. Ballard's former counsel in support of his Motion to Withdraw: that "in his opinion . . . there [were] no grounds for appeal." Prior counsel's ill-informed personal opinion concerning the merits of Ms. Ballard's possible future appeal simply has no relevance here.

decision, fundamentally misunderstands and misapplies the *Holowecki* standard to Ms. Ballard's filing of her CIS.

*Holowecki* establishes the circumstances under which an informal document that is not an "official," "formal," or "perfected" charge may nonetheless satisfy the statutory charge-filing requirements. The documents at issue in *Holowecki* were just such informal documents. Ms. Patricia Kennedy submitted a pre-charge Intake Questionnaire to the EEOC, along with an attached statement supporting her allegations. The submission was not on an EEOC charge form, nor was it a perfected charge. The informality of her filing, as well as the absence of a formal perfected submission, did not prevent the Supreme Court from concluding that the filing was a charge that satisfied the statutory limitations period.

Under the standard set by the Court in *Holowecki*, a filing must meet the regulatory requirements (setting forth an allegation of unlawful discrimination and identifying the charged party) and be reasonably interpreted as a request for the agency to take remedial action. *Holowecki*, 552 U.S. at 402. Moreover, the Court explained that the informal filing may describe discrimination "that is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required . . . ." *Id.* at 405.

The Supreme Court established a permissive standard for a filing to qualify as a charge in *Holowecki*, reflecting Congress's intent to empower the EEOC and its counterpart agencies to protect the rights of individuals alleging discrimination. "Documents filed by an employee with the EEOC should be construed, to the extent

consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* at 406. The *Holowecki* standard is designed to protect the statutory rights of unrepresented individuals, like Ms. Kennedy and Ms. Ballard, who clearly seek to cause the EEOC and the IDHR to commence remedial action in response to the unlawful discrimination their informal submissions have described.

**B. Ms. Ballard's CIS Qualified as a Charge Under the Supreme Court's *Holowecki* Standard.**

Ameren argues that Ms. Ballard's CIS filing was not a "formal" or "perfected" charge and incorrectly asserts that an informal filing cannot qualify as a charge that satisfies the ADA's administrative charge-filing requirement. *See* Ameren Brief at 31, 33. *Holowecki* establishes that it is not necessary for a document to qualify as a "formal" charge in order for its filing to satisfy the statutory time limits. The CIS that Ms. Ballard submitted satisfied each of the requirements prescribed by the Supreme Court in *Holowecki*.

First, the submission contained detailed information about the alleged discrimination Ms. Ballard had suffered, including the basis of the discriminatory actions, the dates of the acts, and the Ameren officials who had committed the alleged actions. A-18 – A-19. The CIS described her as the "Claimant" (A-17), labeled her submission as a "*Complainant* Information Sheet" (emphasis added), and referred to the discrimination issues she was raising as her "Complaints" and her "Claims," terms that demonstrated that she was seeking the assistance of the IDHR and the EEOC in obtaining remedial relief from Ameren. A-18 – A-19.

6

Second, the CIS required Ms. Ballard to identify the "Respondent," i.e., the "full legal name of the company or organization that you believe discriminated against you in Illinois." She provided all the requested information for Ameren. A-17.

Third, the CIS contained Ms. Ballard's clear request for the initiation of the agency's remedial process. The CIS stated that the IDHR would use the information she provided to prepare an "official charge form," which she would then sign, notarize, and return to the agency. A-17. The CIS expressly asked the IDHR to "investigate" Ameren's alleged discriminatory actions. Specifically, Ms. Ballard provided a detailed "DESCRIPTION OF THE ISSUES AND BASES YOU ARE REQUESTING IDHR TO INVESTIGATE." A-18.  Finally, the CIS expressly authorized the "EEOC to look into the discrimination alleged above." A-20.

Moreover, in her CIS Ms. Ballard authorized the IDHR to notify Ameren of her identity and her claims. A-20. In *Holowecki* the Supreme Court ruled that a filing that authorized the agency to notify the charged employer of the identity of the claimant and the nature of the asserted claims supported the conclusion that the informal filing qualified as a charge for limitations purposes. 552 U.S. at 406.

The clear purpose of Ms. Ballard's CIS was to request both the IDHR and the EEOC to commence their remedial processes, to investigate her claims, and to provide her with any relief from Ameren's discriminatory actions to which she was entitled. She was not simply asking the IDHR and the EEOC to provide her with "information"; she wanted the agencies to take action.

On page 31 of its brief, Ameren asserts that Ms. Ballard's case is similar to

*Nelson v. South Carolina Lottery Com'n.*, no. 3:14-CV-00056-MGL, 2014 WL 6473510, at *3 (D.S.C. Nov. 18, 2014). Plaintiff Nelson filed an action against her employer pursuant to Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. The South Carolina district court magistrate judge concluded that there was no request for the agency to act in the EEOC Intake Questionnaire Nelson had submitted, and so the conditions under which an intake questionnaire could satisfy the charge-filing limitations were not met under the *Holowecki* standard.

Ms. Ballard's CIS is distinguishable from the filing in *Nelson* because the CIS clearly requested both the IDHR and the EEOC to investigate her claims of discrimination. Moreover, subsequent South Carolina District Court decisions have established that the *Nelson* decision is no longer good law in that court. *See Hudgins v. PruittHealth, Inc.,* 2018 WL 6069459 (D.S.C. Aug. 31, 2018), report and recommendation adopted, 2018 WL 5629755 (D.S.C. Oct. 31, 2018), where the court expressly refused to follow *Nelson* and ruled that EEOC's Intake Questionnaire, with its request that the EEOC "look into" the alleged discrimination, qualified as a "charge" under the *Holowecki* standard. *See also Farley v. Goodwill Indus. of Lower S.C.,* 2016 WL 408949 (D.S.C. Jan. 12, 2016), report and recommendation adopted, 2016 WL 398159 (D.S.C. Feb. 2, 2016) (same), and *Allen v. ACS Techs. Grp., Inc.,* 2019 WL 6120019 (D.S.C. May 6, 2019), report and recommendation adopted, 2019 WL 4622091 (D.S.C. Sept. 24, 2019) (same).

Ameren also argues that the facts in Ms. Ballard's case are similar to those in

8

*EEOC v. Summer Classics, Inc.*, 471 F. App'x 868 (11th Cir. 2012). Ameren Brief at 31. The Eleventh Circuit ruled that the intake form in that case did not request agency action and so did not satisfy the *Holowecki* standard. In his intake form, the charging party had stated he had suffered discrimination, was experiencing harms like depression as a result, and was "looking for counsel." This, as the Eleventh Circuit concluded, did not indicate that he wished to "activate the 'machinery and remedial processes' of the EEOC." *Id*. at 872, quoting *Holowecki*, 552 U.S.at 402. Instead, "[t]he only reasonable reading of Mr. Lowe's questionnaire is as a request for information and answers about his rights, rather than a demand for agency enforcement." *Ibid.*

Unlike the submission in *Summer Classics*, Ms. Ballard's CIS clearly was submitted with the intent of initiating an investigation and launching the agencies' remedial mechanisms. Under no circumstances can it be described as "a request for information and answers about [her] rights."

> **C. This Court's Ruling in *Carlson v. Christian Bros. Services* That the IDHR's CIS Does Not Qualify as a Charge Is Contrary to *Holowecki*, Is Inconsistent with Decisions from Virtually Every Federal Circuit, and Should Be Reconsidered by this Court.**

> **1. The *Carlson* Panel Erred in Concluding that the CIS Does Not Request Remedial Action and Relief.**

This Court ruled in *Carlson v. Christian Brothers Services* that the IDHR's CIS form does not request any remedial action or relief as required by the *Holowecki* standard and so does not qualify as a charge under *Holowecki*. The reasoning and ruling in *Carlson* are inconsistent with *Holowecki* and with decisions from nearly

9

every other federal circuit.

Ms. Ballard's CIS form expressly requested that the IDHR commence remedial action by drafting a formal charge based on the information provided in the CIS and launching an investigation into the alleged discrimination. The CIS repeatedly stated that the purpose of the form was to initiate remedial action by the IDHR. For example, the form described the steps the IDHR would take in investigating the charge and requested consent by the complainant to disclose information necessary "to process and investigate my charge." A-20.

When the *Carlson* panel determined that the CIS that had been filed in that case did not request remedial action, it ignored the fact that submitting the CIS requested the agency to commence its remedial mechanisms by drafting a formal charge based on the CIS submission and launching an investigation into the allegations in the CIS. Ameren argues that seeking an investigation is not an affirmative request for remedial action. However, it offers no suggestion as to what Ms. Ballard's purpose may have been in filing the CIS other than asking the IDHR and the EEOC to commence their remedial processes.

Ameren argues on page 25 of its brief that Ms. Ballard's CIS did not satisfy the *Holowecki* standard because "it does not request relief." Presumably, Ameren intends to base this argument on the following statement in *Carlson*: "[T]he Supreme Court said in [*Holowecki*], 552 U.S. at 402 – that a charge must request relief, and the plaintiff's CIS did not." *Carlson,* 840 F.3d at 468. To the extent the *Carlson* panel meant that, in order to satisfy the *Holowecki* standard, the informal

10

filing must spell out the specific legal or equitable relief the complainant ultimately will be seeking (e.g., compensatory or punitive damages, back pay, reinstatement, etc.), it clearly misread the Supreme Court's opinion. Nothing on page 402 of that opinion supports the conclusion that an informal filing must identify the particular relief the complainant is seeking in order to qualify as a charge for the purpose of satisfying a charge-filing limitations period. All that the Supreme Court's standard requires is that the document, examined from the standpoint of an objective observer, "requests the agency to activate its machinery and remedial processes." *Holowecki,* 552 U.S. at 402.[2] Ms. Ballard's CIS plainly does.

> **2.  *Carlson* Erred in Concluding That the Request for the EEOC to "Look into the Discrimination Alleged" Did Not Satisfy the *Holowecki* Standard.**

The *Carlson* court asserted that the language in the CIS authorizing the EEOC to "look into" the alleged discrimination did not make the document a "charge" as it is ordinarily understood. *Carlson*, 840 F.3d at 468. However, this conclusion disregarded the holding in *Holowecki* that a filing does not need to be a charge in the ordinary sense, let alone a formal or perfected charge. In *Holowecki*, the submission was a pre-charge filing. It was not a formal perfected charge, and the

---

[2] *Carlson's* requirement that a document must "request relief" in order to qualify as a charge is also inconsistent with the EEOC's regulations, which contain no such requirement. *See* 29 CFR § 1601.12. Moreover, EEOC's official charge form (EEOC Form 5) does not require the charging party to identify the "relief" he/she is seeking. https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/foia/forms/form_5.pdf. Finally, Ameren's and *Carlson's* unsupported assertions that a charge must "request relief" are inconsistent with prior decisions of this Court. *See, e.g., Philbin v. Gen. Elec. Capital Auto Lease, Inc.,* 929 F.2d 321, 323 n.2 (7th Cir. 1991), where this Court ruled that "a charge [is] sufficient if it [is] a written statement precise enough to identify the parties and generally describe[s] the complained of practices."

language of the intake form indicated that it was only an initial step towards pursuing enforcement action rather than an official charge submission. The fact that a filing is not a "charge" in the usual sense is the exact situation in which the *Holowecki* standard applies.

Numerous circuit and district courts have ruled that a filing that expressly asks the EEOC to "look into" alleged discrimination satisfies *Holowecki* and thus qualifies as a charge for purposes of timeliness. Ms. Ballard's express authorization to investigate her claims is identical to the language in the EEOC's Intake Questionnaire: "I authorize the EEOC to look into the discrimination I described above." The Fifth Circuit ruled in *EEOC v. Vantage Energy Servs. Inc.,* 954 F.3d 749, 755 (5th Cir. 2020), "This constitutes a clear manifestation of Poston's intent for the EEOC to take remedial action." As Ms. Ballard demonstrated at pages 28-34 of her initial brief, federal courts in nearly every other circuit have ruled that this "look into" language satisfies the *Holowecki* standard because it is a clear request for remedial action by the EEOC.

Ameren argues that the "look into" language in EEOC's questionnaire is "meaningfully different" from the "look into" language in Ms. Ballard's CIS. Ameren Brief at 24. It argues that the fact that the EEOC form also includes the statement "I want to file a charge of discrimination," while the CIS does not, means that the CIS cannot be interpreted as a request for EEOC remedial action. Ameren Brief at 26-27. Ameren's argument simply ignores the fact that the sole purpose of the IDHR's CIS form, unlike EEOC's questionnaire, is to commence the agency's

12

charge-filing process.

IDHR explains on its website, in answer to the question "How do I file a charge with IDHR?":

> A person who believes (s)he was treated differently than others or was otherwise discriminated against based on protected class in one of the five areas may file a charge of discrimination with IDHR *by submitting a completed Complainant Information Sheet (CIS) . . . .*[3]

Accordingly, by submitting a CIS, Ms. Ballard manifested her desire to file a charge. It would have been unnecessary and redundant for the IDHR to include the "I want to file a charge" language in the CIS because the filing of the CIS itself demonstrates and establishes that intent.

The language difference that Ameren relies on results from the fact that the EEOC Intake Questionnaire, unlike the CIS, serves two different purposes. As the questionnaire was revised after the Supreme Court's decision in *Holowecki*, filing parties indicate, by checking one of two boxes on the form, whether they "want to file a charge of discrimination and authorize the EEOC to look into the discrimination I described above" or whether they "want to talk to an EEOC employee before deciding whether to file a charge," in which case they are simply requesting additional information, which does not initiate the charge-filing process. *EEOC v. Vantage Energy Servs., Inc.,* 954 F.3d at 754, 755 n.7 (5th Cir. 2020). Providing these two options is consistent with the EEOC's separate roles as described by the Supreme Court in *Holowecki*, 552 U.S. at 400: "enforcing

---

[3] https://dhr.illinois.gov/filing-a-charge/faq-home/faq-section-iii.html#faq-3howdoifileachargewithidhr-faq (emphasis added).

antidiscrimination laws and disseminating information about those laws to the public."

In contrast, the IDHR has not designed the CIS form to be used by individuals who are merely seeking information and do not desire to file charges of discrimination. The sole purpose of the CIS is to commence the drafting by the IDHR of a formal charge of discrimination, the first step in the agency's remedial process. By filing a CIS, a complainant, like Ms. Ballard, clearly requests the IDHR and the EEOC "to take remedial action to protect the employee's rights." *Id.* at 402.

### 3. That the CIS Said It Was "Not A Charge" Did Not Preclude It from Qualifying as a Charge for the Limited Purpose of Complying with the ADA Limitations Period.

*Holowecki* addresses the circumstances under which something other than a formal, perfected charge may nonetheless satisfy the statutory charge-filing time limits. The *Carlson* panel ignored this fact when it ruled that the language "THIS IS NOT A CHARGE" on the IDHR CIS conclusively precludes it from qualifying as a charge for the limited purpose of satisfying federal charge-filing limitations periods under *Holowecki*. The filing in question in *Holowecki* contained similar language; it was not labeled a Charge of Discrimination, and the wording of the questionnaire suggested the opposite. 552 U.S. at 405. Nonetheless, the Supreme Court emphasized that "[t]here might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required . . . ." *Ibid.*

Other circuits have determined that state intake questionnaires, like Ms.

Ballard's CIS, qualify as a charge under *Holowecki*, even though they are not formally labeled as such. For example, in *Aly v. Mohegan Council, Boy Scouts of America*, 711 F.3d 34 (1st Cir. 2013), the First Circuit ruled that a Massachusetts General Employment Interview Form qualified as a charge under the *Holowecki* standard based on the fact that it provided details about the alleged discrimination and the responsible party and described the filing employee as "Complainant," like IDHR's CIS. The First Circuit determined that the filing constituted a request for the agency to take action to protect the Complainant's Title VII workplace rights, particularly in light of the "injunction in *Holowecki* to construe documents filed by employees, 'to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.'" *Id.* at 44 (quoting *Holowecki,* 552 U.S. at 406).

Likewise, the court in *Apire v. Whole Foods Market Group, Inc.,* 2016 WL 2350108, at *1-3 (D. Me. May 4, 2016), ruled that the Maine Human Rights Commission's Intake Questionnaire qualified as a charge under the *Holowecki* standard even though the form stated that it alone was insufficient to constitute a charge: "Completing this Intake Questionnaire does not mean that a Complaint of Discrimination has been filed." Nevertheless, the court determined that the contents of the questionnaire satisfied the *Holowecki* standard, explaining, "[I]n determining whether this federal civil rights lawsuit is barred, I measure what the plaintiff did file against the federal EEOC regulation and Supreme Court requirements, not the warnings that the MHRC gave to the plaintiff."

15

The approach taken by *Carlson* is contrary to the permissive standard established by *Holowecki*. The Supreme Court was clear that an intake form may constitute a charge without being labeled a "charge" and in fact that the wording may "suggest the opposite." 552 U.S at 405. *Holowecki* established the flexible standard under which a form filed with the EEOC or its counterpart state and local agencies constitutes a charge if it may be reasonably interpreted as a request for the agency to undertake remedial action. Ms. Ballard's CIS clearly satisfied that standard.

### 4. The CIS Is Not Disqualified as a Charge on the Basis of Insufficient Notice to Ameren.

Finally, Ameren argues at pages 33-34 of its brief that the IDHR CIS that Ms. Ballard submitted did not give Ameren sufficient notice that a charge had been filed against it, and so the filing may not qualify as a charge. The IDHR delayed in notifying Ameren that Ms. Ballard had commenced the agency's remedial process until after she had signed and returned the formal charge drafted for her by the agency. However, Ameren's argument that IDHR's delay in notifying it of Ms. Ballard's CIS filing means that her charge was untimely was flatly rejected by the Supreme Court in *Holowecki* as well as by this Court in *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534 (7th Cir. 1988), and *Stearns v. Consolidated Management, Inc.,* 747 F.2d 1105 (7th Cir. 1984), none of which Ameren acknowledges.

In *Holowecki*, FedEx argued that the EEOC did not fulfill its duty of notifying the company and initiating its remedial process upon receiving Ms. Kennedy's intake questionnaire, and so it could not qualify as a charge. However, the Supreme

16

Court rejected the argument, explaining, "The statute requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action. . . It would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control." 552 U.S. at 403-04.

In *Steffen v. Meridian Life Ins. Co.,* this Court reached the same conclusion. The EEOC had not notified Meridian of its receipt of the intake questionnaire submitted by Steffen. Nonetheless, this Court rejected the employer's argument that EEOC's failure meant that Steffen had not satisfied the administrative filing requirement and could not proceed with his age discrimination claims, ruling that "[t]he EEOC's failure to act on a charge, however, does not bar a person from maintaining an ADEA action." 859 F.2d at 544.

This Court reached the same conclusion in *Stearns v. Consolidated Management, Inc.* where the EEOC had failed to act on the complainant's filing: "[T]his cannot affect plaintiff's rights." 747 F.2d at 1112. *See also Bihler v. Singer Co.,* 710 F.2d 96, 99 n.7 (3d Cir. 1983)("We do not mean to imply that a district court's jurisdiction over an ADEA claim depends on the EEOC's actually having taken some action in response to a filed charge. Such a holding would establish a prerequisite to suit beyond a prospective plaintiff's control and therefore would be contrary to the spirit and purpose of the Act.").

Consequently, Ameren's argument that Ms. Ballard's CIS did not qualify as a charge for the limited purpose of satisfying the ADA's administrative limitations

17

period because the IDHR failed to notify the company of its pendency would "establish a prerequisite to suit beyond [Ms. Ballard's] control . . . contrary to the spirit and purpose of the [ADA]." *Bihler,* 710 F.2d at 99, n.7. Ameren's argument to the contrary is simply without merit.

## II. The District Court Erred in Failing to Equitably Toll Ms. Ballard's Charge-Filing Period.

As Ms. Ballard explained in her initial brief, if the district court correctly ruled that Ms. Ballard's filing of her CIS form did not satisfy the ADA's administrative charge-filing limitations period, contrary to Ms. Ballard's arguments in Section I, above, the court nonetheless committed an abuse of discretion when it failed to equitably toll the limitations period as a result of the fact that Ms. Ballard was lulled into failing to file a timely formal charge with the EEOC by the misleading information she was given by the IDHR two days prior to the end of the ADA's 300-day limitations period.

In granting Ameren's Motion to Dismiss, the district court acknowledged that the IDHR had told Ms. Ballard on December 21, 2018, that the filing of her CIS on August 24, 2018, had timely satisfied the ADA's charge-filing requirement and that "no further action is required of you at this time" had "complicate[d] matters." Dkt. #12 at 9; A-10. The court nonetheless failed to equitably toll the limitations period. Then, when Ms. Ballard again raised equitable tolling in her Motion for Reconsideration (Dkt. #15), the district court simply ignored her arguments and did

18

not address them in its Order denying her motion. Dkt. #22, A-13.[4] In so doing, the district court committed an abuse of its discretion, entitling Ms. Ballard to the vacation of the judgment entered against her and a remand of her ADA claims to the district court for further proceedings.

###### A. This Court has Held That Charge-Filing Periods in Federal Civil Rights Acts Should Be Equitably Tolled When a Complainant Fails to File a Timely Charge Due to Misleading Statements by Agency Officials.

Both the Supreme Court and this Court have long recognized that under the ADA the filing of a timely charge with the EEOC is "a requirement…like a statute of limitations" that "is subject to waiver, estoppel, and equitable tolling." *See Zipes v. Trans World Airlines Inc.,* 455 U.S. 385, 393 (1982); *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.,* 167 F.3d 1170, 1174 (7th Cir. 1999). In its brief discussing when equitable tolling is available, Ameren entirely ignores

---

[4] In footnote 32 on page 44 of its brief, Ameren argues that "the District Court properly declined to address the additional argument Ms. Ballard put forth regarding equitable tolling in her Motion for Reconsideration . . ." Notably, Ameren does not identify what this alleged "additional argument" was.

In fact, Ameren told the district court that the arguments Ms. Ballard was making in her Motion for Reconsideration were "substantially similar" to the arguments her counsel had made in his Response to Ameren's Motion to Dismiss. Dkt. #18 at 2. Ameren has made the same admission to this Court at page 10 of its brief, where it acknowledges that the district court had "previously considered Mss. Ballard's equitable tolling arguments in the January 7, 2025 Order [granting Ameren's Motion to Dismiss]."

Finally, in its district court Response to Ms. Ballard's Motion for Reconsideration (Dkt. #18), Ameren did not argue that Ms. Ballard had waived any of her equitable tolling arguments by making them for the first time in her Motion for Reconsideration. As a result, Ameren's waiver argument itself has been waived under this Court's well-established "waiver of waiver" doctrine. A defendant waives its waiver defense by failing to raise it in the district court. *Bradley v. Village of Univ. Park,* 59 F.4th 887, 896 n.2 (7th Cir. 2023).

one of the circumstances where this Court has found equitable tolling to be "particularly appropriate:" i.e., when "an administrative agency misleads a plaintiff." *Newbold v. Wisconsin State Pub. Def.,* 310 F.3d 1013, 1015 (7th Cir. 2002). Ameren simply mischaracterizes Ms. Ballard's claim for equitable tolling on page 34 of its brief when it fails to acknowledge this Court's consistent willingness to equitably toll filing deadlines in employment cases based on "misleading statements" made by administrative agencies. *Bishop v. Gainer*, 272 F.3d 1009, 1014 (7th Cir. 2001).[5] It is on this basis, and not one of the "three circumstances" Ameren has listed on page 34, that the district court abused its discretion in failing to equitably toll the filing deadline.

Ms. Ballard's entitlement to equitable tolling was not based on "a garden variety" form of "excusable neglect," as Ameren argues. Instead, she was entitled to equitable tolling because she was affirmatively misled by the IDHR and lulled into inaction. *Irwin v. Dep't. of Veterans Affairs*, 498 U.S. 89, 96 (1990)

This Court has equitably tolled EEOC charge-filing deadlines when agency conduct misled the plaintiff into delaying filing beyond the end of the limitations period. In *Early v. Bankers Life and Casualty Co.,* 959 F.2d 75 (7th Cir. 1992), this Court was presented with circumstances nearly identical to those experienced by Ms. Ballard. Early was discharged by his employer on October 31, 1988. This gave him, like Ms. Ballard, 300 days to file a charge with the EEOC. He went to the

---

[5] Ameren's equitable tolling argument rests instead on this Court's recent decision in the inapposite case of *Watkins v. Mohan*, 144 F.4th 926 (7th Cir. 2025), where a prisoner brought suit under the Federal Tort Claims Act, a context entirely unrelated to Ms. Ballard's ADA claims.

EEOC to file a charge on June 8, 1989, well within the 300-day limitations period. At that meeting, he filled out an intake questionnaire and was informed he "had done everything he had to do at the administrative level," which he "naturally understood [ ] to mean that he had filed a formal charge." *Id.* at 77. Ultimately, nearly a year after the 300-day deadline, he filed a formal charge with the EEOC on May 10, 1990. *Id.* at 78. This Court ruled that, in the event Early's intake questionnaire had not qualified as a charge that satisfied the administrative charge-filing deadline, the deadline nonetheless could be equitably tolled due to the "misinformation Early received" from the EEOC. *Id.* at 81. Early's entitlement to equitable tolling was based on the fact that he had "filed the (real) charge as early as he realistically could given that misinformation." *Ibid.*

Ms. Ballard, like the plaintiff in *Early*, filled out her intake CIS form comfortably before the end of the 300-day deadline, before being misled by the IDHR. In the December 21, 2018, email sent two days before the charge-filing deadline, the IDHR informed her that "no further action is required of you at this time" and that she would "receive either a drafted charge against Ameren Illinois to review or a request for additional information, if necessary." Dkt. #7 at 68-69. This statement misled Ms. Ballard, as it erroneously informed her that she did not need to take any additional actions to protect her ADA claims, despite the fact she had two remaining days in which she could have filed a formal, perfected charge with the EEOC if she had been told one was necessary. This misleading email "lulled [her] into inaction," causing her to fail to take appropriate action in reliance upon

the IDHR's misstatement. *Schroeder v. Copley Newspaper*, 879 F.2d 266, 271 (7th Cir. 1989).

That the IDHR's December 21 email suggested that she might have to supply additional information at some unspecified later date did not undermine the misleading effect of the email. As the email stated, no further action was required until the IDHR sent her a drafted charge against Ameren or she received a request for additional information, if necessary. Dkt. #7 at 68-69. This clearly conveyed to Ms. Ballard that she did not need to take any action unless contacted by the IDHR and that the decision to do so remaining in the IDHR's hands, as such contact would only happen if it was deemed "necessary" by the agency. It would be unreasonable to expect Ms. Ballard to reach out to the IDHR after being informed that: (A) she need take no further action and (B) if anything additional was required of her, it would come from agency-initiated communication. The combination of these statements naturally lulled Ms. Ballard into inaction during the two days remaining in the 300-day charge-filing period.

Further, Ms. Ballard, like the plaintiff in *Early*, acted to file her formal charge as early as she "realistically could" in light of the misleading statements by the IDHR. *Early*, 959 F.2d at 81. That she ultimately filed a formal charge after she received it from the IDHR beyond the 300-day deadline is not dispositive in light of *Early*, where the plaintiff likewise filed his formal charge significantly beyond the deadline. *Early,* 959 F.2d at 78. While Ms. Ballard made corrections to IDHR's draft of the formal charge before signing it, this was hardly "dilatory conduct" delaying

22

filing of the formal charge. *See* Ameren's Brief at 36. Instead, Ms. Ballard was simply communicating with the IDHR in order make sure all the information she had provided in her CIS was included in the formal charge because the initial draft prepared by the IDHR was incomplete and incorrect. Dkt. #6-1 at 15-16, 21-22. While her perfected charge was ultimately filed 175 days after the 300-day deadline, this was substantially less of a delay than this Court found acceptable in *Early*, where the plaintiff filed his formal charge on May 10, 1990, more than 250 days after the 300-day deadline. *Early,* 959 F.2d at 77. Ms. Ballard's prompt filing of her perfected charge, in conjunction with the original misinformation from the IDHR, entitled her to the equitable tolling of the charge-filing deadline.

**B. Ms. Ballard's Charge-Filing Deadline Should Have Been Equitably Tolled Because of Her Diligent and Timely Actions During the Limitations Period.**

Ms. Ballard acted with all due diligence in communicating with the IDHR, filing her CIS, and completing her perfected charge. As Ameren points out, a plaintiff must "file his charge with the EEOC within a reasonable period of time" for the deadline to be equitably tolled. *Hentosh,* 167 F.3d at 1175. Ms. Ballard filed her charge squarely in the middle of her charge-filing period, so she fully satisfied this requirement. She filled out her CIS 178 days after her discharge by Ameren and 122 days before the expiration of the 300-day deadline. While this Court has ruled that equitably tolling may not apply when a plaintiff "wait[ed] to file until … the very last day" possible (*Lax v. Mayorkas*, 20 F.4th 1178, 1183 (7th Cir. 2021)), this was not the case here.

23

Secondly, within the 300-day period, Ms. Ballard took the additional, unrequired affirmative act of checking with the IDHR on the status of her complaint. Dkt. #7, Ex. D.[6] Had Ms. Ballard not been misled by the IDHR's December 21 email response, she would have had sufficient time to file a formal charge with the EEOC within the 300-day charge-filing period.

Additionally, Ms. Ballard was not dilatory in failing to actively prompt the agency to act following the December 21 email. In that email, the IDHR made clear that there was nothing she needed to do until she received the draft formal charge from the agency or unless the agency required additional information from her in order to prepare the draft. The January 31, 2019, email that she received from the IDHR's Human Rights Investigator similarly reinforced that there was nothing Ms. Ballard needed to do and that she had to wait until the IDHR "determined that a formal charge of discrimination is able to be drafted." Dkt. #15, Ex. C.

As a result, the delay between Ms. Ballard's filing of her CIS in August 2018 and her filing of a perfected charge in early September 2019 was solely caused by the IDHR, not by any lack of due diligence on her part.[7] Accordingly, the district court's

---

[6] Ameren asserts on page 37 of its brief that Ms. Ballard "waited another 120 days before following up with IDHR to check on the status of her complaint." In support it cites the December 21, 2018, email she received from the IDHR, Dkt. #7, Ex. D. The email shows when IDHR responded to Ms. Ballard's requests, but it does not establish that she had not inquired of the agency prior to that date. In truth, there is nothing in the record that supports Ameren's assertion that she had contacted IDHR for the first time only on December 21.

[7] In footnote 31 on page 39 of its brief, Ameren notes that the absence of prejudice to the employer is a relevant factor to be considered in deciding whether to equitably toll a limitations period. Notably, in the district court Ameren presented neither evidence of any prejudice it allegedly had suffered as a result of the timing of Ms. Ballard's actions nor any prejudice-based argument. *See* Dkt. # 6-1. Accordingly, the argument has been (*cont.*)

failure to equitably toll her administrative filing limitations period was an abuse of discretion.

## CONCLUSION

For the reasons set forth herein and in her initial brief, Plaintiff-Appellant Kimberly Ballard prays that this Court will vacate the district court's judgment and remand this case to the district court for further proceedings on her ADA claims against Defendant-Appellee Ameren Illinois Company.

Respectfully Submitted

/s/ Randall D. Schmidt
Randall D. Schmidt

Randall D. Schmidt
THE EDWIN F. MANDEL LEGAL AID CLINIC
  OF THE UNIVERSITY OF CHICAGO LAW SCHOOL
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611
*Counsel of Record for Plaintiff-Appellant*

August 29, 2025

---

*(cont.)* waived. *See Bradley v. Village of Univ. Park,* 59 F.4th 887, 897 (7th Cir. 2023) ("An appellee may also waive arguments by not raising them in a timely way in the district court . . ."). Nor has Ameren identified any such prejudice in its brief to this Court.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Seventh Circuit Rule 32(c) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 6,989 words based on the Word Count tool in Microsoft Word.

This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2018 in 12-point Century Schoolbook font, with footnotes in 11-point Century Schoolbook font.

/s/ Randall D. Schmidt
Randall D. Schmidt

August 29, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, I caused a true and correct copy of the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Randall D. Schmidt
Randall D. Schmidt

August 29, 2025